# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-1563-KAS

JAMES S. BENEDICT, CHRISTOPHER BOURJOS, RICHARD T. INGALLS, RANDALL G. JOHNSON, STEVEN E. JONGEWAARD, WILLIAM C. LATHAM, THEODORE LEKAS JR., TIMOTHY A. MCINTOSH, STEVEN POPE, RICK L. RAGAZZO, PAUL W. RUNGE, JEFFREY N. SCHOLZEN, DENNIS M. SHEEHAN, CHRISTOPHER J. SMITH, SCOTT TRCKA, GREGORY G. WHITWORTH and ROBERT D. WILFONG, individually and on behalf of all other similarly situated individuals,

Plaintiffs,

v.

ROBERT MANFRED, COMMISSIONER OF BASEBALL; THE OFFICE OF THE COMMISSIONER OF BASEBALL, an unincorporated association also d/b/a MAJOR LEAGUE BASEBALL, AZPB LIMITED PARTNERSHIP; ATLANTA NATIONAL LEAGUE BASEBALL CLUB, LLC; BALTIMORE ORIOLES LIMITED PARTNERSHIP; BOSTON RED SOX BASEBALL CLUB L.P.; CHICAGO CUBS BASEBALL CLUB, LLC ; CHICAGO WHITE SOX, LTD.; THE CINCINNATI REDS, LLC; CLEVELAND GUARDIANS BASEBALL COMPANY, LLC; COLORADO ROCKIES BASEBALL CLUB, LTD.; DETROIT TIGERS, INC.; HOUSTON ASTROS, LLC; KANSAS CITY ROYALS BASEBALL CLUB LLC; ANGELS BASEBALL LP; LOS ANGELES DODGERS LLC; MARLINS TEAMCO LLC; MILWAUKEE BREWERS BASEBALL CLUB, L.P.; MINNESOTA TWINS, LLC; STERLING METS, L.P.; NEW YORK YANKEES PARTNERSHIP; ATHLETICS INVESTMENT GROUP LLC D/B/A OAKLAND ATHLETICS BASEBALL COMPANY; THE PHILLIES; PITTSBURGH ASSOCIATES; PADRES L.P.; SAN FRANCISCO BASEBALL ASSOCIATES LLC; THE BASEBALL CLUB OF SEATTLE, LLLP; ST. LOUIS CARDINALS, LLC; TAMPA BAY RAYS BASEBALL LTD.; RANGERS BASEBALL, LLC; ROGERS BLUE JAYS BASEBALL PARTNERSHIP; and WASHINGTON NATIONALS BASEBALL CLUB, LLC,

Defendants.

---

## THIRD AMENDED COMPLAINT

---

Plaintiffs file this Third Amended Complaint, based on the written representations of Defense counsel and pursuant to the Parties' Agreement, related to and naming the individual Major League Baseball Clubs (Clubs) by the legal names of the specific entities that own and

---

operate the individual Clubs, without prejudice to renaming or naming other possible responsible entities, if any, as allowed by law.

## I.      Nature of The Action

1.      This is an individual and collective action brought under the United States Age Discrimination in Employment Act (the "ADEA") and a class action brought under various state anti-discrimination statutes by former major league baseball scouts ("Scouts," and each a "Scout"). Plaintiffs bring this action on behalf of themselves and all other similarly situated individuals over 40 years of age who have held the position of Scout for one or more of the 30 major league baseball Clubs (collectively the "Clubs," and each a "Club") and sought reemployment by a Club on one or more occasions beginning on the first day of the three year period prior to the date of filing of this action (the "Older Scouts"). Plaintiffs worked as Scouts for various Clubs, as defined below, and then sought reemployment after the first day of the three-year period prior to this action by one or more Clubs after they were no longer employed by their former Clubs. While they all had substantial experience in scouting, they were uniformly denied such reemployment, and they and other Older Scouts continue to be denied such reemployment. Plaintiffs allege that, in being denied such reemployment, the Club Defendants and the MLB Defendants, as defined below, have discriminated against Older Scouts on the basis of disparate treatment or disparate impact in favor of substantially younger Scouts or Scouts under 40 ("Younger Scouts").

## II.      The Parties

### A.      The Plaintiffs

2.      Plaintiff James S. Benedict is 62 years old and resides in Bradenton, Florida. Mr. Benedict worked as a Scout for multiple Clubs for approximately 32 years before his termination, effective October 31, 2020, as a Scout for the Chicago Cubs.

3.      Plaintiff Christopher Bourjos is 68 years old and resides in Scottsdale, Arizona. Mr. Bourjos worked as a Scout for multiple Clubs for approximately 37 years before his termination, effective November 1, 2020, as a Scout for the Saint Louis Cardinals.

4.      Plaintiff Richard T. Ingalls is 71 years old and resides in Long Beach, California. Mr. Ingalls worked as a Scout for multiple Clubs for approximately 39 years before his termination, effective November 2018, as a Scout for the Cincinnati Reds.

5.      Plaintiff Randall G. Johnson is 66 years old and resides in Valley Center, California. Mr. Johnson worked as a Scout for multiple Clubs for approximately 26 years before his termination, effective November 1, 2020, as a Scout for the Detroit Tigers.

6.      Plaintiff Steven E. Jongewaard is 59 years old and resides in West Chester, Ohio. Mr. Jongewaard worked as a Scout for multiple Clubs for approximately 29 years before his termination, effective September 2019, as a Scout for the Philadelphia Phillies.

7.      Plaintiff William C. Latham is 64 years old and resides in Trussville, Alabama. Mr. Latham worked as a Scout for multiple Clubs for over 24 years, until his termination, effective approximately September 2020 as a Scout for the Los Angeles Dodgers.

8.      Plaintiff Theodore Lekas Jr. is 67 years old and resides in Brewster, Massachusetts. Mr. Lekas Jr. worked as a Scout for multiple Clubs for approximately 34 years, until his termination, effective October 7, 2022, as a Scout for the Atlanta Braves.

9.      Plaintiff Timothy A. McIntosh is 58 years old and resides in Golden Valley, Minnesota. Mr. McIntosh worked as a Scout for multiple Clubs for over 35 years, until his termination, effective September 30, 2020, as a Scout for the Los Angeles Angels.

10.     Plaintiff Steven Pope is 65 years old and resides in Asheville, North Carolina. Mr. Pope worked as a Scout for multiple Clubs for approximately 35 years before his termination,

effective approximately September 2020, as a Scout for the Los Angeles Dodgers.

11.     Plaintiff Rick L. Ragazzo is 63 years old and resides in Leona Valley, California. Mr. Ragazzo worked as a Scout for multiple Clubs for approximately 34 years before his termination, effective January 1, 2021, as a Scout for the Atlanta Braves.

12.     Plaintiff Paul W. Runge is 65 years old and resides in Palm Beach Gardens, Florida. Mr. Runge worked as a Scout for multiple Clubs for approximately 3 years, until his termination, effective January 1, 2021, as a Scout for the Atlanta Braves.

13.     Plaintiff Jeffrey N. Scholzen is 55 years old and resides in W. Hurricane, Utah. Mr. Scholzen worked as a Scout for multiple Clubs for approximately 30 years before his termination, effective approximately August 2020, as a Scout for the Milwaukee Brewers.

