UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES S. BENEDICT et al.,

                                  Plaintiffs,

               -against-

ROBERT MANFRED, COMMISSIONER OF
BASEBALL et al.,

                                  Defendants.

24-CV-04314 (MMG)

ORAL ARGUMENT
REQUESTED

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**<u>MOTION TO DISMISS PLAINTIFFS' FIFTH AMENDED COMPLAINT</u>**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

Table of Contents ........................................................................................................... i

Preliminary Statement ....................................................................................................1

Statement of Alleged Facts .............................................................................................2

    A.    Plaintiffs .............................................................................................................2

    B.    Defendants .........................................................................................................3

    C.    Allegations of Age Discrimination ..................................................................3

Relevant Procedural Background .....................................................................................3

    A.    Proceedings Prior to The Colorado Court's Transfer Decision ........................3

    B.    The Colorado Court's Transfer Decision ...........................................................5

    C.    Proceedings Before This Court Following Transfer ..........................................6

Argument ........................................................................................................................7

I.    All Claims Against Non-Resident Defendants Should Be Dismissed Because the Plaintiffs Have Not Alleged—and Cannot Allege—Any Basis for This Court to Exercise Personal Jurisdiction over Any of Them ...........................................................7

    A.    This Court Lacks Specific Jurisdiction over the Non-Resident Defendants under N.Y. CPLR 302(a)(1) ...............................................................9

           1.    The Non-Resident Defendants Did Not Purposefully Direct Activities at Forum Residents. ....................................................9

           2.    Plaintiffs' Claims Do Not Arise Out of or Relate to Defendants' Forum-Related Activities .........................................11

    B.    The Non-Resident Defendants did not cause injury to a person within the state as required for jurisdiction under Section 302(a)(3). ....................................15

    C.    Even If There Was Jurisdiction under N.Y. CPLR 302(a), Jurisdiction Here Would Offend Traditional Notions of Fair Play and Substantial Justice, Running Afoul of Constitutional Due Process ....................................................17

    D.    Plaintiffs' Joint Employment, Conspiracy and Collective Action Allegations Do Not Confer Personal Jurisdiction Over Non-Resident Defendants .................19

           1.    Joint Employment Allegations Do Not Confer Jurisdiction Over the Non-Resident Defendants. ...........................................19

           2.    Plaintiffs Cannot Establish Jurisdiction by Alleging a Conspiracy to Violate the ADEA. ...................................................20

           3.    There is No "Collective Action/Class Action" Theory of Jurisdiction ......22

II.     All Claims Against Non-Resident Defendants And The New York Mets Should Be Dismissed Because Plaintiffs Have Not Alleged—and Cannot Allege—Any Facts to Support Venue in This District. ...................................................................................23

III.    Any Surviving Claims Should Be Dismissed For The Independent Reason That They Fail To State A Plausible Claim For Relief. ......................................................................26

        A.    Plaintiffs Fail To State A Claim Against The New York Mets, New York Yankees Or The Other MLB Clubs. ......................................................................27

        B.    Plaintiffs' Claims Against The MLB Defendants Are Insufficient As A Matter Of Law ......................................................................................................31

IV.     Plaintiffs' Claims Should Be Dismissed Without Leave To Amend................................35

Conclusion ......................................................................................................................................35

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Almontaser v. N.Y.C. Dep't of Educ.*,
No. 13–CV–5621, 2014 WL 3110019 (E.D.N.Y. Jul. 8, 2014) .............................................34

*Apsley v. Boeing, Co.*,
No. 05-1368-MLB, Dkt. 239 (D. Kan. May 21, 2008).........................................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................26, 28, 33

*Aziyz v. Cameca*,
No. 1:22-cv-579, 2023 WL 6065850 (N.D.N.Y. Sept. 18, 2023).........................................15

*Beckett v. Prudential Ins. Co. of Am.*,
893 F. Supp. 234 (S.D.N.Y. 1995) .................................................................................17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................33

*Berdeaux v. OneCoin Ltd.*,
561 F. Supp. 3d 379 (S.D.N.Y. 2021)..............................................................................23

*Bernstein v. The MONY Grp., Inc.*,
228 F. Supp. 2d 415 (S.D.N.Y. 2002)..............................................................................30

*Bolt v. Planned Parenthood of Cent. & W. N. Y.*,
No. 24-CV-06061, 2025 WL 368643 (W.D.N.Y. Feb. 3, 2025) ...........................................34

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S. F. Cnty.*,
582 U.S. 255 (2017)..........................................................................................12, 13, 14

*Bussa v. St. John's Univ.*,
No. 18-CV-4623 (KAM)(RER), 2019 WL 136641 (E.D.N.Y. Jan. 8, 2019)..........................28

*Cent. States Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
230 F.3d 934 (7th Cir. 2000) .......................................................................................19

*Charles Schwab Corp. v. Bank of Am. Corp.*,
883 F.3d 68 (2d Cir. 2018)...........................................................................................20

*Chatwal Hotels & Resorts LLC v. Dollywood Co.*,
90 F. Supp. 3d 97 (S.D.N.Y. 2015) ..................................................................................9

*Chloe v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010)..................................................................................17

*Concepcion v. Off. of Comm'r of Baseball*,
    No. 22-cv-1017, 2023 WL 4110155 (D.P.R. May 31, 2023) ....................................8

*Creech v. P.J. Wichita, L.L.C.*,
    No. 16-CV-2312-JAR-GEB, 2017 WL 914810 (D. Kan. Mar. 8, 2017)................................20

*D'Anzieri v. Harrison Glob. LLC*,
    No. 21-CV-8506 (VEC), 2022 WL 17404254 (S.D.N.Y. Dec. 2, 2022)................................12

*Daimler AG v. Bauman*,
    571 U.S. 117 (2015)...........................................................................................7

*Daniel v. Am. Bd. of Emerg. Med.*,
    428 F.3d 408 (2d Cir. 2005)................................................................................24

*Dareltech, LLC v. Xiaomi Inc.*,
    No. 18-CV-8729 (AKH), 2019 WL 3287957 (S.D.N.Y. July 22, 2019)................................10

*Doheny v. Intl. Bus. Machs., Corp.*,
    714 F. Supp. 3d 342 (S.D.N.Y. 2024)..................................................................32

*Dong Chul Kim v. Harte Hanks, Inc.*,
    425 F. Supp. 3d 246 (S.D.N.Y. 2019)..................................................................20

*E-Z Bowz, L.L.C. v. Prof. Prod. Research Co., Inc.*,
    No. 00-CV-8670, 2003 WL 22064259 (S.D.N.Y. Sept. 5, 2003)................................21

*Eades v. Kennedy, PC L. Offs.*,
    799 F.3d 161 (2d Cir. 2015)........................................................................7, 17

*Felder v. United States Tennis Ass'n Inc.*,
    No. 17-cv-5045, 2018 WL 5621484 (S.D.N.Y. Oct. 30, 2018)................................31

*Fitzgerald v. Signature Flight Support Corp.*,
    No. 13–CV–4026, 2014 WL 3887217 (S.D.N.Y. Aug. 5, 2014) ................................34

*Ford Motor Co. v. Montana Eighth Judicial District*,
    592 U.S. 351, 362 (2021).................................................................................13

*Francis v. Perez*,
    256 F. Supp. 3d 1 (D.D.C. 2017)........................................................................21

*Ganske v. Mensch*,
    480 F. Supp. 3d 542 (S.D.N.Y. 2020)..................................................................10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)....................................................................................8, 12

*Hayden v. Cnty. of Nassau*,
    180 F.3d 42 (2d Cir. 1999)..................................................................................35

*Henao v. Parts Auth., LLC*,
    557 F. Supp. 3d 490 (S.D.N.Y. 2021)..................................................................20

*Hill v. AMB Sport & Entertainment, LLC*,
    No. 22-cv-2961, 2023 WL 2058066 (N.D. Ill. Feb. 16, 2023)...............................14

*Hill v. Major League Soccer LLC*,
    No. 23-CV-2911 (JGK), 2024 WL 3361216 (S.D.N.Y. July 10, 2024)...........31, 33

*I.M.D. USA, Inc. v. Shalit*,
    92 F. Supp. 2d 315 (S.D.N.Y. 2000).....................................................................25

*In re Libor-Based Fin. Instruments Antitrust Litig.*,
    No. 11 MDL 2262 NRB, 2015 WL 4634541 (S.D.N.Y. Aug. 4, 2015)............21, 22

*In re Nat'l Hockey League Players' Concussion Injury Litig.*,
    MDL No. 14-2551, 2019 WL 5088516 (D. Minn. Oct. 10, 2019) .........................14

*Johnson v. City Univ. of N. Y.*,
    No. 00 Civ. 4964 (WK), 2002 WL 1750841 (S.D.N.Y. July 24, 2002) .................28

*Jones v. Landry's, Inc.*,
    No. 23-CV-09920, 2025 WL 463173 (S.D.N.Y. Feb. 8, 2025)...............................28

*Keeton v. Hustler Mag., Inc.*,
    465 U.S. 770 (1984)...............................................................................................20

*Kernan v. Kurz-Hastings, Inc.*,
    175 F.3d 236 (2d Cir. 1999)..................................................................................18

*Lear v. Royal Caribbean Cruises Ltd.*,
    No. 1:20-cv-4660-GHW, 2021 WL 1299489 (S.D.N.Y. Apr. 7, 2021) ...........15, 16, 17

*Lefebvre v. Morgan*,
    234 F. Supp. 3d 445 (S.D.N.Y. 2017)...................................................................35

*Leroy v. Great W. United Corp.*,
    443 U.S. 173-183-84 (1979) ..................................................................................24

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013)...........................................................................7, 9, 11

*Mann v. Camp Fatima, Inc.*,
No. 22-CV-4740 (DG)(SIL), 2023 WL 10354262 (E.D.N.Y. Nov. 8, 2023) .......................12

*Mareno v. Rowe*,
910 F.2d 1043 (2d Cir. 1990)..............................................................................................17

*Mason v. Antioch Univ.*,
No. 15-CV-5841 (SJF)(GRB), 2016 WL 2636257 (E.D.N.Y. May 5, 2016).........................12

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996)...................................................................................................18

*Miller v. Pac. Inv. Mgmt. Co. LLC*,
No. 12-Civ-4122 (LTS), 2013 WL 12305507 (S.D.N.Y. Apr. 23, 2013) ..............................35

*Mills-Sanchez v. Research Found. for State Univ. of N. Y.*,
No. 18-cv-723, 2019 WL 2549726 (N.D.N.Y. June 20, 2019) ..............................................32

*N.E. Landscape & Masonry Assocs., Inc. v. State of Conn. Dept. of Lab.*,
No. 14-CV-9104 (KMK), 2015 WL 8492755 (S.D.N.Y. Dec. 10, 2015) ........................24, 25