14.     Plaintiff Dennis M. Sheehan is 71 years old and resides in Glasco, New York. Mr. Sheehan worked as a Scout for multiple Clubs for approximately 28 years before his termination, effective approximately November 1, 2020, as a Scout for the Arizona Diamondbacks.

15.     Plaintiff Christopher J. Smith is 64 years old and resides in Lago Vista, Texas. Mr. Smith worked as a Scout for multiple Clubs for approximately 32 years, until his termination, effective September 9, 2020, as a Scout for the Los Angeles Dodgers.

16.     Plaintiff Scott Trcka is 66 years old and resides in Hobart, Indiana. Mr. Trcka worked as a Scout for multiple Clubs for approximately 30 years, until his termination, effective approximately September 2016, as a Scout for the Philadelphia Phillies.

17.     Plaintiff, Gregory G. Whitworth is 58 years old and resides in Huntington Beach, California. Mr. Whitworth worked as a Scout for multiple Clubs for over 28 years before his termination, effective July 2021, as a Scout for the Tampa Bay Rays.

18.     Plaintiff Robert D. Wilfong is 69 years old and resides in San Dimas, California. Mr. Wilfong worked as a Scout for multiple Clubs for approximately 28 years before his termination, effective November 2019, as a Scout for the Los Angeles Angels.

**B.    The MLB Defendants**

19.     Defendant The Office of the Commissioner of Baseball ("Commissioner's Office"), in accordance with Article II, Section 1 of the Major League Constitution, is an unincorporated association that operates (and/or does business as) Major League Baseball ("MLB"). MLB is comprised of thirty Clubs, all of which are named Defendants ("Club Defendants"). The Commissioner's Office and the Clubs operate MLB as a unified operation in regard to exercising common control over baseball operations and employment operations of the Clubs, making the Club Defendants and MLB Defendants, as defined below, based on that consideration and others addressed below pertinent to the claims of Older Scouts, joint employers. Defendant MLB, as an unincorporated association, may be served through Commissioner Robert Manfred at:

> The Office of the Commissioner of Baseball
> 1271 Avenue of the Americas
> New York, NY 10020

20.     Defendant Robert Manfred ("Manfred" together with the Commissioner's office, are referred to as the "MLB Defendants") is the Commissioner of Baseball (the "Commissioner") under the Major League Constitution. Manfred can be served at:

> The Office of the Commissioner of Baseball
> 1271 Avenue of the Americas
> New York, NY 10020

C.      **The Club Defendants**

21.     Defendant AZPB Limited Partnership (d/b/a the "Arizona Diamondbacks") is a Club. It is a limited partnership with its principal place of business in Pheonix, Arizona. It is believed to be formed under the laws of Georgia. Acting jointly with the MLB Defendants and/or on its own behalf, the Arizona Diamondbacks denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. It may be served through one of the following:  its s registered agent for service of process is:

> Ken Kendrick, Mike Chipman, Jeff Royer, General Partners;
> Derrick Hall, CEO; Tom Harris, Mike Hazen, or Cullen Maxey, Executive Vice Presidents
> or any officer of the partnership at
> Chase Field
> 401 E. Jefferson Street
> Phoenix, Arizona 85004

22.     Defendant Atlanta National League Baseball Club, LLC (d/b/a the "Atlanta Braves") is a Club. It is a limited liability company with its principal place of business in Atlanta, Georgia and is believed to be formed under the laws of Georgia. Acting jointly with the MLB Defendants and on its own behalf, the Atlanta Braves denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. The registered agent for service of process of Atlanta National League Baseball Club, LLC is:

> CSC of Cobb County, Inc.
> 192 Anderson Street SE, Suite 125,
> Marietta, GA, 30060

23.     Defendants Baltimore Orioles Limited Partnership (d/b/a the "Baltimore Orioles") is a Club. It is a limited partnership with its principal place of business in Baltimore, Maryland. It

is believed to be formed under the laws of Maryland. Acting jointly with the MLB Defendants and on its own behalf, the Baltimore Orioles denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. Its registered agent for service of process is:

Mike Hoppes
333 W. Camden Street
Baltimore, Maryland 21201

24.     Defendant Boston Red Sox Baseball Club L.P. (d/b/a the "Boston Red Sox") is a Club. It is a limited partnership with its principal place of business in Boston, Massachusetts. It is believed to be formed under the laws of Massachusetts. Acting jointly with the MLB Defendants and on its own behalf, the Boston Red Sox denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. Its registered agent for service of process is:

CT Corporation System
155 Federal Street, Suite 700
Boston, Massachusetts 02110

25.     Defendant Chicago Cubs Baseball Club, LLC (d/b/a the "Chicago Cubs") is a Club. It is a limited liability company with its principal place of business in Chicago, Illinois. It is believed to be formed under the laws of Illinois. Acting jointly with the MLB Defendants and on its own behalf, the Chicago Cubs denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. Its registered agent for service of process is:

CT Corporation System
208 S. LaSalle Street, Suite 814
Chicago, Illinois 60604-1101

26.     Defendant Chicago White Sox, Ltd. (d/b/a the "Chicago White Sox") is a Club. It is a limited partnership with its principal place of business in Chicago, Illinois. It is believed to be formed under the laws of Illinois. Acting jointly with the MLB Defendants and on its own behalf, the Chicago White Sox denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. Its registered agent for service of process is:

William D. Waters
333 W. 35th Street
Chicago, Illinois 60616

27.     Defendant The Cincinnati Reds, LLC (d/b/a the "Cincinnati Reds") is a Club. It is a limited liability company with its principal place of business in Cincinnati, Ohio. It is believed to be formed under the laws of Ohio. Acting jointly with the MLB Defendants and on its own behalf, the Cincinnati Reds denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. It's registered agent for service of process is:

James A. Marx
Great American Ball Park
100 Joe Nuxhall Way
Cincinnati, Ohio 45202

28.     Defendant Cleveland Guardians Baseball Company, LLC (formally known as the Cleveland Indians and now d/b/a the "Cleveland Guardians") comprise a Club. It is a limited liability company with its principal place of business in Cleveland, Ohio. It is believed to be formed under the laws of Ohio. Acting jointly with the MLB Defendants and on its own behalf, the Cleveland Guardians denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts It's registered agent for service of process is:

TDD Service, Inc.
100 7th Avenue, Suite 150
Chardon, Ohio 44024

29.     Defendant Colorado Rockies Baseball Club, Ltd. (d/b/a "Colorado Rockies") is a Club. It is a limited partnership with its principal place of business in Denver, Colorado. It is believed to be formed under the laws of Colorado. Acting jointly with the MLB Defendants and on its own behalf, the Colorado Rockies denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. It's registered agent for service of process is:

Bian P. Gaffney
2001 Blake Street
Denver, CO 80205

30.     Defendant Detroit Tigers, Inc. (d/b/a "Detroit Tigers") is a Club. It is a corporation with its principal place of business in Detroit, Michigan. It is believed to be formed under the laws of Michigan. Acting jointly with the MLB Defendants and on its own behalf, the Detroit Tigers denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. It's registered agent for service of process is:

Stanford Berenbaum
2211 Woodward Avenue,
Detroit, MI 48201.