*Nelson v. Argyropoulous*,
No. 18-CV-11413, 2021 WL 4927059 (S.D.N.Y. Mar. 18, 2021).........................................33

*Palumbo v. Carefusion 2200, Inc.*,
No. 12–CV–6282, 2014 WL 3921233 (W.D.N.Y. Aug. 11, 2014).........................................34

*Payne v. Off. of the Comm'r of Baseball*,
No. 15-cv-03229-YGR, 2016 WL 1394369 (N.D. Cal. Apr. 8, 2016) .....................................8

*Piersall v. Crane Carrier Co.*,
No. 08-CV-116-TCK-SAJ, 2008 WL 4632920 (N.D. Okla. Oct. 16, 2008).........................21

*Prospect Cap. Corp. v. Bender*,
No. 09-CV-826, 2009 WL 4907121 (S.D.N.Y. Dec. 21, 2009) ........................................24, 25

*Romaine v. N. Y. City Coll. of Tech. of the City Univ. of N. Y.*,
No. 10-CV-431(SLT)(SMG), 2012 WL 1980371 (E.D.N.Y. June 1, 2012).........................28

*Rubert v. King*,
No. 19-CV-2781, 2020 WL 5751513 (S.D.N.Y. Sept. 25, 2020).........................................28

*Schwinn v. Human Affairs Int'l, Inc.*,
No. 99-4140, 2000 WL 731785 (10th Cir. June 8, 2000) (unpublished
opinion).................................................................................................................................21

*Scott v. Nat'l Ass'n for Stock Car Racing, Inc.*,
No. 06 Civ. 6029 (DAB), 2008 WL 217049 (S.D.N.Y. Jan. 17, 2008)................................22

*Senne v. Kan. City Royals Baseball Corp.*,
    105 F. Supp. 3d 981 (N.D. Cal. 2015) ................................................................8

*Shah v. Tunxis Cmty. Coll.*,
    No. 3:14-cv-00712 (MPS), 2015 WL 4254909 (D. Conn. July 14, 2015) .............29

*Sherlock v. Montefiore Med. Ctr.*,
    84 F.3d 522 (2d Cir. 1996)...................................................................................21

*Singer v. Bell*,
    585 F. Supp. 300, 303 (S.D.N.Y. 1984).................................................................22

*SPV Osus Ltd. v. UniCredit Bank Austria*,
    No. 18-CV-3497(AJN), 2019 WL 1438163 (S.D.N.Y. Mar. 30, 2019)..................20

*Stankovic v. Newman*,
    No. 12–CV–399, 2013 WL 6842530 (D. Conn. Dec. 27, 2013) ............................34

*Suarez v. Cal. Nat. Living, Inc.*,
    No. 17 CV 9847 (VB), 2019 WL 1046662, at *5 (S.D.N.Y. Mar. 5, 2019)............23

*Sullivan v. Ringling Coll. of Art & Design, Inc.*,
    No. 19-CV-1302 (RA), 2019 WL 6529823 (S.D.N.Y. Dec. 4, 2019) ...........9, 10, 11

*Syeed v. Bloomberg L.P.*,
    568 F. Supp. 3d 314 (S.D.N.Y. 2021)....................................................................30

*Taylor v. City of N.Y.*,
    207 F. Supp. 3d 293 (S.D.N.Y. 2016)....................................................................29

*Thorpe v. Piedmont Airlines, Inc.*,
    926 F. Supp. 2d 453 (N.D.N.Y. 2013)...................................................................34

*Tulino v. City of N.Y.*,
    No. 15-CV-7106(JMF), 2016 WL 2967847 (S.D.N.Y. May 19, 2016) .................29

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016)...................................................................7, 8, 9, 17

*Wang v. Palmisano*,
    157 F. Supp. 3d 306 (S.D.N.Y. 2016)....................................................................34

*Warwick v. Schultz*,
    No. 23-CV-5242 (LTS), 2023 WL 5240926 (S.D.N.Y. June 27, 2023)................24

*Watkins v. Rite Aid Corp.*,
    No. 4:06cv00299, 2006 WL 2085992 (M.D. Pa. July 25, 2006)...........................21

*Whigham-Williams v. Am. Broad. Co., Inc.*,
  No. 17-cv-6600 (AJN), 2018 WL 4042110 (S.D.N.Y. Aug. 22, 2018)............................26, 27

*Zheng v. Halliburton Energy Servs., Inc.*,
  No. 1:22-CV-00814(BKS/ATB), 2023 WL 3783125 (N.D.N.Y. May 12,
  2023) ...........................................................................................................................................12

*Zurich Am. Life Ins. Co. v. Nagel*,
  571 F. Supp. 3d 168 (S.D.N.Y. 2021).....................................................................................20

STATUTES

28 U.S.C. § 1391(b)(2) ...................................................................................................... passim

OTHER AUTHORITIES

CPLR 302(a)(1) ......................................................................................................................8, 9, 11

CPLR 302(a)(3) ...................................................................................................8, 15, 16, 17

Fed. R. Civ. P. 12(b)(2)............................................................................................................1, 2

Fed. R. Civ. P. 12(b)(3)............................................................................................................1, 2

Fed. R. Civ. P. 12(b)(6)............................................................................................................1, 26

Fla. Stat. § 760.01(2)................................................................................................................18

Tex. Labor Code Ann. § 21.001 ............................................................................................18

The Fifth Amended Complaint (Dkt. 94) should be dismissed in its entirety pursuant to Fed. R. Civ. P. ("Rule") 12(b)(2), 12(b)(3) and/or 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs, former baseball scouts, bring claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), based on the allegation that each was denied employment with one or more Major League Baseball Clubs located throughout the United States (and one in Canada). The Fifth Amended Complaint names 32 different Defendants—the Office of the Commissioner of Baseball d/b/a Major League Baseball ("MLB") and Commissioner Manfred (together with MLB, the "MLB Defendants"), and all 30 MLB Clubs. Each of the 35 individual Plaintiffs—only one of whom is a New York resident—purports to sue one or more of the 30 MLB Clubs that allegedly refused to hire him, along with the MLB Defendants as alleged joint employers, in a single lawsuit in a single forum. The Fifth Amended Complaint should be dismissed for three reasons.

*First*, the Fifth Amended Complaint should be dismissed as against all Non-Resident Defendants—*i.e.*, all Defendants other than the MLB Defendants, the New York Mets and the New York Yankees (the "New York-based Defendants")—for lack of personal jurisdiction. Plaintiffs concede that the Non-Resident Defendants are not subject to general jurisdiction in this District, alleging only that they are subject to specific jurisdiction. But this Court lacks specific personal jurisdiction over the Non-Resident Defendants because Plaintiffs' failure-to-hire claims are completely untethered to the Non-Resident Defendants' limited contacts with this forum, and Plaintiffs do not allege (and cannot allege) that the Non-Resident Defendants' hiring decisions at issue in this case occurred in New York. In addition, Plaintiffs' alternative theories for asserting personal jurisdiction—such as under a joint-employer, co-conspirator or collective action theory—

all fail as a matter of well-settled law.  Accordingly, Plaintiffs' claims against the Non-Resident Defendants should be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

*Second*, the Fifth Amended Complaint should be dismissed pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a) for the independent reason that venue is improper as to the Non-Resident Defendants and New York Mets under 28 U.S.C. § 1391(b)(2), the venue provision on which Plaintiffs rely.  The Fifth Amended Complaint fails to allege that any events, much less a substantial part of the events giving rise to Plaintiffs' claims against the Non-Resident Defendants and the New York Mets, occurred here, as required under § 1391(b)(2).  Thus, venue in this District is improper and the claims should be dismissed because there is no single venue where this sprawling case could have been brought.

*Third*, Plaintiffs' claims should be dismissed in their entirety as to all New York-based Defendants, as well as the Non-Resident Defendants in the event the Court concludes it has personal jurisdiction and that venue is proper, pursuant to Rule 12(b)(6) because Plaintiffs fail to plead any facts, much less plausible facts, in support of their failure-to-hire claims.

<u>STATEMENT OF ALLEGED FACTS</u>

**A.    Plaintiffs**

Plaintiffs are former scouts who previously held scouting positions with one or more of the 30 MLB Clubs.  (Dkt. 94 ¶ 1.)  Only one of the 35 Plaintiffs, Dennis Sheehan, alleges to be a resident of New York.  (*Id.* ¶¶ 2-36.)  After their respective employment ended with one Club, Plaintiffs allegedly sought, and were denied, employment with one or more other Clubs.  (*Id.* ¶ 111.)  Although there are 35 Plaintiffs and 32 Defendants, each Plaintiff is suing only the specific Club or Clubs that allegedly refused to hire him plus the MLB Defendants under an alleged joint employer theory.  (*Id.*)

2

**B.    Defendants**

With the exception of the New York Mets, the New York Yankees and the MLB Defendants, the Fifth Amended Complaint does not allege that any other Defendant is a resident of New York.  (*Id.* ¶¶ 37-68.)  The Fifth Amended Complaint alleges that each of the Non-Resident Defendants has its principal place of business outside of New York, and is formed under the laws of states other than New York.  (*Id.* ¶¶ 39-68.)

**C.    Allegations of Age Discrimination**

Plaintiffs allege that the 30 MLB Clubs, each acting as a joint employer with the MLB Defendants, violated the ADEA by denying them employment at various times between 2020 and 2022.  (*Id.* ¶ 71.)

**RELEVANT PROCEDURAL BACKGROUND**

**A.    Proceedings Prior to The Colorado Court's Transfer Decision**

On June 21, 2023, Plaintiffs filed a Collective and Class Action Complaint against the MLB Defendants and the 30 MLB Clubs in the District of Colorado.  (Dkt. 1.)  On August 3, 2023, Plaintiffs filed a First Amended Collective and Class Action Complaint against the same Defendants that added new factual allegations.  (Dkt. 6.)  On September 5, 2023, Plaintiffs filed a Second Amended Complaint, which corrected corporate information for certain Clubs.  (Dkts. 25, 26.)

On October 10, 2023, all Defendants other than the Colorado Rockies Ltd. (the "Colorado Rockies") moved to dismiss the Second Amended Complaint for lack of personal jurisdiction and improper venue.  (Dkt. 39.)  In addition, all Defendants moved to dismiss certain of the state and city law claims asserted in the Second Amended Complaint for failure to state a claim and/or lack of subject matter jurisdiction.  (*Id.*)  On December 15, 2023, the day their Opposition to the Motion to Dismiss was due, Plaintiffs filed a Motion for Leave to File Third Amended Complaint and

attached a copy of their proposed amended pleading ("Motion for Leave"). (Dkts. 50, 50-1.) The proposed Third Amended Complaint added allegations concerning personal jurisdiction. (*Id*.) The proposed Third Amended Complaint also eliminated all state and city law claims, as well as all allegations concerning Rule 23 class treatment of those claims, because Plaintiffs conceded that they cannot satisfy, at a minimum, Rule 23's numerosity requirement. (Dkt. 51 at 14.)