31.     Defendant Houston Astros, LLC (d/b/a "Houston Astros") is a Club. It is a limited liability company with its principal place of business in Houston, Texas. It is believed to be formed under the laws of Texas Acting jointly with the MLB Defendants and on its own behalf, the Houston Astros denied reemployment (and/or continue to deny reemployment) to one or more

Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. It's registered agent for service of process is:

Corporate Creations Network Inc.
5444 Westheimer #1000
Houston, TX 77056.

32.     Defendant Kansas City Royals Baseball Club LLC (d/b/a "Kansas City Royals") is a Club. It is a limited liability company with its principal place of business in Kansas City, Missouri. It is believed to be formed under the laws of Missouri. Acting jointly with the MLB Defendants and on its own behalf, the Kansas City Royals denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. It's registered agent for service of process is:

CT Corporation System
120 South Central Avenue
Clayton, MO 63105.

33.     Defendant Angels Baseball LP (d/b/a the "Los Angeles Angels of Anaheim") is a Club. It is a limited partnership with its principal place of business in Los Angeles, California. It is believed to be formed under the laws of California. Acting jointly with the MLB Defendants and on its own behalf, the Los Angeles Angels of Anaheim denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. It's registered agent for service of process is:

Molly Taylor
2000 Gene Autry Way
Anaheim, CA 92806

34.     Defendant Los Angeles Dodgers LLC (d/b/a the "Los Angeles Dodgers") is a Club. It is a limited liability company with its principal place of business in Los Angeles, California. It is believed to be formed under the laws of California. Acting jointly with the MLB Defendants

and on its own behalf, the Los Angeles Dodgers denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. The registered agent for service of process for the Los Angeles Dodgers, LLC is:

> The Corporation Company
> 555 Capitol Mall Ste 1000
> Sacramento, CA 95814

35.     Defendant Marlins Teamco LLC (d/b/a "Miami Marlins") is a Club. It is a limited liability company with its principal place of business in Los Angeles, California. It is believed to be formed under the laws of Florida. Acting jointly with the MLB Defendants and on its own behalf, the Miami Marlins denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. It's registered agent for service of process is:

> CT Corporation System
> 1200 South Pine Island Road
> Plantation, FL 33324.

36.     Defendants Milwaukee Brewers Baseball Club, L.P. (d/b/a the "Milwaukee Brewers") is a Club. It is a limited partnership with its principal place of business in Milwaukee, Wisconsin. It is believed to be formed under the laws of Wisconsin. Acting jointly with the MLB Defendants and on its own behalf, the Milwaukee Brewers denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. It's Registered Agent for Service of Process is:

> Milwaukee Brewers Baseball Club, L.P.
> Rick Schlesinger
> American Family Field
> One Brewers Way
> Milwaukee, WI 53214

37.     Defendant Minnesota Twins, LLC (d/b/a "Minnesota Twins") is a Club. It is a limited liability company with its principal place of business in Minneapolis, Minnesota. It is believed to be formed under the laws of Minnesota. Acting jointly with the MLB Defendants and on its own behalf, the Minnesota Twins denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. It's Registered Agent for Service of Process is:

Twins Sports, Inc.
250 Nicollet Mall, Suite 600
Minneapolis, MN 55401

38.     Defendant Sterling Mets, L.P. (d/b/a the "New York Mets") is a Club. It is a limited partnership with its principal place of business in New York, New York. It is believed to be formed under the laws of New York. Acting jointly with the MLB Defendants and on its own behalf, the New York Mets denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. It's registered agent for service of process is:

CT Corporation System
28 Liberty Street
New York, New York 10005

39.     Defendant New York Yankees Partnership (d/b/a "New York Yankees") is a Club. It is a partnership with its principal place of business in New York, New York. It is believed to be formed under the laws of New York. Acting jointly with the MLB Defendants and on its own behalf, the New York Yankees denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. It's registered agent for service of process is:

Lonn A. Frost
New York Yankees
Yankees Stadium
Bronx, New York 1451

40.     Defendant Athletics Investment Group LLC d/b/a Oakland Athletics Baseball Company (also d/b/a the "Oakland Athletics" and/or the "Oakland A's") is a Club. It is a limited liability company with its principal place of business in Oakland, California. It is believed to be formed under the laws of California. Acting jointly with the MLB Defendants and on its own behalf, the Oakland Athletics denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. It's registered agent for service of process is:

C T Corporation System
330 N Brand Blvd
Glendale, CA 91203

41.     Defendant The Phillies (d/b/a the "Philadelphia Phillies") is a Club. It is believed to be an unincorporated association with its principal place of business in Philadelphia, Pennsylvania. It is believed to be formed under the laws of Pennsylvania. Acting jointly with the MLB Defendants and on its own behalf, the Phillies denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. It may be served through one of the following named agent or other agents allowed by law:

John Middleton, Managing Partner; or
Leslie Safran, Kathy Killian, Sean Walker, Vice Presidents;
Citizens Bank Park:
One Citizens bank Way
Philadelphia, PA 19148-5249

42.     Defendant Pittsburgh Associates (d/b/a the "Pittsburgh Pirates") is a Club. It is believed to be an unincorporated association with its principal place of business in Pittsburgh,

Pennsylvania. It is believed to be formed under the laws of Pennsylvania. Acting jointly with the MLB Defendants and on its own behalf, the Pittsburgh Pirates denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. It may be served through one of the following named agent or other agents allowed by law:

> Bob Nutting, Chairman; Travis Williams, President; or
> Drew Singer, Associate General Counsel;
> PNC Park at North Shore
> 115 Federal Street
> Pittsburgh, PA 15212

43.    Defendant Padres L.P. (d/b/a the "San Diego Padres") is a Club. It is a limited partnership with its principal place of business in San Diego, California. It is believed to be formed under the laws of California. Acting jointly with the MLB Defendants and on its own behalf, the San Diego Padres denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts.

> Padres L.P.
> Caroline Perry
> 100 Park Blvd
> San Diego, Ca 92101

44.    Defendant San Francisco Baseball Associates LLC" (d/b/a "San Francisco Giants") is a Club. It is a limited liability company with its principal place of business in San Francisco, California. It is believed to be formed under the laws of California. Acting jointly with the MLB Defendants and on its own behalf, the San Francisco Giants denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. It's Registered Agent for Service of Process is:

> C T Corporation System
> 330 N Brand Blvd
> Glendale, CA 91203

45.     Defendant The Baseball Club of Seattle, LLLP (d/b/a the "Seattle Mariners") is a Club. It is a limited liability partnership with its principal place of business in Seattle, Washington. It is believed to be formed under the laws of the State of Washington. Acting jointly with the MLB Defendants and on its own behalf, the Seattle Mariners denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. It's registered agent for service of process is:

Fairchild Record Search, Ltd.
3400 Capitol Blvd SE, Ste 101
Tumwater, WA, 98501-3351

46.     Defendant St. Louis Cardinals, LLC (d/b/a the "St. Louis Cardinals") is a Club. It is a limited liability company with its principal place of business in St. Louis, Missouri. It is believed to be formed under the laws of Missouri. Acting jointly with the MLB Defendants and on its own behalf, the St. Louis Cardinals denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. It's registered agent for service of process is:

CT Corporation System
1200 South Pine Island Road
Plantation, FL 33324.

47.     Defendant Tampa Bay Rays Baseball Ltd. (d/b/a the "Tampa Bay Rays") is a Club. It is a limited partnership with its principal place of business in St. Petersburg, Florida. It is believed to be formed under the laws of Florida. Acting jointly with the MLB Defendants and on its own behalf, the Tampa Bay Rays denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. It's registered agent for service of process is:

John P. Higgins
Tropicana Field,
One Tropicana Drive
St. Petersburg, FL 33705.