Later that same night, Plaintiffs filed their Opposition to the Motion to Dismiss the Second Amended Complaint (the "Opposition"), relying exclusively on the new jurisdictional allegations and legal argument contained in the proposed Third Amended Complaint. (*Id.* at 12.) Plaintiffs stated in the Opposition that they voluntarily dismissed all state and city law claims. (*Id.* at 14.)

On December 26, 2023, Defendants filed a Response to the Motion for Leave. (Dkt. 56.) Because the new allegations, even if accepted as true, did not cure the myriad defects with respect to personal jurisdiction and venue, Defendants did not oppose the Motion for Leave, provided Defendants had the opportunity to address the futility of the proposed Third Amended Complaint via a Rule 12 motion. (*Id*. at ¶ 9.)

On January 3, 2024, the Court granted Plaintiffs' Motion for Leave and permitted Defendants to challenge the futility of the Third Amended Complaint through a Rule 12 motion. (Dkt. 58.) Plaintiffs filed the Third Amended Complaint on January 16, 2024. (Dkt. 59.)

Just three days later, on January 19, 2024, Plaintiffs asked Defendants to consent to their filing of a proposed Fourth Amended Complaint in which Plaintiffs sought to add eighteen additional named Plaintiffs. Defendants consented to Plaintiffs' filing of the Fourth Amended Complaint subject to its right to challenge it via a Rule 12 motion. Plaintiffs filed the Fourth Amended Complaint on January 30, 2024. (Dkt. 60.) Defendants (other than the Colorado Rockies) filed a Rule 12 motion to dismiss the Fourth Amended Complaint on February 20, 2024.

(Dkt. 63.)  On April 18, 2024, the Court stayed discovery regarding Plaintiffs' claims against the moving Defendants pending resolution of Defendants' Rule 12 motion to dismiss.  (Dkt. 67.)

### B.    The Colorado Court's Transfer Decision

On May 20, 2024, following a hearing on Defendants' Rule 12 motion, Judge Domenico ordered that the case be transferred to this District.  (Dkt. 71.)  While Judge Domenico found that "concerns over venue alone would suffice to warrant a transfer," he also indicated that "serious concerns about personal jurisdiction over most of the defendants buttress the conclusion that transfer is appropriate."  (*Id.* at 7.)  In particular, he explained that Plaintiffs' jurisdictional theories—namely, that "jurisdiction and venue are proper in this District because the Clubs and the MLB Defendants jointly coordinated to discriminate against the older scouts, knowing that substantial effects of that coordination would occur in every state where a major league team is located"—"would require extending or disagreeing with existing precedent."  (*Id.* at 3.)

Judge Domenico rejected Plaintiffs' argument that MLB is subject to general jurisdiction in any jurisdiction where one of the Clubs is "at home," noting that Plaintiffs were "unable to point to a single case, binding or persuasive, to support their position."  (*Id.* at 9-11.)  Judge Domenico was also wary of Plaintiffs' specific jurisdiction arguments.  He noted that "Plaintiffs' age discrimination claims are not derived from the *playing* of baseball or the somewhat broader act of putting on baseball games," and "[t]he requirement that a suit arise out of or relate to the activities that a defendant directed at the forum precludes such a tangential jurisdictional anchor."  (*Id.* at 11) (emphasis in original).  And, as explained in more detail below, Judge Domenico rejected the notion that Plaintiffs could support jurisdiction through a conspiracy or joint employer theory. (*See id.* at 12-15.)

As to venue, Judge Domenico indicated that venue in the District of Colorado was questionable because, although the Colorado Rockies allegedly refused employment to five of the

Plaintiffs, there were "no allegations that those Plaintiffs ever entered Colorado seeking employment," and that "is a very thin peg on which to hang the venue of such a large case." (Dkt. 71 at 5.) He further explained that, "[o]ther than the Rockies' specific employment decisions, the only thing tying the Defendants to this forum is the ethereal possibility that the actions of the Clubs and the MLB nationwide limited the number of scouting job opportunities available or known to Plaintiffs in Colorado." (*Id.*) To that, Judge Domenico responded that "[e]ven if that possibility turns out to be true, the allegations of the *Fourth* Amended Complaint give no reason to think the impact would be measurable enough to constitute a 'substantial part' of the action." (*Id.*) (emphasis in original). Finally, Judge Domenico found problematic that "the majority of Plaintiffs were not injured by any actions with any connection to this venue," meaning that "many Plaintiffs…would be pursuing claims against Defendants unconnected to this forum for injuries not sustained in this forum." (*Id.* at 6-7.) "To bring those Defendants into court in Colorado to account for their actions taken elsewhere is precisely the type of 'unfair or inconvenient' proceeding that the venue statute aims to prevent." (*Id.* at 7) (internal citation omitted).

While Judge Domenico questioned whether Plaintiffs' venue and jurisdiction theories over Defendants (other than MLB and the New York Yankees) would be successful in the Southern District of New York, he nonetheless transferred the case here. (*Id*. at 15, n.8.)

### C.    Proceedings Before This Court Following Transfer

The case was docketed in this Court on June 6, 2024. (Dkt. 72.) On July 23, 2024, Plaintiffs filed an Amended Motion for Entry of an Order Deeming Defenses of Lack of Personal Jurisdiction and Improper Venue Waived and Requiring an Answer. (Dkt. 89.) On July 24, 2024, this Court held an initial case management conference. The Court ordered Defendants to file a written response to Plaintiffs' July 23 motion, with the instruction that Defendants should address only Plaintiffs' argument with respect to waiver of the lack of personal jurisdiction and improper

venue defenses—not any claim of default.  (Dkts. 90, 91.)  The Court also ordered Plaintiffs to file

a Fifth Amended Complaint that conformed the allegations regarding jurisdiction and venue to

reflect the case being filed in this District.  (Dkt. 91.)  The Court stayed Defendants' time to

respond to the Fifth Amended Complaint pending resolution of Plaintiffs' motion as to waiver.

(*Id.*)  On August 20, 2024, Plaintiffs filed the Fifth Amended Complaint.  (Dkt. 94.)

By Order dated January 29, 2025, the Court denied Plaintiffs' "borderline-frivolous

motion" regarding waiver and provided Defendants until February 28, 2025 to answer or move

against the Fifth Amended Complaint.  (Dkt. 97.)

## ARGUMENT

**I.    ALL CLAIMS AGAINST NON-RESIDENT DEFENDANTS SHOULD BE DISMISSED BECAUSE THE PLAINTIFFS HAVE NOT ALLEGED—AND CANNOT ALLEGE—ANY BASIS FOR THIS COURT TO EXERCISE PERSONAL JURISDICTION OVER ANY OF THEM.**

For this Court to exercise personal jurisdiction over the Non-Resident Defendants,

Plaintiffs must prove that: (1) New York's long-arm statute establishes personal jurisdiction; and

(2) the Court's exercise of jurisdiction comports with the due process protections established under

the Constitution.  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir.

2013); *Eades v. Kennedy, PC L. Offs.*, 799 F.3d 161, 168 (2d Cir. 2015).

An out-of-state defendant's contacts with the forum state may give rise to either general or

specific jurisdiction.  *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016).

"A court may assert general personal jurisdiction over a foreign defendant to hear any and all

claims against that defendant only when the defendant's affiliations with the State in which suit is

brought 'are so constant and pervasive as to render [it] essentially at home in the forum State.'"

*Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2015)).  Plaintiffs concede in the Fifth

Amended Complaint that the Non-Resident Defendants are not subject to general jurisdiction, alleging only that they are subject to specific jurisdiction. (Dkt. 94 ¶ 69(b).)[1]

Specific jurisdiction, unlike general jurisdiction, "'depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'…The exercise of specific jurisdiction depends on in-state activity that 'gave rise to the episode-in-suit.'" *Waldman*, 835 F.3d at 331 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 923 (2011)).

N.Y. CPLR 302 is New York's long-arm statute governing specific jurisdiction. The statute provides in relevant part that "a court may exercise personal jurisdiction over any non-domiciliary…who in person or through an agent…transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. CPLR 302(a)(1). The statute additionally provides for personal jurisdiction over a non-domiciliary who "commits a tortious act without the state causing injury to person or property within the state…if [the non-domiciliary] (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. CPLR 302(a)(3).[2] "[T]he New York

---

[1] Plaintiffs' concession is entirely appropriate, as every court to have considered this very issue post-*Daimler* has found general jurisdiction to be lacking. *See*, *e.g.*, *Payne v. Off. of the Comm'r of Baseball*, No. 15-cv-03229-YGR, 2016 WL 1394369, at *5 (N.D. Cal. Apr. 8, 2016); *Senne v. Kan. City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1018-19 (N.D. Cal. 2015); *Concepcion v. Off. of Comm'r of Baseball*, No. 22-cv-1017 (MAJ/BJM), 2023 WL 4110155, at *4 (D.P.R. May 31, 2023), *report and recommendation adopted*, No. 22-cv-1017 (MAJ/BJM), 2023 WL 4109788 (D.P.R. June 21, 2023).

[2] N.Y. CPLR 302(a)(2) and (4) are inapplicable.

long-arm statute is more restrictive than the federal due process requirements." *Chatwal Hotels &*

*Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 108 (S.D.N.Y. 2015).

Plaintiffs bear the burden of establishing personal jurisdiction. *Waldman*, 835 F.3d at 317,

334. As explained below, Plaintiffs have not met, and cannot meet, their burden to demonstrate

that specific jurisdiction exists over the Non-Resident Defendants.

### A.    This Court Lacks Specific Jurisdiction over the Non-Resident Defendants under N.Y. CPLR 302(a)(1).

Plaintiffs fail to allege facts to support specific jurisdiction over the Non-Resident

Defendants under N.Y. CPLR 302(a)(1). "To establish personal jurisdiction under section

302(a)(1), two requirements must be met: (1) The defendant must have transacted business within

the state; and (2) the claim asserted must arise from that business activity." *Licci*, 732 F.3d at 170

(internal quotations omitted).

Under Section 302(a)(1), "New York courts define 'transact[ing] business' as purposeful

activity. [P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though

the defendant never enters New York, so long as the defendant's activities here were purposeful

***and there is a substantial relationship between the transaction and the claim asserted***." *Sullivan*

*v. Ringling Coll. of Art & Design, Inc.*, No. 19-CV-1302 (RA), 2019 WL 6529823, at *3 (S.D.N.Y.

Dec. 4, 2019) (emphasis added).