48.     Defendants Rangers Baseball, LLC (d/b/a/ the "Texas Rangers") comprise a Club. It is a limited liability company with its principal place of business in Arlington, Texas. It is believed to be formed under the laws of Texas. Acting jointly with the MLB Defendants and on its own behalf, the Texas Rangers denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. It's registered agent for service of process is:

CT Corporation System
1999 Bryan St. Ste 900
Dallas, TX 75201-3136.

49.     Defendant Rogers Blue Jays Baseball Partnership (d/b/a the "Toronto Blue Jays") is a Club. It is a partnership with its principal place of business in Toronto, Ontario, Canada. It is believed to be formed under the laws of Ontario, Canada. Acting jointly with the MLB Defendants and on its own behalf, the Toronto Blue Jays denied reemployment (and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. It's registered agent for service of process is:

Rogers Communications Inc.
1 Blue Jays Way, Suite 3200
Toronto, ON M5V 1J1

50.     Defendant Washington Nationals Baseball Club, LLC (d/b/a "Washington Nationals") is a Club. It is a limited liability company with its principal place of business in Washington, D.C. It is believed to be formed under the laws of District of Columbia. Acting jointly with the MLB Defendants and on its own behalf, the Washington Nationals denied reemployment

(and/or continue to deny reemployment) to one or more Plaintiffs as identified in paragraph 94 and similarly situated Older Scouts. It's registered agent for service of process is:

Edward Cohen and/or CT Corporation
1050 Connecticut Avenue, NW
Washington, DC 20036

### III.   Jurisdiction and Venue

51.     As to subject matter jurisdiction, this Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §1331 because Plaintiffs assert claims under the ADEA. This Court has supplemental jurisdiction over the Plaintiffs' state statutory claims pursuant to 28 U.S.C. § 1367. As to personal jurisdiction, this Court has personal jurisdiction over the Defendants as follows:

a.     As to the MLB Defendants, the Office of the Commissioner of Baseball is an unincorporated association consisting of 30 members, including the Colorado Rockies, a legal entity with its principal place of business in Denver, Colorado.

i.     Accordingly, by operation of the law of unincorporated associations and operation of their voluntary choice to both operate as an unincorporated association since MLB's inception and by operation of their voluntary choice admit the Colorado Rockies to the MLB in 1979, the MLB Defendants are at home for general personal jurisdiction purposes within the State and District of Colorado.

ii.     Additionally, as detailed below, the MLB Defendants are subject to specific personal jurisdiction because of their conduct related to baseball operations and control of the employment relationship of scouts of the Colorado Rockies and all 30 of the members of the MLB, and professional scouting activities of the Club Defendants, including the Colorado Rockies, within the State and District of Colorado. This conduct

includes: (1) controlling the operations of over 80 regular season professional baseball games each year at Coors Field in Denver Colorado by directly employing/contracting numerous baseball operations personnel including the umpires, field communication employees, official scorekeeper, and other personnel, mandating the installation of video replay communication devices that monitor baseball operations; and adapting and enforcing rules on video review challenges from MLB headquarters in New York City, New York; (2) by requiring a revenue sharing plan among Clubs that requires 48% of revenues generated by Colorado Rockies' ticket, concessions, and parking sales, and similar items be sent to a common fund to be distributed equally to all 30 members, (3) by controlling the employment of scouts, including: (a) by requiring scouts to sign a UEC drafted by the Office of the Commissioner and the contents of which are controlled by and/or approved by the Office of the Commissioner of Baseball under Article II, Section 2-3 and Article IV of the MLB Constitution, (b) by interpreting and enforcing MLB Constitution Rules 3(b) and 3(k) to include the employment of scouts; (c) by requiring that the MLB Clubs limit communications with other Clubs related to scouts that have been laid off or terminated by an MLB Club in the middle of the season; (d) by controlling the market for professional baseball players through the MLB Draft under which, in each year of the draft, one or more amateur baseball players who played high school baseball in Colorado are selected by MLB Clubs under the direction, control and/or supervision of the MLB, (e) by controlling the market for scouts within the nation and within the State of Colorado by their actions, including but not limited to (i) creating a blacklist of scouts over 40 years of age ("Older Scouts") who are no longer allowed to be employed by any of the Club Defendants, (ii) by

limiting the number of Older Scouts who may be employed by each of the Club Defendants, and enforcing that limitation against all Club Defendants, without regard to the Club's financial ability to employ more scouts, in an MLB-wide manner, to the point that the Colorado Rockies vice president and assistant general manager of scouting, Dan Montgomery, asked Ragazzo directly about his age, and after Ragazzo responded 63, stated that the Rockies would be going in a different direction.

b.      Each of the Foreign Clubs is subject to this Court's specific personal jurisdiction based on the following continuous and systematic conduct on their part related to Defendants' baseball and baseball scouting operations in the State of Colorado, including but not limited (1) under the current MLB scheduling format, each of the 14 Foreign National League Clubs[1] play three or more games each year at Coors Field in Denver, Colorado, each of the 15 American League Clubs[2] play three or more games at Coors Field in Denver Colorado against the Colorado Rockies every other year; (2) each Foreign Club receives at least $3.6 million each year as their portion of sales from tickets, concessions, parking and other items related to MLB games played at Coors Field; (3) each Club, including Foreign Clubs, participates in the MLB draft which controls which amateur players from Colorado and around the world can be drafted to play for MLB Clubs; (4) each of the Foreign Clubs employs one or more professional Scouts that physically attend professional major and minor league games, high school games, and college games within the State of Colorado (including by being provided free tickets to Colorado Rockies games) (5) each of the Foreign Clubs engages in commerce related to the conduct of professional scouts within

---

[1]      Arizona Diamondbacks, Atlanta Braves, Chicago Cubs, Cincinnati Reds, Los Angeles Dodgers, Miami Marlins, Milwaukee Brewers, New York Mets, Philadelphia Phillies, Pittsburgh Pirates, St. Louis Cardinals; San Diego Padres, San Francisco Giants, and Washington Nationals.

[2]      Baltimore Orioles, Boston Red Sox, Chicago White Sox, Cleveland Guardians, Detroit Tigers, Houston Astros, Kansas City Royals, Los Angeles Angels, Minnesota Twins, New York Yankees, Oakland A's, Tampa Bay Rays, Texas Rangers, Toronto Blue Jays, and Seattle Mariners.

the State of Colorado, collectively spending hundreds of thousands of dollars on professional scouting activities within the State of Colorado, including wages, hotels, food, and travel expenses of scouts; and (6) by acting in unison with the other Defendants to allow the MLB Defendants to control the number of Older Scouts and allowing the MLB Defendants to maintain a blacklist of Older Scouts, which each Club follows..

c.    As to the MLB Defendants and Club Defendants, based on the conduct alleged above and below, all are subject to general personal jurisdiction and/or specific personal jurisdiction under Fifth Amendment of the Constitution pursuant to one or more joint employer/co-conspirator/collective action/class action theories, in that acting in cooperation with each other and the Colorado Rockies, they controlled the market for scouts in a manner that impacted the job market for scouts within the State and District of Colorado.