### 1.    The Non-Resident Defendants Did Not Purposefully Direct Activities at Forum Residents.

The Non-Resident Defendants' forum-related activities alleged in the Fifth Amended

Complaint are limited to allegations that the Non-Resident Defendants allow the MLB Defendants

to exercise control of nationwide scouting operations, the fact that MLB games are played and

officiated in New York, the revenue allegedly derived therefrom, and that players are scouted in

New York and may be selected in the MLB amateur draft. (Dkt. 94 ¶ 69(b).) None of these

allegations bears a "substantial relationship" to Plaintiffs' claim that the Non-Resident Defendants refused to hire them based on their ages sufficient to confer personal jurisdiction. *See Sullivan*, 2019 WL 6529823, at \*3.

Since 2020, no non-resident Club has played more than ten out of its 162 games per year in New York, with most Clubs playing here far less and certain Clubs not playing here at all in the last four seasons. (*See* Dkt. 94 ¶ 69(b)(2).)[3]  These activities are insufficient to be deemed purposeful direction at forum residents. *See, e.g., Sullivan*, 2019 WL 6529823, at \*4 ("[h]osting several alumni or recruitment events in New York—or otherwise advertising the college's offerings—does not reflect the requisite level of purposeful activity in New York to satisfy § 302(a)(1)"); *Dareltech, LLC v. Xiaomi Inc.*, No. 18-CV-8729 (AKH), 2019 WL 3287957, at \*8 (S.D.N.Y. July 22, 2019) ("[h]osting three sporadic events in the jurisdiction does not constitute purposefully availing itself of the privilege of doing business in the forum and foreseeing being haled into court there") (internal quotations omitted).

Similarly, there is no allegation in the Fifth Amended Complaint that any Non-Resident Defendant targeted Plaintiffs in New York, much less targeted Plaintiffs in New York regarding employment as required under the specific jurisdiction analysis. *See infra* at I.B.  To the contrary, the allegations in the Fifth Amended Complaint against the Non-Resident Defendants are that the Plaintiffs reached out to Clubs located in jurisdictions outside of New York. (Dkt. 94 ¶ 111)

---

[3] Defendants request that the Court take judicial notice pursuant to Fed. R. Evid. 201 of the number of times each Club played in New York between 2020 and 2023, as there can be no dispute, let alone a reasonable one, concerning this information. *See generally*, *Ganske v. Mensch*, 480 F. Supp. 3d 542, 545 (S.D.N.Y. 2020) ("A district court [] has the discretion to take judicial notice of internet materials.") (internal quotation omitted).  The New York Mets' and New York Yankees' schedules, and the number of times each Club played in New York, are readily available. *See, e.g.,* https://www.espn.com/mlb/team/schedule/_/name/nym/season/2020.

("Each of the Club Defendants have been contacted by one or more Plaintiffs seeking employment…").

### 2. Plaintiffs' Claims Do Not Arise Out of or Relate to Defendants' Forum-Related Activities.

Even if the Non-Resident Defendants are deemed to have transacted business in New York within the meaning of Section 302(a)(1), jurisdiction still is lacking because Plaintiffs' claims are completely unrelated to those activities. "The Court of Appeals made clear that the 'arising from' prong of section 302(a)(1) does not require a causal link between the defendant's New York business activity and a plaintiff's injury. Instead, it requires a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim." *Licci*, 732 F.3d at 168-69. This Court cannot exercise specific jurisdiction over the Non-Resident Defendants pursuant to N.Y. CPLR 302(a)(1) because Plaintiffs' age discrimination claims do not arise out of, and are completely unrelated to, whatever limited contacts the Non-Resident Defendants are alleged to have had in New York. Indeed, the allegations in the Fifth Amended Complaint make plain that there is absolutely no nexus whatsoever between Plaintiffs' failure-to-hire claims against the Non-Resident Defendants and this forum.

Plaintiffs allege that they have been discriminated against in being denied employment, but they make no allegations tying these hiring decisions—the discrimination underlying their legal claim—to the Non-Resident Defendants' contacts with this forum. Therefore, Plaintiffs have not shown—and cannot show—that their failure-to-hire claims in this litigation resulted from the Non-Resident Defendants' limited contacts with New York so as to satisfy the "arise out of" or "relate to" requirement for specific jurisdiction. Courts routinely dismiss claims against non-resident defendants in these very circumstances. *See*, *e.g.*, *Sullivan*, 2019 WL 6529823, at *4 (dismissing

11

plaintiff's discrimination claims against non-resident defendant where claims did not arise from defendant's alleged activities in New York); *Mann v. Camp Fatima, Inc.*, No. 22-CV-4740 (DG)(SIL), 2023 WL 10354262, at *6 (E.D.N.Y. Nov. 8, 2023), *report and recommendation adopted*, 2024 WL 549282 (E.D.N.Y. Feb. 12, 2024) (same); *Zheng v. Halliburton Energy Servs., Inc.*, No. 1:22-CV-00814(BKS/ATB), 2023 WL 3783125, at *5 (N.D.N.Y. May 12, 2023) (same); *D'Anzieri v. Harrison Glob. LLC*, No. 21-CV-8506 (VEC), 2022 WL 17404254, at *5 (S.D.N.Y. Dec. 2, 2022) (same); *see also Mason v. Antioch Univ.*, No. 15-CV-5841 (SJF)(GRB), 2016 WL 2636257, at *4 n.5 (E.D.N.Y. May 5, 2016) ("All of the alleged discriminatory harassment occurred at the University's campus in Seattle, Washington; all of Smith's reports of harassment were made to employees at that campus; and any act, or failure to act, on those reports by the University occurred at that campus.  As not even one of the elements of Smith's Title VI claims arises from the University's purported contacts with New York, Smith's claims against the University did not arise from its contacts with New York.").

The Supreme Court's decision in *Bristol-Myers Squibb* reinforces the requirement that "there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State' for a court to exercise specific jurisdiction over a claim." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S. F. Cnty.*, 582 U.S. 255, 262 (2017) (citing *Goodyear*, 564 U.S. at 919).  When there is no connection between the defendant's activities and the plaintiff's alleged injuries, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id*. at 264 (citing *Goodyear*, 564 U.S. at 930 n.6) ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales").  Thus, even if Non-Resident Defendants' traveling to New York to play baseball games and scout players in the state were to

satisfy the purposeful direction prong, Plaintiffs cannot show that their failure-to-hire claims against the Non-Resident Defendants arise out of or relate to those activities.  Indeed, as Judge Domenico found, "Plaintiffs' age discrimination claims are not derived from the *playing* of baseball or the somewhat broader act of putting on baseball games. The requirement that a suit arise out of or relate to the activities that a defendant directed at the forum precludes such a tangential jurisdictional anchor."  (Dkt. 71 at 11) (emphasis in original).

In *Bristol-Myers Squibb*, the Supreme Court explained the "danger" in exercising specific jurisdiction when there is an inadequate link between the plaintiffs' claims and the forum state. 582 U.S. at 264.

> The State Supreme Court found that specific jurisdiction was present without identifying any adequate link between the State and the nonresidents' claims. As noted, the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California. The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims. . . .
>
> In today's case . . .[t]he relevant plaintiffs are not California residents and do not claim to have suffered harm in that State. In addition, as in *Walden*, all the conduct giving rise to the nonresidents' claims occurred elsewhere. It follows that the California courts cannot claim specific jurisdiction.

*Id*. at 264-65 (emphasis in original).[4]

The very same danger in exercising specific jurisdiction over the Non-Resident Defendants is present here, where the injury Plaintiffs claim to have sustained is the denial of employment in

---

[4] In *Ford Motor Co. v. Montana Eighth Judicial District*, the Supreme Court reaffirmed the need for a connection between plaintiffs' claims and the forum state.  "Removing the need for any connection between the case and forum State would transfigure our specific jurisdiction standard as applied to corporations.  'Case-linked' jurisdiction . . . would then become not case-linked at all."  592 U.S. 351, 362 (2021).

other states based on conduct that allegedly occurred in other states.  (Dkt. 94 ¶ 71.)  But the Fifth Amended Complaint contains no allegations tying the Non-Resident Defendants' hiring decisions to any of their alleged contacts with New York.  Critically, there is no plausible nexus between a Non-Resident Defendant's employment decisions and the sparse contacts alleged in the Fifth Amended Complaint.  Plaintiffs do not allege that any Non-Resident Defendant injured them based on alleged discrimination that took place in New York.  The absence of any such allegations is exactly what prompted the Supreme Court in *Bristol-Myers Squibb* to hold specific personal jurisdiction to be lacking.  *See Bristol-Myers Squibb*, 582 U.S. at 265.

The court's decision in *Hill v. AMB Sport & Entertainment, LLC*, No. 22-cv-2961, 2023 WL 2058066, at *6 (N.D. Ill. Feb. 16, 2023), also is instructive.  In that case, Hill, a professional soccer coach, alleged that several soccer teams based outside of Illinois refused to hire him because of his race.  The court declined to exercise specific jurisdiction for two principal reasons.  First, because "the alleged discriminatory conduct occurred in the respective states where the employment decisions were made—not in Illinois where Hill resides"—the court lacked jurisdiction even where the defendants' alleged conduct affected Hill in his home state of Illinois. *Id*. at *6.  Second, regardless of where the unlawful conduct occurred, the court deemed it significant that "Hill reached out to these teams about the possibility of employment in their respective states—they did not seek him out."  *Id*.  The same is true here, where Plaintiffs allege to have reached out to the Non-Resident Defendants to seek employment; there are no allegations that any Defendant reached out to Plaintiffs, much less reached out to them in New York.  Indeed, the case for jurisdiction is far weaker here than in *Hill*, as only one of the thirty-five Plaintiffs resides in New York.  *See also In re Nat'l Hockey League Players' Concussion Injury Litig*., MDL No. 14-2551, 2019 WL 5088516, at *4 (D. Minn. Oct. 10, 2019) (holding no specific jurisdiction

over National Hockey League because its "attenuated contacts are clearly not connected to [plaintiff's] claims" where plaintiff did not plead any injury in forum state resulting from the league's acts or omissions.)

> **B.    The Non-Resident Defendants did not cause injury to a person within the state as required for jurisdiction under Section 302(a)(3).**

The allegations of the Fifth Amended Complaint do not satisfy Section 302(a)(3)'s requirement that the Non-Resident Defendants' acts caused injury to a person within New York. Section 302(a)(3) confers jurisdiction over a non-domiciliary when five elements are met: (1) the plaintiff stated a colorable claim that the defendant committed a tortious act outside the state; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within the state; (4) the defendant expected or should reasonably have expected the act to have consequences in the state; (5) the defendant derives substantial revenue from interstate or international commerce. *Aziyz v. Cameca*, No. 1:22-cv-579, 2023 WL 6065850, at *13 (N.D.N.Y. Sept. 18, 2023).

"Courts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the original event which caused the injury…The situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff." *Lear v. Royal Caribbean Cruises Ltd.*, No. 1:20-cv-4660-GHW, 2021 WL 1299489, at *10 (S.D.N.Y. Apr. 7, 2021). Jurisdiction is not proper under 302(a)(3) because Plaintiffs have not alleged that any acts of the Non-Resident Defendants caused injury to a person within the state.