52.    The District of Colorado is a proper venue for this action pursuant to 28 U.S.C. § 1391(b)(2) because at least one of Defendants, the Colorado Rockies is located in this District and Division, each Defendant conducts business in this District and Division by playing, officiating or otherwise conducting Major League baseball games in this District and Division, and a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this District and Division. Indeed, under U.S.C. § 1391(b)(2), venue is proper in the location of any of the Club Defendants, including this District and Division.

## IV.    <u>Factual Allegations</u>

53.    The Club Defendants, each acting as a joint employer with the MLB Defendants, by denying reemployment at various times in 2020, 2021 and 2022, and since December 31, 2022, to Older Scouts, have violated the ADEA, and continue to violate the ADEA, discriminating against Older Scouts by not hiring them for open positions based on a common plan or practice

among Defendants. Over the last several years, the MLB Defendants and Club Defendants have engaged not only in systematically bringing about the separation from Clubs of Older Scouts to build a workforce of Younger Scouts, but in denying reemployment of Older Scouts by Clubs. The Clubs' conduct in that regard, as joint employers with the MLB Defendants, constitutes unlawful age discrimination under the ADEA, both as a matter of disparate treatment and disparate impact, and also violates one or more state anti-discrimination statutes both as a matter of disparate treatment and disparate impact.

54.    Plaintiffs bring their claims under the ADEA for themselves and on behalf of similarly situated individuals who may choose to opt into this action pursuant to 29 U.S.C. §§216b) and 626(b). Plaintiffs have each filed timely charges of discrimination for failure to hire under the ADEA. More than 60 days have passed since the filing of each Plaintiff's charge such that Plaintiff's individual claims under the ADEA are ripe for filing in this action.

55.    Plaintiffs bring both their ADEA claims on behalf of themselves and other Older Scouts (the "Scout Collective"). The members of the Scout Collective consist of a large number of Older Scouts who have been, continue to be, and will be, refused reemployment, including by being blacklisted for reemployment in any position as Scout with Club Defendants. The Scout Collective would benefit from the issuance of a court-supervised notice of this action and the opportunity to join this action under the ADEA. The members of the Scout Collective are known to Defendants, are readily identifiable, and can be located through Defendants' records. Notice should be sent to the members of the Scout Collective pursuant to 29 U.S.C. § 216(b).

56.    Plaintiffs are among thousands of MLB and Club employees to be separated from employment with Defendants in the last eight years as a result of a decision by the Club Defendants and the MLB Defendants to replace older employees with younger employees. On January 25,

2015, Manfred succeeded Bud Selig as commissioner of professional baseball. At that time, MLB began a "One Baseball" initiative, coinciding with the adoption of a "moneyball" statistically-oriented approach by Clubs, leading to analytics and video scouting as the primary focus of Scouts. As part of the reform process, MLB endeavored to begin heavily recruiting Younger Scouts, at the same time intentionally pushing out, from the Scout Collective, Older Scouts with prior knowledge, qualifications, expertise and training, based on a false stereotype that Older Scouts lacked the ability to use analytics and engage in video scouting with the same acumen as Younger Scouts.

### A.   The Commissioner's Office and the MLB Clubs Act in Coordination in Relation to Older Scouts

57.     The basic job of a Scout is to evaluate players' skills. They do so while attending games—at high schools and colleges, and at international games, minor league games and sometimes major league games. They do this sometimes thousands of miles, and countless hours away, from their homes. Some Scouts focus more on amateur players while others focus more on professional players. However, the basic job of a Scout remains the same: to evaluate players and present this information in reports.

58.     Scout's reports use a scale ranging from 20 to 80, with 80 representing the highest possible grade. The reports provide information to Clubs that assist them in determining which players to pursue even while Scouts are removed from the actual process of making player personnel decisions. Scouts do not make the final decisions on which players to sign and do not determine the compensation for players. Instead, so-called front office personnel of the Clubs generally perform those services.

59.     Defendants, both openly and clandestinely, coordinate their employment-related conduct with respect to players and Scouts.

### 1.    The Major League Constitution and Major League Rules

60.    Under Article II, Section 2(a) of the Major League Constitution, a copy of which is filed in a separate appendix as Exhibit "A," the Commissioner of Baseball has executive responsibility for labor relations between the Clubs and their employees. Under Article II, the Commissioner is to act "in the best interests of the national game of Baseball."

61.    Under Article II, Section 2, paragraph (b) of the Major League Constitution, the Commissioner, in furtherance of the Commissioner's labor relations authority and acting within the Commissioner's perception of what is in the "best interest" of Baseball, has the authority to investigate, summon persons, order the production of documents, and impose sanctions for Clubs or individuals associated with Clubs "in case of refusal to appear or produce."

62.    Under Article II, Section 3, of the Major League Constitution, the Commissioner has authority to permanently ban "owners, officers, employees, or players" from baseball. That is the Commissioner possesses the official authority under the Major League Constitution to blacklist Scouts.

63.    Under Article IV of the Major League Constitution, the Commissioner may create rules that are binding on Clubs. Rules 3(b) and 3(k) within the Major League Rules, a copy of which is filed in a separate appendix as Exhibit "B", respectively, require uniform contracts for major and minor league players and prohibit "tampering."

64.    Major League Rule 3(k) states that in order to "preserve discipline and competition, and to prevent the enticement of players, coaches, managers, and umpires, there shall be no negotiations or dealings respecting employment" between these categories of workers and a Club if that worker is already employed by another Club. Under the Commissioner's general authority to control labor relations and/or Rule 3(k), if a Club wants to speak with a coach or player who is

under contract with a second Club, the first Club must obtain written authorization from the second Club. Defendants have likewise coordinated the conduct of the Clubs related to Scouts under the Commissioner's general labor relations authority and/or Major League Rules 3(b) and 3(k).

65.     In accordance with the Commissioner's labor relations responsibility and/or Major League Rule 3(b), each Scout is required to enter into a Uniform Employment Contract approved by the Commissioner.

66.     On the face of Major League Rules 3(b) and 3(k), Rule 3(b) applies only to major and minor league players, and Rule 3(k) apparently applies only to players, coaches, managers, and umpires. However, Plaintiffs allege, upon information and belief, that Defendants have expressly or impliedly agreed that Rule 3(k) applies to Scouts. Defendants have accordingly coordinated their behavior and have implemented a pattern, practice and *de facto* rule applicable to Scouts prohibiting communication about job opportunities while a Scout is under contract with a Club.

67.     Application of Rule 3(k) to Scouts is best illustrated by an example. A Scout under contract with the Colorado Rockies cannot talk to other Clubs about an employment opportunity. Also, a Club in such a circumstance would have to first receive permission from the Colorado Rockies' front office to enter negotiations. However, as a pattern, practice or *de facto* rule, such permission is generally only granted if the other job opportunity would be a promotion for the Scout. Even then, the Colorado Rockies would not be required to grant permission. In a properly functioning, competitive labor market, each Club would compete for Scouts and lateral hiring would occur unimpeded. For example, if a Club other than the Colorado Rockies believed one of the Colorado Rockies' Scouts did his or her job well, that Club would be free to call the Scout and offer greater compensation to entice a lateral move. And if a Colorado Rockies' Scout believed

that another Club offered better wages or other benefits, the Scout could contact the other Club about employment opportunities. Defendants' anti-tampering pattern, practice and *de facto* rule, however, prohibits this competitive activity from occurring, which inhibits lateral hiring and restrains the Scout labor market.