In *Lear*, the plaintiff, a New York resident, was hired by a non-resident defendant, but, before he could commence work, his employment was terminated because he failed a medical exam. *Id.* at *1. The plaintiff brought discrimination claims, arguing that he was terminated as a

result of his disability, *id.*, but the court held that it lacked jurisdiction over the defendant under Section 302(a)(3) because the original event that caused plaintiff's alleged injury did not occur in New York. *Id.* at *9-10. Plaintiff argued that New York was the situs of injury because he was hired, fired, and discriminated against in New York, but the court rejected that argument because plaintiff had not yet begun working at the time defendants decided not to continue his engagement. *Id.* Moreover, "[Plaintiff's] presence in New York at the time of his hiring and [the defendant's] decision not to proceed with his employment—together with the fact that he felt the consequences of that decision in New York—do not make New York the place of the original event that caused his injury. Because the situs of injury was not New York, the Court cannot exercise jurisdiction over [the defendant] under Section 302(a)(3)." *Id.*

The court's reasoning in *Lear* compels the same result here, where Plaintiffs do not allege that any of the Non-Resident Defendants discriminated against them in New York. Accordingly, the situses of injury of all claims against the Non-Resident Defendants are in jurisdictions outside of New York.

Even the allegations of Plaintiff Sheehan, the only Plaintiff who alleges to be a New York resident when he was allegedly unlawfully denied employment, are insufficient to confer jurisdiction. (Dkt. 94 ¶¶ 14, 110-11.) As in *Lear*, the original event that allegedly caused Plaintiff Sheehan's injury—*i.e.*, alleged decisions by Non-Resident Defendants Chicago White Sox, Houston Astros, Kansas City Royals, Miami Marlins, Milwaukee Brewers, Philadelphia Phillies and the Pittsburgh Pirates not to hire him—did not occur in New York.[5] Plaintiff Sheehan's presence in New York at the time of those Clubs' "decision not to proceed with his employment— together with the fact that he felt the consequences of that decision in New York—do[es] not make

---

[5] In fact, no Non-Resident Defendant is alleged to have made *any* hiring decisions in New York.

16

New York the place of the original event that caused his injury." *Lear*, 2021 WL 1299489, at *10.

*See also Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990) (no jurisdiction under 302(a)(3)

where New York resident sued Maryland corporation regarding his termination from employer's

New Jersey worksite); *Beckett v. Prudential Ins. Co. of Am.*, 893 F. Supp. 234, 239 (S.D.N.Y.

1995) ("[O]ne single telephone call made to New York is insufficient contact to support a suit

initiated in that forum against an out-of-state resident under [] the…tort provision[] of CPLR

302.").

     **C.**    **Even If There Was Jurisdiction under N.Y. CPLR 302(a), Jurisdiction Here Would Offend Traditional Notions of Fair Play and Substantial Justice, Running Afoul of Constitutional Due Process.**

Even if Plaintiffs had alleged that the Non-Resident Defendants engaged in activities

sufficient to meet the standards for statutory jurisdiction, personal jurisdiction could only exist if

it "comports with traditional notions of fair play and substantial justice under the circumstances of

the particular case." *Waldman*, 835 F.3d at 317, 331 (internal quotations omitted). The exercise

of jurisdiction in this case would offend traditional notions of fair play and substantial justice based

on the following factors courts consider: (1) the burden on the non-resident defendants, (2) the

forum state's interest in resolving the dispute, (3) the plaintiffs' interest in receiving convenient

and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient

resolution of controversies, and (5) the shared interest of the several states in furthering

fundamental substantive social policies. *Eades*, 799 F.3d at 169 (quoting *Chloe v. Queen Bee of

Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010)).

The first factor, burden on foreign defendants, weighs against jurisdiction because the

burden on the Non-Resident Defendants to litigate here, in many cases thousands of miles away

from their home states, would be significant. The second factor, the interest of the forum state,

also weighs against exercising jurisdiction because only one of the Plaintiffs is a New York

resident and resolution of Plaintiffs' claims does not require an application of New York law.  *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 574 (2d Cir. 1996); *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 244 (2d Cir. 1999) (identifying the fact that New York law governed the plaintiff's claims as increasing New York's interest in the case).  The third factor hinges on a "plaintiff's interests in proceeding in a convenient forum."  *Metro. Life Ins. Co.*, 84 F.3d at 574.  The Fifth Amended Complaint contains no information suggesting that New York is the most efficient forum in which to litigate Plaintiffs' age discrimination claims.  Since all but one of the Plaintiffs are not New York residents and they reside across the country, they cannot credibly allege that this Court is the most convenient forum for them.  *See Id.*  Thus, the third factor weighs against exercising jurisdiction.

The fourth factor—the interstate judicial system's interest in obtaining the most efficient resolution of controversies—turns on the location of witnesses, where the underlying wrong occurred and where evidence is likely to be located.  *Id.*  Plaintiffs do not allege that the Non-Resident Defendants committed any underlying wrong in New York, and they have not invoked New York law in the Fifth Amended Complaint.  The nature of Plaintiffs' failure to hire claims suggests that potential witnesses will be the Non-Resident Defendants' officials involved with hiring scouts, nearly all of whom are located outside of New York.  As such, this factor also weighs against exercising personal jurisdiction over the Non-Resident Defendants.

The fifth and final factor focuses on whether "any substantive social policies would be furthered or undermined by permitting" the exercise of personal jurisdiction by the forum.  *Kernan*, 175 F.3d at 245.  Because at least some of the states where Plaintiffs reside have an express interest in preventing age discrimination in employment, *see, e.g.,* Fla. Stat. § 760.01(2); Tex. Labor Code Ann. § 21.001, this factor is at least neutral.

On balance, even if Plaintiffs could establish that their claims arise out of or relate to Non-Residents Defendants' forum-related activities—which they cannot—exercise of jurisdiction would not be appropriate because it would offend notions of fair play and substantial justice based on the five factors discussed above.

### D.    Plaintiffs' Joint Employment, Conspiracy and Collective Action Allegations Do Not Confer Personal Jurisdiction Over Non-Resident Defendants.

In apparent recognition that Plaintiffs cannot satisfy the traditional tests for personal jurisdiction based on Non-Resident Defendants' contacts with New York, Plaintiffs purport to base personal jurisdiction on "joint employer/co-conspirator/collective action/class action theories." (Dkt. 94 ¶ 69(c).)  None of these so-called "theories" cures the fatal jurisdictional defects in the Fifth Amended Complaint.

### 1.    Joint Employment Allegations Do Not Confer Jurisdiction Over the Non-Resident Defendants.

As noted above, each Plaintiff is suing only the specific Club or Clubs that allegedly refused to hire him plus the MLB Defendants as purported joint employers with each distinct Club. (Dkt. 94 ¶ 111.)  Plaintiffs' allegations of a joint employer relationship between each Club on the one hand and the MLB Defendants on the other does not confer personal jurisdiction over the Non-Resident Defendants because the MLB Defendants' contacts in this forum cannot be imputed to the Non-Resident Defendants.

In declining to recognize a joint-employer theory of personal jurisdiction, Judge Domenico found that "[p]ersonal jurisdiction and statutory liability are distinct concepts," and "'[a] state or federal statute cannot transmogrify insufficient minimum contacts into a basis for personal jurisdiction by making these contacts elements of a cause of action.'"  (Dkt. 71 at 14) (quoting *Cent. States Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944-45 (7th Cir. 2000)).  Judge Domenico noted that "other courts that have collapsed the distinction

19

reveals that '[t]he courts applying an employer liability test to determine personal jurisdiction have largely done so without analysis.'"  *Id.* (quoting *Creech v. P.J. Wichita, L.L.C.*, No. 16-CV-2312-JAR-GEB, 2017 WL 914810, at *3 (D. Kan. Mar. 8, 2017) (collecting cases)).  "To hold that entities meeting the statutory definition of joint employer for determining their liability are also meeting the requirements of specific jurisdiction anywhere a joint entity resides 'threatens to confuse the standards applicable to personal jurisdiction and those applicable to liability.'"  (Dkt. 71 at 14.)

Indeed, courts in this District have consistently rejected attempts by plaintiffs to establish personal jurisdiction over out-of-state defendants based on a purported joint employment relationship.  *See Zurich Am. Life Ins. Co. v. Nagel*, 571 F. Supp. 3d 168, 177 (S.D.N.Y. 2021); *Henao v. Parts Auth., LLC*, 557 F. Supp. 3d 490, 497 (S.D.N.Y. 2021); *Dong Chul Kim v. Harte Hanks, Inc.*, 425 F. Supp. 3d 246, 258 (S.D.N.Y. 2019).  Instead, each Non-Resident Defendant's contacts with the forum state must be assessed individually.  *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 84 (2d Cir. 2018) (citing *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984)).  That is because "personal jurisdiction must arise out of the contacts that the defendant *himself* creates with the forum."  *SPV Osus Ltd. v. UniCredit Bank Austria*, No. 18-CV-3497(AJN), 2019 WL 1438163, at *10 (S.D.N.Y. Mar. 30, 2019) (internal quotations omitted) (emphasis in original)).  Because the Non-Resident Defendants lack sufficient contacts for this Court to exercise personal jurisdiction, Plaintiffs cannot cure that defect by alleging a joint employment relationship.

> ## 2.  Plaintiffs Cannot Establish Jurisdiction by Alleging a Conspiracy to Violate the ADEA.

Plaintiffs' suggestion that all Defendants are subject to personal jurisdiction based on a supposed "co-conspirator" theory is wrong.  (Dkt. 94 ¶ 69(c).)  As an initial matter, as Judge

Domenico explained, "while the complaint suggests a factual conspiracy existed between the Defendants to blacklist and limit opportunities for older scouts, there is no claim to support a legal conspiracy." (Dkt. 71 at 13.)   In any case, "the bland assertion of conspiracy or agency is insufficient to establish jurisdiction." *E-Z Bowz, L.L.C. v. Prof. Prod. Research Co., Inc.*, No. 00-CV-8670, 2003 WL 22064259, at *12 (S.D.N.Y. Sept. 5, 2003) (internal quotations and citation omitted).   Rather, "courts that have recognized personal jurisdiction on the basis of conspiracy have required plaintiffs to…make a *prima facie* factual showing of a conspiracy."   *In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 4634541, at *23 (S.D.N.Y. Aug. 4, 2015) (internal quotations omitted).