### 2.    Club Practices Regarding Hiring of Scouts

68.    Traditionally, openings with Clubs for Scouts have been communicated to Scouts informally from one Club to a Scout or Scouts in whom they may have an interest, or from a Scout or Scouts who have become aware of an opening. There is no website or other forum for all Scout openings to be posted. Scouting is about networking, and so openings for Scouts have been made known to the Scout by an informal network, not through formal job postings or advertisements. They attend formal and informal meetings, often at large hotel chains and resorts. For example, at the annual MLB Winter Meetings concerning baseball operations, Scouts often attend and learn of employment opportunities with one Club or another.

### 3.    Coordination of Efforts to Restrict Scouts Changing Clubs

69.    With some exceptions, based on Defendants' application of Major League Rule 3(k) in regard to Scouts, a Scout is stuck with his or her Club employer until the Club terminates the Scout. In 2020, 2021 and 2022, based on Defendants' application of Rule 3(k), hundreds of Scouts' contracts were not renewed or Scouts otherwise had their employment terminated, and the Club Defendants and the MLB Defendants subsequently have acted to prevent the reemployment of Older Scouts or refused the reemployment of Older Scouts. This has involved disparate treatment of, and/or disparate impact upon, Older Scouts because they were not being reemployed and have been effectively and intentionally frozen out of the Scout labor market to an extent not applicable to Younger Scouts.

70.     In 2020, 2021 and 2022, Defendants also agreed to institute an offset policy to the detriment of Older Scouts. The policy applies to a Scout fired by one Club before the expiration of his or her scouting contract but hired by another Club. If the Scout is still contractually entitled to compensation from his former Club, then his compensation due from his old Club will be offset by the amount being paid under his or her new contract with the new Club. The offset policy, which is administered by the MLB Defendants, prevents a Scout from gaining compensation from both the firing Club and the hiring Club, if any. Without the policy, a scout would be unrestricted in negotiating a salary with another Club and the Clubs would be less likely to fire Scouts during the pendency of scouting contracts with them.

### 4.     The Scouting Wire and Joint Control of the Scout Labor Market

71.     Upon information and belief, Clubs, prior to 2015, maintained a common practice of putting non-renewed or otherwise terminated Scouts on a "wire" when they were no longer employed by such Clubs. When such a Scout's name was put on the "wire," he was considered eligible for employment by other Clubs. This practice benefited Scouts by assisting in them finding replacement employment. However, this practice stopped on or about January 25, 2015 when Manfred became the Commissioner. Upon information and belief, the termination of the scouting wire was mandated by the Commissioner's Office and each Club was required to stop using the scouting "wire."

72.     On or about January 25, 2015, Defendants adopted a new practice to replace the Scout "wire." Under this new practice, instead of allowing Scouts to seek reemployment through the "wire," Clubs continued to pay the Plaintiffs contractually obligated salary but informed them that their services would no longer be needed. Upon information and belief, this new practice was mandated by the Commissioner's Office and each Club was required to adopt the new policy.

73.     Since 2020, Clubs have also otherwise impinged upon terminated Scouts pursuing opportunities to seek new employment with another Club. Preying on the scouts' need for income, Defendants offered to "pay out" the remainder of their contracts until December 31 of the termination year. This was an illusory promise to pay the Scouts when the Clubs were already contractually obligated to pay amounts due under the Scouts' contracts through the end of the term of such contracts. Upon information and belief, Club Defendants thereby intentionally placed an obstacle to Older Scouts' compliance with applicable 180-day and 300-day deadlines for filing charges of age discrimination to exhaust administrative remedies under the ADEA and state age discrimination statutes by informing Older Scouts of their terminations before their scouting contracts lapsed knowing that the dates of such notices of termination would govern the timelines of charges of discrimination while assuming, at the same time, that Scouts would not know the timing of such notices would do so. Specifically, Older Scouts' fear of retaliation from Clubs and MLB Defendants caused many Scouts not to file timely charges of discrimination out of fear they would no longer receive their contractual payments and related health and pension insurance benefits.

74.     Also, since 2020, the Clubs have relied upon confidentiality provisions in contracts or separation agreements with Scouts to place an obstacle to Scouts seeking reemployment with other Clubs.

75.     Defendants' control of the scouting labor market differs significantly from Defendants' agreements to limit competition for baseball player services. For many years, Defendants have used reserve clauses and other means to control the player labor market. Indeed, these tools are written into the collective bargaining agreement between MLB and the union representing the players – the Major League Baseball Players Association. Likewise, MLB has a

collective bargaining agreement with its umpires. However, despite being subjected to a regime under which their contracts have to be submitted to and approved by the Commissioner, and without having the ability to change teams because of the effective imposition of Rule 3(k) restrictions, MLB Scouts are not unionized. Players, of course, certainly play a central role in the staging of baseball games. Thus, while an agreement to control player movements may be essential to the stability of staging competitive professional baseball games and may enhance the vitality and viability of baseball, the restrictions adopted by Defendants as joint employers of Scouts are not essential and in no way enhance the vitality or viability of baseball. Even more to the point, while such conduct might be protected from antitrust by MLB's exemption from federal antitrust law, such collusion cannot properly be used to violate the ADEA and state anti-discrimination statutes.

### 5.    The Rise and Fall of the Central Scouting Bureau

76.    MLB created a Central Scouting Bureau in 1968 at a point when Clubs were restructuring their scouting departments. It became the MLB Scouting Bureau in 1974 and became subject to control by the Commissioner's Office in 1985. In March 2018, MLB terminated five of the remaining seven scouts at the MLB Scouting Bureau, all but shuttering the game's centralized nerve center for scouting over the prior 50 years. The five scouts that were terminated were aged 67, 62, 60, 53, and 44, and the two scouts not terminated were aged 43 and 40. This was the "writing on the wall" for Older Scouts still employed by Clubs. These youngest two remaining scouts are no longer serving as Scouts for the MLB and there is currently no Scouting Bureau. In connection with the March 2018 termination of the five oldest Scouts within the MLB Scouting Bureau, the instruction to terminate such Scouts was originally communicated by former Commissioner's Office representative Kim Ng to a senior director within the MLB Scouting

Bureau, Frank Marcos, as an official directive from Manfred to fire all remaining Older Scouts within the MLB Scouting Bureau. He refused the directive and subsequently resigned, on information and belief on terms agreed with the MLB.

77.     Even without the more detailed individualized evidence of age discrimination against individual Plaintiffs described below, simultaneous and parallel actions of Defendants against Plaintiffs and similarly situated Older Scouts, purportedly in order to maintain an even playing field among the Clubs, have collectively reduced the number of Older Scouts employed by each Club. The absence of Older Scouts also injured the game of baseball in a variety of ways. First, scouting fills the holes in areas where the game of baseball, as played, is not conducive to the creation of statistics that can be analyzed, such as inner-city America and third world nations. For years, the number of African-Americans in MLB has been decreasing. While this is caused by a variety of factors, Defendants' across-the-board coordinated reduction of Older Scouts will only increase this phenomenon. Second, the increase in analytics has made the game of baseball more robotic and less enjoyable to watch, as evidenced by new rules implemented for the 2023 season. Indeed, as reported by numerous media sources, Manfred, in discussing the role of analytics in baseball, has recently admitted the damage that it has done to the game, stating: "Once everybody's doing it, that little margin that maybe you're getting…I am sure that whatever that margin was at one point in time, whatever it is today, it sure as heck is not worth the damage that was done to the game over a period of time." While this statement, similar recent admissions by others associated with the Club Defendants and MLB Defendants, and rule changes, may limit the damage done to the game of baseball, to date, neither the MLB Defendants nor the Club Defendants have been willing to admit the damage done to baseball from the reduced number of Older Scouts. Just as instant replay can enhance the role of umpires, it cannot replace the human element that umpires

provide. Similarly, the human element of Scouts cannot be replaced by video cameras or the radar gun.