However, as Judge Domenico found, "[p]laintiffs here can hardly argue that they have alleged a prima facie showing of a conspiracy when they have not made any such claim for relief." (Dkt. 71 at 13) (internal quotation omitted).   Nor can they.   "[F]urther damning," according to Judge Domenico, Plaintiffs cannot rely on an alleged conspiracy to violate the ADEA because that is not a legally cognizable conspiracy.   (Dkt. 71 at 13.)   Indeed, as courts have consistently found, "[t]he deprivation of a right created by [the ADEA] cannot be the basis for a civil conspiracy cause of action." *Francis v. Perez*, 256 F. Supp. 3d 1, 6 (D.D.C. 2017); *see also Schwinn v. Human Affairs Int'l, Inc.*, No. 99-4140, 2000 WL 731785, at *1 (10th Cir. June 8, 2000) ("Violation of the ADEA cannot form the basis for a § 1985(3) claim.") (unpublished opinion) (citing *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d Cir. 1996)); *Piersall v. Crane Carrier Co.*, No. 08-CV-116-TCK-SAJ, 2008 WL 4632920, at *2 (N.D. Okla. Oct. 16, 2008) ("…the Court concludes that age-based discriminatory animus cannot be the underlying 'class-based' animus forming the basis of a § 1985(3) claim."); *Watkins v. Rite Aid Corp.*, No. 4:06cv00299, 2006 WL 2085992, at *3 (M.D. Pa. July 25, 2006) ("We initially note that ample applicable case law reveals that no valid

claim for conspiracy to violate the ADEA exists.") (collecting cases); *Apsley v. Boeing, Co.*, No. 05-1368-MLB, Dkt. 239 at 6-7 (D. Kan. May 21, 2008) (denying plaintiff's motion to amend complaint to add cause of action for civil conspiracy under state law as futile because civil conspiracy claim was preempted by ADEA).

Because Plaintiffs have failed to allege a *prima facie* showing of a conspiracy, their assertion of personal jurisdiction based on a conspiracy theory must fail. *See In re Libor-Based Fin. Instruments Antitrust Litig.*, 2015 WL 4634541, at *23; *Singer v. Bell*, 585 F .Supp. 300, 303 (S.D.N.Y. 1984) (granting motion to dismiss for lack of personal jurisdiction based on conspiracy theory where plaintiffs failed to establish a *prima facie* showing of conspiracy and where plaintiffs' allegations were "based on neither direct nor circumstantial evidence, nor reasonable inference therefrom, but on mere speculation and conjecture"); *Scott v. Nat'l Ass'n for Stock Car Racing, Inc.*, No. 06 Civ. 6029 (DAB), 2008 WL 217049, at *9 (S.D.N.Y. Jan. 17, 2008) (explaining that a plaintiff must assert specific factual connections between the non-resident defendants and transactions occurring *in New York* for a court to assert personal jurisdiction based on a conspiracy theory).

Because there is no *prima facie* showing of a conspiracy in the Fifth Amended Complaint—and there can be no conspiracy to violate the ADEA—Plaintiffs cannot rely on a co-conspirator theory to establish personal jurisdiction over the Non-Resident Defendants.

### 3.    There is No "Collective Action/Class Action" Theory of Jurisdiction.

Plaintiffs' reliance on a "collective action/class action" theory of personal jurisdiction is equally unavailing. (Dkt. 94 ¶ 69(c).) As an initial matter, the Fifth Amended Complaint no longer contains any class action allegations. Plaintiffs dropped all state and city law claims alleged in earlier versions of their complaint that had been the subject of their proposed Rule 23 classes, and those claims are no longer part of this case. (Dkt. 51 at 14.)

Although Plaintiffs purport to bring their ADEA claims as a putative collective action, that is irrelevant to the personal jurisdiction inquiry.  When a case is filed on a representative basis, courts may not consider the hypothetical claims of unnamed putative collective members when considering jurisdiction; only the claims of the named plaintiffs are relevant to the jurisdiction inquiry.  *See Suarez v. Cal. Nat. Living, Inc.*, No. 17 CV 9847 (VB), 2019 WL 1046662, at *5 (S.D.N.Y. Mar. 5, 2019) (stating that "[s]pecific jurisdiction in a class action arises from the *named* plaintiff's causes of action" and declining to consider at the motion to dismiss stage whether the court had personal jurisdiction over the defendant based on potential out-of-state class members' claims) (emphasis in original); *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 397-98 (S.D.N.Y. 2021) ("In assessing whether this Court may exercise personal jurisdiction over Defendants, notwithstanding the fact that Named Plaintiffs purport to represent individuals domiciled across the United States, including in New York… the Court can consider only the Named Plaintiffs' claims; the unnamed class members, who may or may not ever become parties to this action, are irrelevant to the question of specific jurisdiction.").

Because this Court has neither general nor specific personal jurisdiction over the Non-Resident Defendants, the Court should dismiss the Non-Resident Defendants for lack of personal jurisdiction.

## II.    ALL CLAIMS AGAINST NON-RESIDENT DEFENDANTS AND THE NEW YORK METS SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE NOT ALLEGED—AND CANNOT ALLEGE—ANY FACTS TO SUPPORT VENUE IN THIS DISTRICT.

This Court should dismiss the Fifth Amended Complaint for the independent reason that venue is improper as to the Non-Resident Defendants and the New York Mets.  Plaintiffs predicate venue on 28 U.S.C. § 1391(b)(2) based on their allegations that (i) the MLB Defendants and the New York Yankees are located in this district; (ii) the Non-Resident Defendants coordinate the

23

hiring and firing of scouts within this District by sending scout contracts and notices of termination

of scout contracts to the MLB Defendants; (iii) each Defendant conducts business in this District

by playing, officiating or otherwise conducting MLB games in this District; and (iv) a substantial

part of the conduct giving rise to Plaintiffs' claims occurred in this District.  (Dkt. 94 ¶ 70.)  These

conclusory allegations are insufficient to establish venue in this District.

The general venue statute, 28 U.S.C. § 1391, applies to Plaintiffs' ADEA claims.  *See, e.g.,*

*Warwick v. Schultz*, No. 23-CV-5242 (LTS), 2023 WL 5240926, at *1 (S.D.N.Y. June 27, 2023).

The specific venue provision Plaintiffs invoke in the Fifth Amended Complaint, 28 U.S.C. §

1391(b)(2), (Dkt. 94 ¶ 70), provides that "[a] civil action may be brought in . . . a judicial district

in which a substantial part of the events or omissions giving rise to the claim occurred, or a

substantial part of property that is the subject of the action is situated."

"[A]s the Supreme Court explained before the amendment of section 1391, '[i]n most

instances, the purpose of statutorily defined venue is to protect the *defendant* against the risk that

a plaintiff will select an unfair or inconvenient place of trial.'"  *Daniel v. Am. Bd. of Emerg. Med.*,

428 F.3d 408, 432 (2d Cir. 2005) (quoting *Leroy v. Great W. United Corp.*, 443 U.S. 173-183-84

(1979)) (emphasis in original).  "[T]he Second Circuit has made clear that the venue analysis 'must

focus on where the *defendant*'s acts or omissions occurred.'"  *N.E. Landscape & Masonry Assocs.,*

*Inc. v. State of Conn. Dept. of Lab.*, No. 14-CV-9104 (KMK), 2015 WL 8492755, at *4 (S.D.N.Y.

Dec. 10, 2015) (quoting *Prospect Cap. Corp. v. Bender*, No. 09-CV-826, 2009 WL 4907121, at

*3 (S.D.N.Y. Dec. 21, 2009)) (emphasis in original).

The same concerns that prompted Judge Domenico to question venue over "such a large

case" in Colorado persist in this District as well.  (Dkt. 71 at 5.)  Specifically, Judge Domenico

observed that Plaintiffs' reliance upon the Colorado Rockies' alleged refusal to employ five out of

35 Plaintiffs was a "very thin peg on which to hang" venue where none of the Plaintiffs alleged that they ever entered Colorado seeking employment. (*Id.*) Plaintiffs' attempt to rely on the same "very thin peg" to establish venue in this District must also fail. Plaintiffs do not (and cannot) allege that the Non-Resident Defendants' and New York Mets' decisions not to hire Plaintiffs occurred in this District or that any of the activities associated with those decisions, *e.g.*, interviews or other communications initiated by the Non-Resident Defendants or the New York Mets, occurred in this District. Moreover, none of the Plaintiffs aside from Plaintiff Sheehan is a New York resident; even so, neither the non-resident Plaintiffs nor Plaintiff Sheehan alleges any activity in this District related to their alleged efforts to obtain employment. And while Plaintiffs claim that Defendants send contracts and termination notices to this District, their claims in this case are based on an alleged refusal to hire—not breach of contract or unlawful termination.

In these circumstances, Plaintiffs cannot establish that *any* events or omissions giving rise to their claims against the Non-Resident Defendants or the New York Mets occurred in this District, much less a "substantial part of the events or omissions" as required under the venue provision on which Plaintiffs rely. 28 U.S.C. § 1391(b)(2). *See*, *e.g.*, *N.E. Landscape & Masonry Assocs., Inc.*, 2015 WL 8492755, at *4 (finding improper venue under § 1391(b)(2) where "Defendants did not commit any of the alleged acts or omissions underlying Plaintiff's constitutional claim in the Southern District of New York"); *Prospect Cap. Corp.*, 2009 WL 4907121, at *6 (finding improper venue under § 1391(b)(2) where "[v]irtually no conduct by any Venue Defendant actually occurred in or was directed to this district"); *I.M.D. USA, Inc. v. Shalit*, 92 F. Supp. 2d 315, 318 (S.D.N.Y. 2000) (finding improper venue under § 1391(b)(2) where "substantial events and omissions giving rise to the causes of action in this complaint did not occur in this District").

Because there is no district where this case could "have been brought" that would have jurisdiction and venue over all Defendants, it is not susceptible for transfer under 28 U.S.C. § 1404 or § 1631. Accordingly, the Fifth Amended Complaint should be dismissed for improper venue as to all Defendants other than the MLB Defendants and the New York Yankees.[6]

## III.    ANY SURVIVING CLAIMS SHOULD BE DISMISSED FOR THE INDEPENDENT REASON THAT THEY FAIL TO STATE A PLAUSIBLE CLAIM FOR RELIEF.

All claims against the New York-based Defendants—as well as all claims against the Non-Resident Defendants in the event the Court concludes that it can exercise personal jurisdiction over them and that venue is appropriate—should be dismissed for failure to state a claim for relief. Rule 12(b)(6) provides for the dismissal of a complaint for a plaintiff's failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Allegations must consist of more than mere labels, legal conclusions, or a "formulaic recitation of the elements of a cause of action," and bare legal conclusions are "not entitled to the assumption of truth." *Id.* at 678.

"[F]or a failure to hire claim to withstand a motion to dismiss, a plaintiff must allege [a] specific position[] to which she applied and was rejected" and "[t]o qualify as an application, a plaintiff's actions must be more than a general request for employment." *Whigham-Williams v. Am. Broad. Co., Inc.*, No. 17-cv-6600 (AJN), 2018 WL 4042110, at *2 (S.D.N.Y. Aug. 22, 2018).