### 6.      Blacklisting of Older Scouts

78.      The MLB Defendants' participation in a common plan or practice with the Clubs who have refused to rehire Older Scouts is evidenced, in part, by a list or lists of Senior Scouts formerly associated with one or more Clubs provided to one or more of the Clubs being used to refuse to rehire such Scouts, or directives by the Commissioner's office to one or more such Clubs frustrating or otherwise preventing the rehiring of such Scouts, or both. For example, Atlanta Braves director of Latin American scouting, Jonathan Cruz, informed former Scout Gordon Blakeley that a list exists and that Mr. Blakeley was on this list of non-hirable Scouts. Upon information and belief, and based on statements to individual Plaintiffs, one or more Clubs has possession of such a list or lists identifying those Older Scouts who cannot be hired back into professional baseball because, among other things, of their age. Plaintiffs who have contacted employees of Clubs in the process of seeking reemployment as Scouts have been told they were restricted from applying for new scouting jobs upon non-renewal or other termination of their employment based on such a list. Coordinated use of such a list and other similar means to carry out age discrimination violates the ADEA and state anti-age-discrimination statutes.

79.      The MLB Defendants coordinated with the Club Defendants during the 2020 season to discriminate against Older Scouts because of the COVID-19 pandemic. Defendants found the pandemic to be an opportunity to terminate an entire class of older employees more susceptible, on the basis of age, to the COVID-19 virus. Instead of applying for federal PPP loans that would allow them to shoulder the financial burden of maintaining Older Scouts, Defendants chose to terminate the employment of Older Scouts by systematic non-renewals and other means.

80.     Prior to 2020, the number of Scouts maintained by the Defendants had been stable for decades, being subject to only minor variations from year to year. Indeed, Plaintiffs average over 60 years of age and over three decades of service with Club Defendants. Based on their knowledge of the stability of the MLB, Plaintiffs maintained a realistic expectation that their future employment would remain stable within one of America's most loved and profitable endeavors.

81.     The practices of Defendants referred to above establish that Defendants have been acting as joint employers of Older Scouts for purposes of the ADEA since well before 2015. The MLB Defendants acted as joint employers with Club Defendants in first making reemployment of Older Scouts more difficult, then overseeing and carrying out mass terminations of employment of Older Scouts, and then denial of reemployment to Older Scouts.

### 7.     Use of COVID-19 as a Pretext

82.     Between February 2020 and 2022, the Clubs used the COVID-19 pandemic to justify the termination of employment of many Older Scouts. In 2020, Defendants did not renew or otherwise terminate the contracts for 51 of 83 Older Scouts. All Club Defendants engaged in terminations of Older Scouts. Older Scouts were told that such terminations were related to the COVID-19 pandemic. Thus, the Older Scouts expected to be eligible to be rehired after the pandemic ended, either by their prior Club or by another Club. However, even since the pandemic was over and MLB revenues returned, Older Scouts are being systematically denied reemployment, including through the use of a list or lists and an agreement, pattern, practice and effective rule to maintain lower numbers of Older Scouts throughout MLB.

### 8.     Use of Analytics as Pretext

83.     Defendants may assert that the reason for the Older Scouts' inability to obtain reemployment is the impact of a change to an "analytical" approach to evaluating players.

However, this is an ongoing pretext for coordinated and systematic discrimination based on age. While there is no doubt that the trends in favor of analytics have worked to some degree, some teams see a competitive advantage from playing against trends. Indeed, many of the Older Scouts that Defendants have terminated or refused to reemploy have utilized statistics since the early 1900s. Various types of statistical analysis have always been among the tools that Scouts utilize to better understand the projection of professional baseball players.

### 9.    Reduction of Scouts' Employment in MLB

84.    The fact that even the richest teams in baseball, like the Yankees and the Dodgers, continue to refuse to return to pre-2020 levels of Scouts, is also indicative that an MLB-wide agreement exists and/or is mandated by the Commissioner's Office to permanently deny reemployment to Older Scouts terminated in 2020, 2021 and 2022.

85.    In addition to the otherwise inexplicably large numbers of Older Scouts who were terminated in 2020, 2021 and 2022 and have been unable to find reemployment as Scouts despite the end of the COVID-19 pandemic and the return of fans to MLB stadiums, on numerous occasions individual Older Scouts have been provided information by Clubs with which they have sought reemployment evidencing coordinated conduct among Defendants to prevent the reemployment of Older Scouts.

86.    On or about August 23, 2020, the New York Yankees, through Damon Oppenheimer, vice-president and director of amateur scouting, or Steve Kmetko, national cross-checker, communicated to Scholzen that ownership did not have the money to hire Scouts. The New York Yankees organization maintains the highest payroll in professional baseball. Given that the Yankees organization has no meaningful limit to its ability to spend tens of millions of dollars

on players, the "no money for scouts" excuse is a pretext for discrimination tied to an agreement of Defendants for all Clubs to reduce the number of their Older Scouts.

87.     On or about August 26, 2020, officials of the San Francisco Giants, through Zach Minasian, vice-president of professional scouting, communicated to Scholzen that they didn't know if ownership would allow a new hire because they had some Older Scouts "ready to retire" from pro scouting and didn't know if they would be allowed to replace them or not.

88.     Between November 1, 2020 and February 22, 2023, Pope interviewed with Mike Shirley, Amateur Scouting Director of the Chicago White Sox, over Zoom. When the interview ended, Mr. Shirley contacted Pope to inform him that the White Sox were unable to hire another "veteran scout."

89.     Between August 1, 2022 and December 22, 2022, Ragazzo interviewed with the Colorado Rockies. During this interview, Dan Montgomery, vice president and assistant general manager of scouting, asked Ragazzo directly about his age, and Ragazzo responded 63. Sterling Monfort, professional scouting director, then called Ragazzo to inform him that they were going in a "different direction."

90.     Between November 1, 2021 and January 1, 2022, Ragazzo was contacted by Boston Red Sox representative Gus Quattlebaum, pro scouting director, who asked if Ragazzo was interested in a part-time scouting job. Ragazzo responded yes. However, Mr. Quattlebaum refused to hire Ragazzo and instead utilized Ragazzo's knowledge, qualifications, training and experience in seeking recommendations for Mark Kiefer and Devlin McConnell. Both are substantially younger than Ragazzo and both were subsequently hired as Scouts for the Boston Red Sox.

91.     In November 2020, Jeremy Shelley, scouting director for the San Francisco Giants, communicated with Ragazzo looking for a Scout to hire. Shelly stated that the Giants will probably "go younger" or hire internally.