---

[6] In transferring the case to this District, Judge Domenico found that the case "could have been brought" here only with respect to Plaintiffs' claims against MLB and the New York Yankees—not against any other Defendant. (Dkt. 71 at 15, n.8.) Indeed, his decision expressly acknowledged that Plaintiffs may not be able to establish jurisdiction and venue over any other Defendant. *Id.* For the reasons stated herein, they cannot.

In that case, the court dismissed the plaintiff's claim under Title VII that the defendant failed to hire her as a co-anchor on Good Morning America.  *Id.* at *3.  Fatal to the plaintiff's claim was that although "her talent agency contacted executives at ABC regarding 'potential openings' for a co-host position," she did not "allege anywhere in the complaint that there was an opening for a co-anchor position on Good Morning America," and the complaint had "no additional factual allegations that suggest ABC was considering applications for an additional co-anchor position." *Id.*

### A.    Plaintiffs Fail To State A Claim Against The New York Mets, New York Yankees Or The Other MLB Clubs.

The Fifth Amended Complaint is styled as a compilation of individual failure-to-hire claims that each Plaintiff purports to bring against each MLB Club that allegedly refused to hire him.  (Dkt. 94 ¶ 111). Although there are 35 Plaintiffs and 30 MLB Clubs—and each Plaintiff purports to sue multiple Clubs that allegedly refused to hire him—the factual allegations concerning Plaintiffs' failure-to-hire claims are limited to a mere seven paragraphs in the Fifth Amended Complaint and pertain to only four of the thirty-five Plaintiffs—Scholzen, Pope, Ragazzo and Sheehan.  (*Id.* at ¶¶ 104-110.)  The purported claims of all other Plaintiffs are contained in a chart that simply identifies which Plaintiffs are suing which Clubs, and it is devoid of any factual allegations in support of their refusal-to-hire claims against any of the Clubs that each Plaintiff purports to sue.  (*Id.* at ¶ 111.)

Indeed, Plaintiffs Benedict, Bourjos, Ingalls, Johnson, Jongewaard, Latham, Lekas, McIntosh, Runge, Smith, Trcka, Whitworth, Wilfong, Arsenault, Blakeley, Bliss, Brown, Cummings, Dedrick, Decker, Egan, Engle, Minor, Moore, Morhardt, Pellant, Sapp, Shaffer, Tripp, Winn and Wurth do not allege any facts, much less plausible ones, to state a claim for relief under the ADEA.  The claims of these Plaintiffs are contained exclusively in the chart that appears in

paragraph 111 of the Fifth Amended Complaint without alleging any facts at all in support of their refusal-to-hire claims against any of the Clubs they purport to sue.

As a threshold matter, simply alleging that the Clubs did not hire Plaintiffs because of their age is precisely the type of bare legal conclusion that is insufficient as a matter of law to state a claim for relief. *See Rubert v. King*, No. 19-CV-2781, 2020 WL 5751513, at *7 (S.D.N.Y. Sept. 25, 2020) ("'[B]oilerplate assertion[s]' unsupported by specific facts" that plaintiff was fired because he was Hispanic and that his employer had a history of discrimination and engaging in illegal conduct do not plausibly state a claim under Rule 12(b)(6)); *see also Jones v. Landry's, Inc.*, No. 23-CV-09920, 2025 WL 463173, at *6 (S.D.N.Y. Feb. 8, 2025) (citing *Iqbal*, 556 U.S. at 678) (recommending dismissal under Rule 12(b)(6) in part because "[a] pleading that offers only labels and conclusions will not survive a motion to dismiss").

Moreover, none of the Plaintiffs whose refusal-to-hire claims are limited to the chart in Paragraph 111 alleges that there was a specific job opening for which he applied within the limitations period, which is fatal to their claims. *See Johnson v. City Univ. of N. Y.*, No. 00 Civ. 4964 (WK)(RLE), 2002 WL 1750841, at *4 (S.D.N.Y. July 24, 2002) (granting defendant's motion to dismiss plaintiff's failure to hire claims because he failed to apply to and be rejected from a specific position); *Bussa v. St. John's Univ.*, No. 18-CV-4623 (KAM)(RER), 2019 WL 136641, at *3 (E.D.N.Y. Jan. 8, 2019) (dismissing plaintiff's failure to hire claim where complaint suggested that "plaintiff did not actually apply for a specific position, although he expressed an interest to defendants' employees"); *Romaine v. N. Y. City Coll. of Tech. of the City Univ. of N. Y.*, No. 10-CV-431(SLT)(SMG), 2012 WL 1980371, at *3 (E.D.N.Y. June 1, 2012) (granting defendant's motion to dismiss plaintiff's failure to promote claim because plaintiff never submitted an official application for the position in which he expressed an interest, explaining that, "for

28

purposes of pleading a plausible failure to promote claim, a plaintiff is still required to allege that he or she applied specifically for the position in question…[and] [a]n allegation that a general request for promotion was made is insufficient for purposes of stating a failure to promote claim"); *Taylor v. City of N.Y.*, 207 F. Supp. 3d 293, 306 (S.D.N.Y. 2016) (explaining that merely inquiring about an opportunity is "not enough to excuse [plaintiff] from the specific-application requirement") (internal quotation omitted); *Tulino v. City of N.Y.*, No. 15-CV-7106(JMF), 2016 WL 2967847, at *6 (S.D.N.Y. May 19, 2016) (dismissing failure to promote claim because plaintiff had not applied for a "known vacant position"); *Shah v. Tunxis Cmty. Coll.*, No. 3:14-cv-00712 (MPS), 2015 WL 4254909, at *5 (D. Conn. July 14, 2015) (granting defendant's motion to dismiss plaintiff's failure to promote claim where plaintiff merely "had previously expressed interest…in playing a greater role for the college").

With regard to the New York Mets and New York Yankees—the only two Clubs that do not challenge personal jurisdiction—none of the Plaintiffs alleges any plausible facts in support of discriminatory refusal-to-hire claims against either Club. Plaintiffs Arsenault, Blakely, Bliss, Bourjos, Decker, Latham, McIntosh, Moore, Morhardt, Pope, Ragazzo and Sapp purport to bring claims against the New York Mets. (Dkt. 94 ¶ 111.) Plaintiffs Arsenault, Benedict, Blakely, Bourjos, Brown, Cummings, Dedrick, Ingalls, McIntosh, Moore, Morhardt, Pellant, Pope, Ragazzo, and Scholzen purport to bring claims against the New York Yankees. *Id*. Other than Scholzen, no Plaintiff bringing claims against the New York Mets or New York Yankees alleges any facts in support of those claims; Plaintiffs' claims against the New York Mets and New York Yankees are limited to the threadbare and wholly conclusory allegations contained in the chart following paragraph 111 of the Fifth Amended Complaint. As discussed above, those allegations are insufficient as a matter of law to state a claim for relief. *See supra* at 28-29.

29

The only Plaintiff, Scholzen, to allege any facts in support of a purported age discrimination claim against the New York Yankees fails to state a claim as a matter of well-settled law. Scholzen fails to allege that he applied for an opening with the New York Yankees. Rather, his claim against the New York Yankees is based on the allegation that, although they purportedly had the highest payroll in baseball, the Yankees supposedly did not have enough money to hire additional scouts. (Dkt. 94 ¶ 104.) However, an employer cannot be liable for failure-to-hire because it chose not to create a new opening when no positions were available. *See Bernstein v. The MONY Grp., Inc.*, 228 F. Supp. 2d 415, 419 (S.D.N.Y. 2002) ("Plaintiff's allegations concerning [defendant's] failure…to 'create an opportunity' for Plaintiff…do not support a claim of discrimination."); *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021), *vacated and remanded on other grounds*, No. 22-1251, 2024 WL 2813563 (2d Cir. June 3, 2024) (plaintiff's argument that defendant discriminated against her by refusing to "create a new position especially for her" was insufficient to state a claim).

The claims of the only four Plaintiffs who make very limited allegations as to non-resident MLB Clubs (Pope, Ragazzo, Scholzen and Sheehan) also should be dismissed in the event the Court concludes there is jurisdiction and venue as to the four Clubs these Plaintiffs identify in paragraphs 105 through 110 of the Fifth Amended Complaint. For example, Scholzen's claim against the San Francisco Giants fails for the same reason as his claim against the New York Yankees: he specifically alleges the *absence* of an open position because ownership would not authorize a new hire. (Dkt. 94 ¶ 105.) Pope fails to allege that he applied for an open position with the Chicago White Sox. (*Id*. at ¶ 106.) Ragazzo fails to allege that he applied for an open position with the Colorado Rockies. (*Id*. at ¶ 107.) And even if Ragazzo's interest in the part-time position with the Boston Red Sox is considered to be an application, he fails to allege that the

younger scouts were hired for the same position for which he applied.  (*Id*. at ¶ 108.)  Likewise, Ragazzo fails to allege that he had any interest in, much less applied for, a position with the San Francisco Giants.  (*Id*. at ¶ 109.)  And, lastly, Sheehan fails to allege that he applied for an available position with the Chicago White Sox, only that he would be "considered"; there is no allegation that the White Sox's alleged hiring of a younger employee at some undefined "subsequent" time was even for a scouting position, much less the position Sheehan sought.  (*Id*. at ¶ 110.)  Accordingly, even the four Plaintiffs who at least allege scant facts nevertheless also fail to state a claim as a matter of law.

**B.    Plaintiffs' Claims Against The MLB Defendants Are Insufficient As A Matter Of Law.**

Plaintiffs' failure-to-hire claims against the MLB Defendants should also be dismissed because Plaintiffs have not alleged that they applied for and were rejected from positions with MLB.  *See Hill v. Major League Soccer LLC*, No. 23-CV-2911 (JGK), 2024 WL 3361216, at *3 (S.D.N.Y. July 10, 2024) (dismissing plaintiff's failure to hire claim against Major League Soccer because plaintiff did not allege that he applied for and was rejected from a position with Major League Soccer but rather alleged that he was not hired by individual teams in the league); *Felder v. United States Tennis Ass'n Inc.*, No. 17-cv-5045, 2018 WL 5621484, at *3 (S.D.N.Y. Oct. 30, 2018) (granting defendant's motion to dismiss where plaintiff alleged merely that defendant rejected the attempts of security service companies to secure a temporary security placement for plaintiff with the defendant and not that he actually sought a position with the defendant).