92.     Between October 6, 2021 and October 15, 2021, Sheehan interviewed with Danny Ontiveros, scouting director, of the Chicago White Sox. Mr. Ontiveros informed Sheehan that he would be considered, but subsequently Sheehan was refused reemployment in favor of a 25-year-old with no previous scouting experience.

93.     Each of the Club Defendants have been contacted by one or more Plaintiffs seeking employment, but each Club has failed to hire any Plaintiffs. Accordingly, each named Plaintiff sues the specific Clubs that refused to hire him, as well as the MLB Defendants who are named as joint employers. The Clubs and Plaintiffs who have sought, but have been denied reemployment, with such Clubs, are detailed as follows:

| **Club** | **Plaintiffs that Club failed to Hire:** |
|---|---|
| Arizona Diamondbacks | Johnson; Latham; Pope. |
| Atlanta Braves | Bourjos; Johnson; Latham; Pope; Ragazzo; Scholzen; Trcka. |
| Baltimore Orioles | Bourjos; Pope; Runge. |
| Boston Red Sox | Benedict; Bourjos; Latham; Lekas; McIntosh; Pope; Ragazzo; Scholzen; Smith. |
| Chicago White Sox | Pope; McIntosh; Sheehan; Scholzen; Whitworth. |
| Chicago Cubs | Benedict; Bourjos; Latham; Lekas; McIntosh; Pope; Ragazzo; Smith; Trcka; Whitworth. |
| Cincinnati Reds | Bourjos; Lekas; Pope; Ragazzo; Whitworth. |
| Cleveland Guardians | Benedict; Bourjos; Johnson; Pope; Ragazzo; Smith. |

| | |
|---|---|
| Colorado Rockies | Benedict; Bourjos; Lekas; Pope; Ragazzo. |
| Detroit Tigers | Bourjos; Pope; Ragazzo; Runge; Scholzen; Trcka. |
| Houston Astros | Bourjos; Pope; Ragazzo; Sheehan; Scholzen. |
| Kansas City Royals | Bourjos; Ingalls; Johnson; Latham; Lekas; Pope; Ragazzo; Runge; Sheehan; Smith; Trcka. |
| Los Angeles Angels | Bourjos; Johnson; Latham; Lekas; Pope; Smith; Scholzen; Trcka; Whitworth. |
| Los Angeles Dodgers | Benedict; Bourjos; Johnson; Wilfong. |
| Miami Marlins | Johnson; Latham; Lekas; Pope; Ragazzo; Runge; Sheehan; Trcka; Wilfong. |
| Milwaukee Brewers | Bourjos; Latham; Lekas; Pope; Sheehan. |
| Minnesota Twins | Bourjos; Ingalls; McIntosh; Pope; Smith. |
| New York Mets | Bourjos; Latham; McIntosh; Pope; Ragazzo. |
| New York Yankees | Benedict; Bourjos; Ingalls; McIntosh; Pope; Ragazzo; Scholzen. |
| Oakland Athletics | Bourjos; Ingalls; Pope; Ragazzo. |
| Philadelphia Phillies | Bourjos; Ingalls; Johnson; Jongewaard; Lekas; Ragazzo; Runge; Sheehan; Smith; Whitworth. |
| Pittsburgh Pirates | Bourjos; Pope; Ragazzo; Scholzen; Sheehan; Smith; Whitworth. |
| San Diego Padres | Benedict; Ingalls; Lekas; Pope; Ragazzo; Scholzen. |
| San Francisco Giants | Bourjos; Latham; Ragazzo; Scholzen. |
| Seattle Mariners | Bourjos; Latham; Ragazzo. |
| St. Louis Cardinals | Pope; Runge; Trcka. |
| Tampa Bay Rays | Bourjos; Jongewaard; Latham; Lekas; Pope; Runge; Scholzen. |

| Texas Rangers | Bourjos; Johnson; Jongewaard; Pope; Ragazzo; Trcka. |
| Toronto Blue Jays | Bourjos; Jongewaard; Pope; Runge; Scholzen; Trcka. |
| Washington Nationals | Bourjos; Jongewaard; Latham; Pope; Ragazzo; Scholzen; Wilfong. |

**B.      Collective Action Allegations**

94.      Plaintiffs bring this action as a collective action under the ADEA on behalf of any Older Scouts who may opt into this action.

95.      All Older Scouts not offered reemployment by any of the Clubs since the first day of the period beginning three years prior to the date of this action are similarly situated to the named Plaintiffs. They have all worked for MLB under substantially similar conditions and have all been subjected to MLB's policy, practice and *de facto* rule of precluding Older Scouts from reemployment for open positions for Scouts for which they are qualified.

**C.      Exhaustion of Administrative Remedies**

96.      Plaintiffs timely filed class charges of discrimination with the Equal Employment Opportunity Commission. More than sixty (60) days have passed since they filed those charges of discrimination. Members of the proposed collective action and class actions are covered by the charges of age discrimination filed by Plaintiffs under prior legal precedent.

**V.      <u>Causes of Action</u>**

<u>Count I</u>

(Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq.)
(On Behalf of Plaintiffs and Class/Collective Action Participants)

97.      Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

98.     MLB Defendants and Club Defendants, in systematically refusing to consider Older Scouts for reemployment in other Club Scout positions for which they are qualified, have engaged in age discrimination in violation of the ADEA. Such violations of the ADEA have been willful. As a direct and proximate result of such discrimination, Plaintiffs and similarly situated employees have lost the fair opportunity to obtain new positions with the Club Defendants.

## VI.    Jury Demand

99.     Plaintiffs request a trial by jury on all claims and issues so triable.

## VII.    Relief Sought

100.    WHEREFORE, Plaintiffs request that this Court grant the following relief:

a.     Permission for Plaintiffs to notify other Older Scouts of their right to opt-in to this action under the ADEA pursuant to 29 U.S.C. §§216(b), 626(b);

b.     Find that MLB Defendants and Club Defendants violated the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq*.;

c.     Award back pay and front pay in an amount according to proof;

d.     Award compensatory damages, as allowed by law, in an amount according to proof;

e.     Award punitive damages, as allowed by law, in an amount according to proof;

f.     Award all attorney's fees and costs incurred prosecuting this action;

g.     Award liquidated damages under the ADEA;

h.     Award pre-judgment and post-judgment interest at the maximum amount allowable by law;

i.     Issue injunctive relief in the form of an order directing the Defendants to comply with the ADEA; and

j.      Grant other relief to which Plaintiffs and class members may be entitled.

Respectfully submitted,

/s/ Robert E. Goodman, Jr.
Robert E. Goodman, Jr.
Member of the Bar of the District of Massachusetts
Massachusetts BBO# 549175
Texas State Bar No. 08158100
reg@kilgorelaw.com
Admitted in the District of Colorado

Mitchell C. Abeita
Texas State Bar No. 24103694
mca@kilgorelaw.com
Admitted in the District of Colorado

Eric Roberson
Texas State Bar No. 00792803
enr@kilgorelaw.com
Admitted in the District of Colorado

Kilgore & Kilgore, PLLC
3141 Hood Street, Suite 500
Dallas, Texas 75219
(214) 379-0823 – Goodman
(214) 379-0833 – Abeita
(214) 379-0817 – Roberson
(214) 379-0837 – Fax

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that all counsel of record will be served via ECF simultaneously with filing of this document.

/s/ Robert E. Goodman, Jr.
Robert E. Goodman, Jr.