Plaintiffs' claims against the MLB Defendants also fail because Plaintiffs do not allege that the MLB Defendants participated in any of the Club Defendants' alleged decisions not to hire them.  Rather, Plaintiffs allege generally that MLB coordinates with the Clubs to limit the employment of older scouts through application of Rule 3(k) of the Major League Constitution;

by discontinuing the "scouting wire" in 2015; by controlling the scouting labor market since contracts must be submitted to and approved by the Commissioner; by shuttering the Central Scouting Bureau; and by contributing to a supposed "blacklist." (*See* Dkt. 94 ¶¶ 75-99.) This is insufficient to state a failure to hire claim against the MLB Defendants because Plaintiffs do not provide any basis for this Court to reasonably infer that the MLB Defendants were responsible for the Clubs' hiring decisions. *See Mills-Sanchez v. Research Found. for State Univ. of N. Y.*, No. 18-cv-723, 2019 WL 2549726, at *8 (N.D.N.Y. June 20, 2019), *aff'd sub nom. Mills-Sanchez v. State Univ. of N. Y. Research Found.*, 820 F. App'x 63 (2d Cir. 2020) (dismissing plaintiff's claims against RF SUNY arising out of RFMH's decision not to hire her because "nothing in [plaintiff's] Amended Complaint allow[ed] the court to reasonably infer that RF SUNY had authority to make hiring decisions at RFMH" and therefore "RF SUNY [could] not be liable for RFMH's refusal to hire plaintiff").

Plaintiffs' allegation that the MLB Defendants are alleged joint employers with the Clubs does not salvage their failure-to-hire claims. (*See* Dkt. 94 ¶ 111.) For Plaintiffs to hold the MLB Defendants liable as joint employers for the hiring decisions of the Clubs, Plaintiffs must plausibly allege that the MLB Defendants and the Clubs "share significant control of the same employee[s]." *Doheny v. Intl. Bus. Machs., Corp.*, 714 F. Supp. 3d 342, 377 (S.D.N.Y. 2024) (internal quotations omitted). In assessing joint employer status, courts examine whether the alleged employer paid the employees' salaries, hired and fired them, and had control over their daily employment activities. *Id.* The greatest weight is placed on the extent to which the hiring party controls the manner and means by which the worker completes his or her assigned tasks. *Id.*

Plaintiffs have not alleged sufficient facts to support a joint employer theory. The Fifth Amended Complaint contains no allegations that the MLB Defendants had any involvement in the

Clubs' alleged decisions not to hire Plaintiffs, or that the MLB Defendants were involved in Plaintiffs' day-to-day job activities. (Dkt. 94 ¶¶ 75-76, 104-11.) Instead, Plaintiffs rely upon legal conclusions devoid of plausible facts, which are insufficient to establish a joint employer theory. For example, Plaintiffs' allegation that the "Commissioner's Office and the Clubs operate MLB as a unified operation in regard to exercising common control over baseball operations and employment operations of the Clubs," (*see* Dkt. 94 ¶ 38), is a mere "legal conclusion couche[d] as ... a factual allegation," which the Court need not accept as true. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Plaintiffs' allegations concerning maintenance of a so-called blacklist and reduced staffing levels during the COVID-19 pandemic do not render the MLB Defendants joint employers with the Clubs. (Dkt. 94 ¶¶ 96-99.) The Fifth Amended Complaint is devoid of any plausible facts tying the MLB Defendants to either of these things and instead rests on the conclusory allegation of a supposed "participation in a common plan or practice with the Clubs," *id*. at ¶ 96, which, as noted above, is insufficient. Indeed, there are no plausible facts alleged as to how the MLB Defendants supposedly "coordinated" with the Clubs regarding the employment of scouts. *Id*. at ¶ 97.

Plaintiffs' only plausible factual allegation—that the Clubs send all scout contracts to the MLB Defendants for approval (*see* Dkt. 94 ¶ 70)—is insufficient to state a claim as a matter of law. *See Hill*, 2024 WL 3361216, at *3. *Hill* is instructive in this regard. There, the plaintiff alleged that "every contract of employment ... is subject to [Major League Soccer's] review and approval[,]" and alleged generally that MLS both participated in and controlled the soccer clubs' hiring practices. *Id*. The court granted MLS's motion to dismiss, finding that these allegations were insufficient to establish a single-employer relationship. *Id*.; *see also Nelson v.*

*Argyropoulous*, No. 18-CV-11413, 2021 WL 4927059, at *8 (S.D.N.Y. Mar. 18, 2021), *report and recommendation adopted sub nom.* No. 18-CIV-11413, 2021 WL 4352326 (S.D.N.Y. Sept. 24, 2021) (granting motion to dismiss where plaintiff alleged that purported joint employer "monitored sales personnel to determine the pay scale that applied for purposes of payments under a [sales] Rewards program" but did not allege any involvement in direct employer's "decision to hire, supervise or terminate him"); *Bolt v. Planned Parenthood of Cent. & W. N. Y.*, No. 24-CV-06061, 2025 WL 368643, at *7 (W.D.N.Y. Feb. 3, 2025) (granting motion to dismiss where plaintiff did not allege that purported joint employer "had any control over the terms of her employment, compensation, or the performance of her daily activities" and did "not allege that she performed any work for…or received any compensation or benefit from" the alleged joint employer).

Finally, in addition to the reasons discussed above, Plaintiffs fail to state a claim against Commissioner Manfred. "[C]ourts in the Second Circuit have consistently held that the ADEA does not impose liability on individuals." *Wang v. Palmisano*, 157 F. Supp.3d 306, 338 (S.D.N.Y. 2016) (granting Rule 12(b)(6) motion dismissing plaintiff's ADEA claims against individual defendants) (citing *Palumbo v. Carefusion 2200, Inc.*, No. 12–CV–6282, 2014 WL 3921233, at *6 (W.D.N.Y. Aug. 11, 2014) ("It is well-established that there is no individual liability under ... the ADEA." (internal quotation marks omitted)); *Fitzgerald v. Signature Flight Support Corp.*, No. 13–CV–4026, 2014 WL 3887217, at *3 (S.D.N.Y. Aug. 5, 2014) ("[I]ndividuals are not subject to ADEA liability."); *Almontaser v. N.Y.C. Dep't of Educ.*, No. 13–CV–5621, 2014 WL 3110019, at *3 n. 2 (E.D.N.Y. Jul. 8, 2014) (noting that "individuals are not subject to liability under ... the ADEA"); *Stankovic v. Newman*, No. 12–CV–399, 2013 WL 6842530, at *2 (D. Conn. Dec. 27, 2013) ("There is no individual liability under ... the ADEA ...."); *Thorpe v. Piedmont Airlines,*

*Inc.*, 926 F. Supp. 2d 453, 462 (N.D.N.Y. 2013) ("[T]here is no basis for imposing individual liability on agents of an employer under the ADEA's definition.")).

## IV.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND.

Plaintiffs have amended their Complaint five times. (Dkts. 6, 26, 59, 60, 94.) Should this Court grant the instant motion dismissing Plaintiffs' claims, Plaintiffs should not be given yet another opportunity to replead. Where a plaintiff is unable to demonstrate that amendments would permit the complaint to survive dismissal—and *especially* where they have already had multiple opportunities to amend—an opportunity to replead is "rightfully denied." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *see also Lefebvre v. Morgan*, 234 F. Supp. 3d 445, 461 (S.D.N.Y. 2017) (dismissing claims with prejudice where the plaintiff had already amended his complaint twice, including once in response to a decision on the merits of his claims); *Miller v. Pac. Inv. Mgmt. Co. LLC*, No. 12-Civ-4122 (LTS), 2013 WL 12305507, at *4 (S.D.N.Y. Apr. 23, 2013) ("leave to amend need not be granted in the face of prior attempts to cure pleading deficiencies"). Given that the Fifth Amended Complaint is the *sixth* operative complaint in this case, Plaintiffs' ADEA claims should be dismissed with prejudice and without leave to replead.

## CONCLUSION

Defendants respectfully request that the Court dismiss the Fifth Amended Complaint as to the Non-Resident Defendants for lack of personal jurisdiction, and as to the Non-Resident Defendants and New York Mets for improper venue, without leave to amend. All claims against the New York-based Defendants and any Non-Resident Defendant subject to this Court's jurisdiction should be dismissed with prejudice for failure to state a claim.

Dated:  February 28, 2025

PROSKAUER ROSE LLP

*s/ Elise M. Bloom*
Elise M. Bloom
Neil H. Abramson
Adam M. Lupion
Eleven Times Square
New York, New York 10036
Tel. 212.969.3410
ebloom@proskauer.com
nabramson@proskauer.com
alupion@proskauer.com

***Attorneys for Defendants Robert Manfred, The Office of the Commissioner of Baseball, AZPB, L.P., Atlanta National League Baseball Club, Inc., Atlanta National League Baseball Club, LLC, Braves Holding, LLC, Boston Red Sox Baseball Club, L.P., Chicago Cubs Baseball Club, LLC, Chicago White Sox, Ltd., The Cincinnati Reds, LLC, Cleveland Guardians Baseball Company, LLC, Colorado Rockies Baseball Club, Ltd., Detroit Tigers, Inc., Houston Astros, LLC, Kansas City Royals Baseball Club LLC, Angels Baseball LP, Los Angeles Dodgers LLC, Marlins Teamco LLC, Milwaukee Brewers Baseball Club, Inc., Milwaukee Brewers Baseball Club, L.P., Minnesota Twins, LLC, Sterling Mets, L.P., New York Yankees Partnership, Athletics Investment Group LLC, The Phillies, Pittsburgh Associates, Padres L.P., San Diego Padres Baseball Club, L.P., San Francisco Baseball Associates LLC, Baseball Club of Seattle, LLLP, St. Louis Cardinals, LLC, Tampa Bay Rays Baseball Ltd., Rangers Baseball Express, LLC, Rangers Baseball, LLC, Rogers Blue Jays Baseball Partnership, Rogers Communications Inc., Washington Nationals Baseball Club, LLC***

FAEGRE DRINKER BIDDLE & REATH LLP

*s/ Lawrence G. Scarborough*
Lawrence G. Scarborough
1177 Avenue of the Americas

36

41st Floor
New York, NY 10036
Telephone: 212-248-3141
lawrence.scarborough@faegredrinker.com


*s/ Desmonne A. Bennett*
Desmonne A. Bennett (*admitted pro hac vice*)
1144 15th Street, Suite 3400
Denver, CO 80202
Telephone: 303-607-3500
desmonne.bennett@faegredrinker.com

**Attorneys for Defendant Baltimore Orioles Limited Partnership Inc.**

## **CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies, pursuant to Local Civil Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, the Court's Individual Rules of Practice, and the Court's Order granting an extension of the applicable word limits (Dkt. 99), that the foregoing brief contains no more than 12,000 words.

Specifically, the Microsoft Word "Word Count" tool indicates that the brief contains 11,395 words.  That word count excludes the "caption, any index, table of contents, table of authorities, signature blocks, or any required certificates," but does include "material contained in footnote or endnotes." Local Civil Rule 7.1.

Dated:  February 28, 2025

*/s/ Elise M. Bloom*
Elise M. Bloom