**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

Civil Action No. 24-CV-04314: (MMG)

JAMES S. BENEDICT, CHRISTOPHER BOURJOS, RICHARD T. INGALLS, RANDALL G. JOHNSON, STEVEN E. JONGEWAARD, WILLIAM C. LATHAM, THEODORE LEKAS JR., TIMOTHY A. MCINTOSH, STEVEN POPE, RICK L. RAGAZZO, PAUL W. RUNGE, JEFFREY N. SCHOLZEN, DENNIS M. SHEEHAN, CHRISTOPHER J. SMITH, SCOTT TRCKA, GREGORY G. WHITWORTH, ROBERT D. WILFONG, PIERRE ARSENAULT, GORDON BLAKELEY, WILLIAM P. BLISS, MICHAEL BROWN, ROBERT CUMMINGS, JAMES. M. DEDRICK, LANE DECKER, RICHARD EGAN, ROBERT ENGLE, ROBERT M. MINOR, WILLIAM R. MOORE, GREGORY R. MORHARDT, GARY PELLANT, ROSS SAPP, DUANE SHAFFER, TERRY TRIPP, EARL WINN, II, JOHN LEON WURTH, and individually and on behalf of all other similarly situated individuals,

Plaintiffs,

v.

ROBERT MANFRED, COMMISSIONER OF BASEBALL; THE OFFICE OF THE COMMISSIONER OF BASEBALL, an unincorporated association also d/b/a MAJOR LEAGUE BASEBALL, AZPB LIMITED PARTNERSHIP; ATLANTA NATIONAL LEAGUE BASEBALL CLUB, LLC; BALTIMORE ORIOLES LIMITED PARTNERSHIP; BOSTON RED SOX BASEBALL CLUB L.P.; CHICAGO CUBS BASEBALL CLUB, LLC ; CHICAGO WHITE SOX, LTD.; THE CINCINNATI REDS, LLC; CLEVELAND GUARDIANS BASEBALL COMPANY, LLC; COLORADO ROCKIES BASEBALL CLUB, LTD.; DETROIT TIGERS, INC.; HOUSTON ASTROS, LLC; KANSAS CITY ROYALS BASEBALL CLUB LLC; ANGELS BASEBALL LP; LOS ANGELES DODGERS LLC; MARLINS TEAMCO LLC; MILWAUKEE BREWERS BASEBALL CLUB, L.P.; MINNESOTA TWINS, LLC; STERLING METS, L.P.; NEW YORK YANKEES PARTNERSHIP; ATHLETICS INVESTMENT GROUP LLC D/B/A OAKLAND ATHLETICS BASEBALL COMPANY; THE PHILLIES; PITTSBURGH ASSOCIATES; PADRES L.P.; SAN FRANCISCO BASEBALL ASSOCIATES LLC; THE BASEBALL CLUB OF SEATTLE, LLLP; ST. LOUIS CARDINALS, LLC; TAMPA BAY RAYS BASEBALL LTD.; RANGERS BASEBALL, LLC; ROGERS BLUE JAYS BASEBALL PARTNERSHIP; and WASHINGTON NATIONALS BASEBALL CLUB, LLC,

Defendants.

**<u>PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

I.  **INTRODUCTION**.................................................................................................... 1

II.  **FACTUAL BASIS FOR JURISDICTION AND VENUE** ............................................. 3

    A.  **The MLB Defendants Are an Unincorporated Association with a New York Headquarters, Two Clubs Headquartered in New York, and 28 Foreign Clubs that Purposefully Avails Itself of New York** ............................................... 3

    B.  **The 28 Foreign Clubs are Additionally Subject to Specific Personal Jurisdiction By Coordinating Employment Activities and Through the Provisions of the Major League Constitution, Major League Rules, and Uniform Employee Contracts** .................................................................. 8

III.  **ARGUMENTS AND AUTHORITIES** ……………………………………………… 10

    A.  **Historical Background of Personal Jurisdiction** ............................................. 10

    B.  **Recent Changes to Personal Jurisdiction - In *Bristol-Myers Squibb* and *Ford*, the Supreme Court Limited, and Then Expanded Specific Jurisdiction** ....... 11

    C.  **This Court has Specific Personal Jurisdiction over the Nondomiciliary Foreign Clubs Defendants Under Section 302(a)(1) of New York's Long Arm Statute** ................................................................................................ 14

        1.  **Under the First Prong – The Foreign Clubs /Nondomiciliary Defendants Transact Business in New York** ........................................ 15

        2.  **Under the Second Prong, Plaintiffs' Causes of Action Arise Out of the Foreign Clubs' New York Transaction of Business** ........................ 18

        3.  **The Roger Clemons Case is Instructive and Shows that New York's Long Arm Statute Reaches This Case** .................................................. 19

        4.  **By Coordinating through the Commissioner's Office in New York their General Labor Relations, the Specific Blacklist and Decisions that Produced the Unlawful Failure to Hire, the Foreign Clubs' Complained-of-Conduct Arises Out of their New York Contacts** ...... 21

    D.  **Traditional Notions of Fair Play and Substantial Justice are Not Offended by Subjecting the Foreign Club to Jurisdiction in New York under the Five Part *Asahi* Analysis** ...................................................................................... 22

        1.  **The Burden on the Defendants** ............................................................. 24

2.      The Interests of the Forum State .......................................................... 25

3.      The Plaintiff's Interest in Obtaining Relief ......................................... 25

4.      The Interstate Judicial System's Interest in Obtaining the Most
        Efficient Resolution of Controversies .................................................... 26

5.      The Shared Interest of the Several States in Furthering Fundamental
        Substantive Social Policies ...................................................................... 26

E.      Joint Employer Conduct Creates Personal Jurisdiction ................................. 27

F.      Venue Is Appropriate In This District for a Multi-Plaintiff Claim Under
        28 U.S.C. § 1391(b)(2) or 12(b)(3)........................................................... 28

G.      Defendants' Rule 12(B)(6) Motions to Dismiss Must Should Be Denied ....... 31

1.      Plaintiffs Have Stated Claims Against the Club Defendants' ............ 32

2.      Plaintiffs Have Stated a Valid Claim Against the Commissioner of
        Baseball under New York Law Related to Unincorporated
        Associations ............................................................................................ 34

3.      Plaintiffs Have Stated Claims Against the MLB Defendants as Joint
        Employers ............................................................................................... 36

4.      Plaintiffs Requested Relief of Dismissal with Prejudice is Excessive –
        Plaintiff Alternatively Seeks Leave to Amend, if Necessary ............... 36

CONCLUSION ........................................................................................................... 38

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
   98 F.3d 25 (2d Cir. 1996)...................................................................................................14, 16

*Alan Lupton Associates, Inc. v. Northeast Plastics, Inc.*,
   105 A.D.2d 3, 482 N.Y.S.2d 647 (4 Dept. 1984) ................................................................15

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. City of Albany, N.Y.*,
   250 F.Supp.2d 48 (N.D.N.Y. 2003)......................................................................................36

*Asahi Metal Indus. Co. v. Superior Court*,
   480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)..........................................................23

*Bank Brussels Lambert v. Fiddler, Gonzalez & Rodriguez*,
   305 F.3d 120 (2d Cir. 2002).................................................................................................24

*Barker v. UBS AG*,
   2011 WL 283993 (D.Conn. Jan. 26, 2011)...........................................................................33

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).......................................................................................................31, 33

*Best Van Lines, Inc. v. Walker*,
   400 F.3d 239 (2d Cir. 2007).................................................................................................18

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007).....................................................................................14, 15, 23

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.*,
   582 U.S. 255, 137 S.Ct. 1773 (2017)..................................................................10, 11, 12, 13

*Charles Scwab Corp. v. Bank of Am. Corp.*,
   883 F.3d 68 (2d Cir. 2018)...................................................................................................28

*Chatwal Hotels & Resorts, LLC v. Dollywood Co.*,
   90 F.Supp.3d 97 (E.D.N.Y. 2015) .......................................................................................13

*Chloe v. Queen Bee of Beverly Hills, LLC*,
   616 F.3d 158 (2d Cir. 2010)...........................................................................................15, 24

*CutCo Indus., Inc. v. Naughton*,
   806 F.2d 361 (2d Cir. 1986)...........................................................................................14, 16

*D & R Global Selections, S.L. v. Bodega Olegario Falcon Pineiro*,
    29 N.Y.3d 292, 78 N.E.3d 1172, 56 N.Y.S.3d 488 (2017)................................................22

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)................................................................................................10, 11

*Daniel v. Am. Bd. of Emergency Med.*,
    428 F.3d 408 (2d Cir. 2005)...........................................................................................30

*DiBella v. Hopkins*,
    187 F.Supp.2d 192 (S.D.N.Y.2002)...........................................................................20, 21

*Dong Chul Kim. V. Harte Hanks, Inc.*,
    425 F.Supp.3d 246 (S.D.N.Y. 2019)................................................................................28

*E.E.O.C. v. Oak Lawn Ltd.*,
    987 F.Supp. 647 (E.D. Ill. 1997)....................................................................................36

*Eades v. Kennedy, PC Law Offices*,
    799 F.3d 161 (2d Cir. 2015)...........................................................................................15

*Ehrenfeld v. Bin Mahfouz*,
    881 N.E.2d 830 (N.Y. 2007).........................................................................................14

*Fed. Baseball Club of Balt. v. Nat'l League of Prof'l Baseball Clubs*,
    259 U.S. 200, 42 S.Ct. 465, 66 L.Ed. 898 (1922)..........................................................28

*Ferrara v. Smithtown Trucking Co.*,
    29 F.Supp.3d 274 (E.D.N.Y. 2014) ................................................................................37

*Fischbarg v. Doucet*,
    880 N.E.2d 22 (N.Y. 2007).....................................................................................14, 15

*Flood v. Kuhn*,
    407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972).....................................................28

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
    592 U.S. 351, 141 S.Ct. 1017 (2021).............................................................11, 12, 13, 18

*Franklin v. X Gear 101, LLC*,
    2018 WL 3528731 (S.D.N.Y. July 23, 2018) ..................................................................18

*Franklin v. X Gear 101, LLC*,
    2018 WL 4103492 (S.D.N.Y. Aug. 28, 2018) ..................................................................18

*George Reiner & Co. v. Schwartz*,
    41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977)..............................................16

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)..................................................................................................................11

*Grace v. Rosenstock*,
    228 F.3d 40 (2d Cir. 2000)................................................................................................34, 37

*Guideone Specialty Mut. Ins. Co. v. Hapletah*,
    No. 05 Civ. 1401, 2006 WL 1455468 (E.D.N.Y. May 24, 2004) ............................................37

*Gulf Ins. Co. v. Glasbrenner*,
    417 F.3d 353 (2d Cir.2005)....................................................................................................30

*Hoffrit for Cutlery, Inc. v. Amajac, Ltd.*
    763 F.2d 55 (2d Cir. 1985)...............................................................................................14, 16

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945)........................................................................................................10, 11

*Iqbal v. Ashcroft*,
    574 F.3d 820 (2d Cir. 2009)..................................................................................................37

*Iqbal v. Hasty*,
    490 F.3d 143 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v.*
    *Iqbal*, 556 U.S. 662 (2009) ............................................................................................31, 33

*J. McIntyre Machinery, Ltd. v. Nicastro*,
    564 U.S. 873, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011)..........................................................10

*Johnson v. Ward*,
    4 N.Y.3d 516, 797 N.Y.S.2d 33, 829 N.E.2d 1201 [2005]........................................................19

*Koch v. Christie's Int'l PLC*,
    699 F.3d 141 (2d Cir. 2012)..................................................................................................31

*Kronisch v. United States*,
    150 F.3d 112 (2d Cir.1998)...................................................................................................18

*Krupski v. Costa Crociere S. p. A.*,
    560 U.S. 538 (2010)..............................................................................................................37

*Licci v. Lebanese Canadian Bank, SAL*,
    20 N.Y.3d 327, 960 N.Y.S.2d 695, 984 N.E.2d 893 (2012).............................................18, 19

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    673 F.3d 50 (2d Cir. 2012)...............................................................................................15, 16

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013)............................................................................................15, 18

*Lucente v. Int'l Bus. Machines Corp.*,
   310 F.3d 243 (2d Cir. 2002)................................................................................................37

*Mao v. Sands Bethworks Gaming LLC*,
   No. 15 Civ. 6252 (JMF), 2016 WL 1717220 (S.D.N.Y. Apr. 28, 2016)...............................27

*McName v. Clemons*,
   762 F.Supp.2d 584 (2d. Cir. 2011) ................................................................................21, 25

*McName v. Clemons*,
   762 F.Supp. 584 (2d. Cir. 2011) ...........................................................................19, 20, 25

*McName v. Clemons*, *Courtroom Television Network v. Focus Media, Inc.*,
   264 A.D.2d 351, 695 N.Y.S.2d 17 (1999) ............................................................................20

*Metro. Life Ins. Co. v. Robertson–Ceco Corp.*,
   84 F.3d 560 (2d Cir.1996)....................................................................................................26

*MHANY Mgmt. v. Cty. of Nassau*,
   843 F.Supp.2d 287 (E.D.N.Y. 2012) ...................................................................................37

*Minnie Rose LLC v. Yu*,
   169 F.Supp.3d 504 (S.D.N.Y. 2016)....................................................................................23

*Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*,
   484 U.S. 97 (1987).................................................................................................................10

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*,
   595 F.3d 86 (2d Cir. 2010)....................................................................................................31

*Pearson Educ. v. ABC Books LLC*,
   2020 WL 3547217 (S.D.N.Y. June 30, 2020) ......................................................................19

*Petrosino v. Bell Atl.*,
   385 F.3d 210 (2d Cir. 2004)..................................................................................................32

*Ruffolo v. Oppenheimer & Co.*,
   987 F.2d 129 (2d Cir. 1993)..................................................................................................37

*Sacody Technologies, Inc. v. Avant, Inc.*,
   862 F.Supp. 1152 (S.D.N.Y.1994) .......................................................................................16

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
   450 F.3d 100 (2d Cir. 2006)............................................................................................14, 19

*SPV Osus Ltd. v. UniCredit Bank Austria*,
   No.18-cv-349(AJN), 2019WL1438163 (S.D.N.Y. Mar.30, 2019)........................................28

*Starkman v. Evans*,
18 F.Supp.2d 630 (E.D. LA. 1998)..............................................................................35

*Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortgage Investors*,
510 F.2d 870 (2d Cir.1975)..........................................................................................15

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)...................................................33

*Thorpe v. Piedmont Airlines, Inc.*,
926 F.Supp.2d 453 (N.D.N.Y. 2013).............................................................................35

*Vermeulen v. Renault, U.S.A., Inc.*,
985 F.2d 1534 (11th Cir.), *cert. denied,* 508 U.S. 907, 113 S.Ct. 2334, 124
L.Ed.2d 246 (1993) .......................................................................................................26

*Wang v. Palmisano*,
157 F.Supp.3d 306 (S.D.N.Y. 2016)..............................................................................34

*Winner v. Tnyko Partners, LLC*,
333 F.Supp.3d 250 (W.D.N.Y. 2018) ............................................................................14

*World Wrestling Federation Entertainment Inc. v. Bozell*,
142 F.Supp.2d 514 (S.D.N.Y.2001)...............................................................................20

*Wyckoff v. Office of the Commissioner of Baseball*,
211 F.Supp.3d 615 (2016) .............................................................................................28

*Xiaoyan Liu v. Canteen 82 Inc.*,
Case No. 17 Civ. 7862 (KPF), 2018 WL 6067228, ** 4-6 (S.D.N.Y. Nov. 20,
2018) .........................................................................................................................27, 29

*Zurich Am. Lfe Ins. Co. v. Nagel*,
571 F.Supp.3d 168 (S.D.N.Y. 2021)..............................................................................29

**Statutes**

28 U.S.C. §1331..................................................................................................................3

28 U.S.C. § 1367.................................................................................................................3

28 U.S.C. §1391(b) ..............................................................................................2, 29, 30, 31

29 U.S.C. § 630(a-b) ...........................................................................................................35

ADA.....................................................................................................................................35

ADEA ...........................................................................................................................*passim*

Cal. Gov't Code § 12940 ................................................................................................26

Civil Rights Act of 1964 (Title VII) ....................................................................14, 35

**Other Authorities**

Fifth Amendment ..............................................................................................8, 10, 12

Fourteenth Amendment .................................................................................................10

Federal Rule of Civil Procedure 15 ........................................................................34, 37

Federal Rule of Civil Procedure 17(b)(3)(a) ...................................................................36

Federal Rule of Civil Procedure 12(b)(6) ................................................................ *passim*

Plaintiffs respond to Defendants' Motion to Dismiss Plaintiffs' Fifth Amended Complaint (Dkts. 100-101 "Motion" and "Brief"). In Defendants' Motion, the 28 MLB Clubs not domiciled in New York ("Foreign Clubs") move to dismiss for lack of jurisdiction; the Commissioner of Baseball moves to dismiss because of alleged lack of managerial liability under the ADEA; and all Defendants move to dismiss (for the first time) under Rule 12(b)(6) for alleged failure to state a claim. For the reasons stated below, Plaintiffs respond and assert that all of the relief sought should be denied, and this action should finally be allowed to proceed to the discovery stage.

## I.    **<u>INTRODUCTION</u>**

The MLB is a $10 billion enterprise of thirty Clubs, all members of an unincorporated association formed under the Major League Constitution, which establishes the New York City based "Office of the Commissioner of Baseball" as the name of the unincorporated association doing business as Major League Baseball ("MLB"). The current Commissioner of Baseball is Robert Manfred.

The MLB was expressly established to control labor relations among MLB Clubs. Indeed, under its Constitution, MLB Defendants control labor relations from their New York headquarters for every player and every scout ("Scout") for each of the 30 Clubs, including by using a Uniform Employment Contract ("UEC") approved by the Commissioner for Scouts. New York Scouts are thereby controlled by the MLB and Club Defendants. For example, each Club maintains scouts physically operating within New York under a UEC (including by having free tickets to Yankees and Mets games to scout their players).

Plaintiffs allege Defendants joined together as joint employers and/or as members of a conspiracy effectuated through the Major League Constitution and Rules and the Commissioner's New York Office to limit the number of scouts over the age of 40 ("Older Scouts") employed by

all 30 teams through various means, including refusals to hire Older Scouts, limiting the number of Older Scouts employed by each Club and blacklisting Older Scouts, actions which necessarily impact the scouting market within Colorado and every state.

The gravamen of the Foreign Clubs' Rule 12(c) motion is that: despite each being a member of an unincorporated association headquartered in New York; despite each playing baseball games every year in New York, despite each belonging to a revenue sharing plan by which each sends millions of dollars (48% of each Clubs' baseball revenues) to the Commissioner's Office in New York and in return receives millions back from the Commissioner's Office (1/30th of such revenue); despite each sending Plaintiffs' UECs to New York to obtain the Commissioner's approval prior to becoming effective; despite each UEC having a New York choice of law clause and requiring mandatory arbitration by the Commissioner or his designee; despite each Club sending scouts into New York to scout New York baseball games; and despite Plaintiffs' allegations that the Foreign Clubs coordinated with the Commissioner's Office the implementation of a blacklist that prohibited Plaintiffs from being hired based on age—despite all of this New York activity—somehow the Foreign Clubs are not amenable to specific personal jurisdiction in the Southern District of New York for age discrimination that Plaintiffs alleged was the result of this New York-based and New York coordinated conduct. This absurd result is contrary to the New York long arm statute and the constitutional analysis of "fair play and substantial justice."

Venue is proper in this District under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to this claim occurred in New York or independently under §1391(b)(3) because this is a multi-defendant action and venue is proper in this District as to the MLB Defendants, the Yankees, and the Mets.

**Plaintiffs' Response in Opposition to Motions to Dismiss – Page 2 of 39**

Defendant's Rule 12(b)(6) motion to dismiss should also be denied. Specifically, Commissioner Manfred's motion based on lack of managerial liability should be denied because Plaintiffs sue him as head of an unincorporated association. Finally, Defendants' motion to dismiss for lack of specificity of facts as to all Plaintiffs should also be denied as Defendants are on proper notice of the claims against them.

## II.    FACTUAL BASIS FOR JURISDICTION AND VENUE

### A.    The MLB Defendants Are an Unincorporated Association with a New York Headquarters, Two Clubs Headquartered in New York, and 28 Foreign Clubs that Purposefully Avails Itself of New York

In identifying the factual grounds for this Court's exercise over personal jurisdiction for the MLB Defendants, the Fifth Amended Complaint (FAC) alleges at paragraph 70:

70.    As to subject matter jurisdiction, this Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §1331 because Plaintiffs assert claims under the ADEA. This Court has supplemental jurisdiction over the Plaintiffs' state statutory claims pursuant to 28 U.S.C. § 1367. As to personal jurisdiction, this Court has personal jurisdiction over the Defendants as follows:

a.    As to the MLB Defendants, the Office of the Commissioner of Baseball is an unincorporated association, which is headquartered in the Borough of Manhattan in New York City, New York, within this District. Among the 30 member clubs of the MLB are the New York Yankees and the New York Mets (Local Club Defendants) are headquartered within the City of New York, in The Bronx and Queens, respectively. Accordingly, under general personal jurisdiction principles, the MLB Defendants and the Local Club Defendants are generally at home in New York City and are properly subject to personal jurisdiction of this Court.

**Plaintiffs' Response in Opposition to Motions to Dismiss – Page 3 of 39**

i.      Accordingly, by operation of the law of unincorporated associations and operation of their voluntary choice by being headquartered in the City of New York and, additionally or alternatively, by both operating as an unincorporated association since MLB's inception and by operation of their voluntary choice having the New York Yankees and New York Mets as members of the MLB, both MLB Defendants are at home for general personal jurisdiction purposes within the State of New York and this District.

ii.     Additionally, as detailed below, the MLB Defendants are subject to specific personal jurisdiction because of their conduct related to baseball operations and control of the employment relationship of scouts of all 30 of the members of the MLB from with the MLB's headquarters in Manhattan, including by: as to the Local MLB Clubs by residing and being headquartered in the City of New York in The Bronx and Queens respectively; and additionally as to all Clubs, by:

(1) controlling the employment of scouts, including:

(a) by requiring scouts to sign a UEC drafted by the Office of the Commissioner and the contents of which are controlled by and/or approved by the Office of the Commissioner of Baseball under Article II, Section 2-3 and Article IV of the MLB Constitution,

(b) by interpreting and enforcing MLB Constitution Rules 3(b) and 3(k) to include the employment of scouts;

(c) by requiring that the MLB Clubs limit communications with other Clubs related to scouts that have been laid off or terminated by an MLB Club in the middle of the season;

(d) by controlling the market for professional baseball players through the MLB Draft under which, in each year of the draft, one or more amateur baseball players who played high school baseball in New York are selected by MLB Clubs under the direction, control and/or supervision of the MLB,

(e) by controlling the market for scouts within the nation and within the State of New York by their actions, all or almost all of which occurred in or were centered in the MLB Defendants' Manhattan headquarters, including but not limited to

(i) creating a blacklist of scouts over 40 years of age ("Older Scouts") who are no longer allowed to be employed by any of the Club Defendants,

(ii) by limiting the number of Older Scouts who may be employed by each of the Club Defendants, and enforcing that limitation against all Club Defendants, without regard to the Club's financial ability to employ more scouts, in an MLB-wide manner,

(ii) mandating that notices of the termination of any scouts be sent to MLB Defendants in Manhattan;

(iii) by mandating that the Club Defendants cannot hire terminated scouts during the remaining portion of any terminated and otherwise uncompleted contract;

(2) controlling the operations of over 160 regular season professional baseball games each year at Yankee Stadium and Citi Field by directly employing/contracting numerous baseball operations personnel including the umpires, field communication employees, official scorekeeper, and other personnel, mandating the installation of video

replay communication devices that monitor baseball operations; and adapting and enforcing rules on video review challenges from MLB headquarters in New York City, New York;

(3) by requiring a revenue sharing plan among Clubs that requires 48% of revenues generated by ticket, concessions, and parking sales, and similar items of both the New York Yankees and New York Mets be sent to a common fund to be distributed equally to all 30 MLB Clubs.

b.      Each of the 28 Clubs not headquartered in New York (Foreign Club[s]) is subject to this Court's specific personal jurisdiction based on the following continuous and systematic conduct on their part related to Defendants' baseball and baseball scouting operations in the State of New York and within New York City, including but not limited to the following

(1) each Foreign Club engages in coordinated conduct, which conduct is coordinated with the Club Defendants and the MLB Defendants acting within Manhattan, New York; each Foreign Club Defendant coordinates its individual scouting activities and employment decisions related to the total number of scouts hired and fired by the Club Defendants through the cooperation and control of the MLB Defendants by allowing the MLB Defendants to exercise such control of nationwide scout operations through monitoring, limiting, and directing the Club Defendants' employment of all scouts, specifically including the actions and omissions that the Plaintiffs complain of above relating to controlling the hiring of scouts, limiting the number of scouts within the MLB and hired by MLB teams, and limiting the number of both scouts and Senior Scouts each Club Defendant may employ under the Major League Constitution;

(2) under the current MLB scheduling format, each of the 14 National League Foreign Clubs[1] play three or more games each year against the New York Mets at Citi Field in Queens, New York City, New York, and each of the 14 American League Foreign Clubs[2] play three or more games at Yankee Stadium in The Bronx against the New York Yankees every other year; additionally, each of the Foreign Clubs also plays at least three inter-league games every other year within New York City against the New York Club of the other league

(3) each Foreign Club participates in a revenue sharing scheme and television revenue sharing scheme, both of which are controlled by the MLB Defendants from within Manhattan in this District; under the revenue sharing scheme each Club Defendant receives over $100 million in revenue sharing per year, and considering that the New York Yankees and New York Mets are among the highest attended MLB Clubs, at least $10 million per year represents the portion of sales from tickets, concessions, parking and other items related to MLB games played at Yankee Stadium in The Bronx and Citi Field in Queens under the revenue sharing scheme; and each Club Defendant further receives at least $60 million per year through the television contract coordinated by the MLB Defendants from within the MLB Defendants' headquarters in Manhattan, in this District

(3) each Club, including the Foreign Clubs, participates in the MLB draft and which is controlled by the MLB Defendants, which controls which amateur players from New York State and around the world can be drafted to play for MLB Clubs;

---

[1]    [footnote omitted].

[2]    [footnote omitted].

(4) each of the Foreign Clubs employs one or more professional Scouts that physically attend professional major and minor league games, high school games, and college games within the State of New York (including by being provided free tickets to the Foreign Clubs' scouts to attend and scout New York Yankees and New York Mets games) and

(5) each of the Foreign Clubs engages in commerce related to the conduct of professional scouts within the State of New York, collectively spending hundreds of thousands of dollars on professional scouting activities within the State of New York, including wages, hotels, food, and travel expenses of scouts.

c.        As to the MLB Defendants and Club Defendants, based on the conduct alleged above and below, all are subject to general personal jurisdiction and/or specific personal jurisdiction of this Court under Fifth Amendment of the Constitution pursuant to one or more joint employer/co-conspirator/collective action/class action theories, in that acting in cooperation with each other and the New York Yankees and New York Mets, they controlled the market for scouts in a manner that impacted the job market for scouts within the State of New York and the Southern District of New York.

**B.        The 28 Foreign Clubs are Additionally Subject to Specific Personal Jurisdiction By Coordinating Employment Activities and Through the Provisions of the Major League Constitution, Major League Rules, and Uniform Employee Contracts**

Additionally, as allowed for Rule 12(c) Responses when jurisdiction is challenged, the Plaintiffs are additionally supplying jurisdictional declarations from Plaintiffs Theodore Lekas and Gregory Whitworth (Appendix). In these declarations, the Declarants provide the following additional factual evidence.

First, each attaches a copy of one or more of their Uniform Employment Contracts ("UEC") with their former MLB clubs. Notably, each UEC contains the following provisions that establish that the Commissioner of Baseball is in control of large portions of the Foreign Clubs's employment operations.

1. The UEC has a provision in paragraph 4 that states the contract is not effective until approved by the Commissioner of Baseball (App. at 5,13,25&33):

> 4.Term: This Major League Uniform Employee Contract shall become effective on the date it is approved by the Commissioner and shall expire on: ___12/31/2021___
> Month/Day/Year

2. The UEC at Section IV.B. has a provision in it that states both the Club and the Scout agree to be controlled by the Major League Constitution ("MLC"), Major League Rules ("MLR"), and the Major League Commissioner (Id.):

> B. Employee and Club also agree to comply with all decisions of the Commissioner pursuant to the provisions of the MLC and MLR and, to the extent applicable, the Professional Baseball Agreement or other agreement in effect between the Major League Clubs and one or more Minor Leagues or Minor League Associations.

3. The UEC at Section XII.A., also contains a provision in which the Scout agrees that he may be placed on a disciplinary list:

> A. For the violation by Employee of any of the obligations or duties of Employee as set forth in this Major League Club Uniform Employee Contract, or for the violation by Employee of any of Club's rules or regulations, Employee agrees that Club may impose a reasonable fine upon Employee and deduct the amount thereof from Employee's compensation, or may suspend Employee without compensation, or both, in the sole discretion of Club. Employee also agrees that Club may place Employee on any disciplinary list or lists prescribed by the MLR or any other applicable Major League or Minor League rules, regulations, guidelines or procedures.

4. The UEC at Section XII.B., also contains a binding arbitration clause providing arbitration to be controlled by the Commissioner or designee (App. at 7,15,27&35).

> B. In the event of any dispute or claim between Employee and Club in regard to the formation, application or interpretation of this Major League Club Uniform Employee Contract, the sole and exclusive forum available to Employee and Club to resolve such dispute shall be arbitration by the Commissioner or the Commissioner's designee. Employee or Club may exercise such right to arbitration by filing a written, itemized and detailed appeal with the Commissioner within one year of the event giving rise to the claim. The decision of the Commissioner or the Commissioner's designee, as the case may be, shall be final and binding and may not be challenged in any federal or state court or any other tribunal or forum.

5.  The UEC at Section XV., also contains a choice of law provision that choices New York law (Id.).

> This Major League Club Uniform Employee Contract shall be governed by and interpreted in such a manner as to be effective and valid under New York law. However, if any provisions of this Major League Club Uniform Employee Contract shall be prohibited by or invalid

## III.    ARGUMENTS AND AUTHORITIES

### A.    Historical Background of Personal Jurisdiction

Personal jurisdiction is a federal constitutional imperative rooted in the Due Process Clauses of the Fifth Amendment in federal courts and the Fourteenth Amendment in state courts. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.*, 582 U.S. 255, 137 S.Ct. 1773, 1783-84 (2017). Personal jurisdiction "represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). Since *International Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945), the Supreme Court's "canonical opinion" on personal jurisdiction, the Supreme Court has recognized *two distinct types of personal jurisdiction*: (1) *General Personal Jurisdiction* (sometimes called "all-purpose" jurisdiction); and (2) *Specific Personal Jurisdiction. See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

A court's authority to exercise personal jurisdiction over a nonresident defendant depends on the defendant's "minimum contacts" with the forum state such that maintaining the suit is reasonable and "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316–17. To count, contacts must amount to purposeful availment of the forum because "those who live or operate primarily outside a state have a ... right not to be subjected to judgment in its courts as a general matter.". *See J. McIntyre Machinery, Ltd. v. Nicastro,* 564 U.S. 873, 877, 131 S.Ct. 2780, 180 L.Ed.2d 765, 881 (2011).

**B.    Recent Changes to Personal Jurisdiction - In *Bristol-Myers Squibb* and *Ford*, the Supreme Court Limited, and Then Expanded Specific Jurisdiction**

Recent Supreme Court cases have rewritten the analysis of personal jurisdiction by modifying the nature and degree of the continuous and systemic contacts needed to achieve general jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918-19 (2011); *Daimler AG*, 571 U.S. at 122 (2014); *Bristol-Myers Squibb Co.*, 582 U.S. 255, 137 S.Ct. 1773 (2017). However, now that this case is in New York, the MLB Defendants and the New York Clubs have admitted to general jurisdiction. As to the remaining 28 non-resident Foreign Defendants, Plaintiffs rely on specific jurisdiction.

The Supreme Court has also recently re-addressed specific personal jurisdiction. Traditionally, specific jurisdiction exists over suits arising out of a defendant's contact with the forum. *International Shoe*, 326 U.S. at 317, 66 S.Ct. 154; *Daimler*, 571 U.S. at 127. "[T]he commission of some single or occasional acts of the corporate agent in a state" may sometimes be enough to subject the corporation to jurisdiction in that State's tribunals with respect to suits relating to that in-state activity. *International Shoe*, 326 U.S. at 318.

In *Bristol-Myers Squib*, the Supreme Court refined the analysis of both specific and general jurisdiction. 582 U.S. at 261. Over 600 mostly non-California residents filed suit in California state court against Bristol-Myers Squibb ("BMS"), asserting state-law personal injury claims allegedly caused by its drug Plavix. Incorporated in Delaware and headquartered in New York, BMS employed 250 California-based sales representatives and maintained a lobbying office. Importantly, Plavix was not developed, manufactured, labeled, or packaged in California; nor was any marketing or regulatory strategy performed there. BMS *did sell* Plavix in California (over 187 million pills; $900 million revenue; over 1% of nationwide sales). Plaintiffs did not allege

obtaining Plavix in California, injury in California, treatment in California, or being impacted by BMS's California activities. *Id*. at 264-65.

Originally based on general jurisdiction, *Bristol-Myers Squib's* jurisdictional analysis switched to specific jurisdiction post-*Daimler*. The California court held specific jurisdiction existed because BMS's contacts were sufficiently significant using a "sliding scale approach to specific jurisdiction" and concluded that "BMS's extensive contacts with California" permitted the exercise of specific jurisdiction "based on a less direct connection between BMS's forum activities and plaintiffs' claims that might otherwise be required." *Bristol-Myers Squibb*, 582 U.S. at 260.

> The Supreme Court rejected this approach:
>
> [The] … "sliding scale approach" is difficult to square with our precedents. Under the California approach, the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims. Our cases provide no support for this) approach, which resembles a loose and spurious form of general jurisdiction. For specific jurisdiction, a defendant's general connections with the forum are not enough.

*Id*. The Supreme Court expressly held *Bristol-Myers Squibb's* analysis was limited to cases originating in state court, holding "we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id*.

Four years later, the Supreme Court again addressed specific jurisdiction in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 141 S.Ct. 1017 (2021) ("*Ford*"). *Ford* dealt with two product-liability suits stemming from separate accidents involving two Ford vehicles: a 1996 Explorer (fatality in Montana) and a 1994 Crown Victoria (traumatic-brain injury in Minnesota). Ford designed the vehicles in Michigan, manufactured them in Kentucky and Canada, and sold them in Washington and North Dakota. Ford asserted the Montana and

Minnesota state courts "had jurisdiction only if the company's conduct in the state had given rise to the plaintiff's claims"—which, it argued, would only be the case if there was evidence Ford designed, manufactured, or sold in the state in which the particular vehicle was involved in the accident. The Supreme Court rejected this limited view of specific jurisdiction, holding:

> ... Ford's causation-only approach finds no support in this Court's requirement of a "connection" between a plaintiff 's suit and a defendant's activities. *Bristol-Myers*, 582 U. S., at ——, 137 S.Ct., at 1776. ... None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do. As just noted, our most common formulation of the rule demands that the suit <u>"arise out of *or relate to* the defendant's contacts</u> with the forum." *Id*., at ——, 137 S.Ct., at 1780 (quoting *Daimler*, 571 U.S., at 127, 134 S.Ct. 746; emphasis added; alterations omitted); see *supra* at ——. The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing.

*Ford,* 141 S.Ct. at 1026 (2021). (Emphasis added).

Accordingly, the Supreme Court rejected the concept that a defendant's connection to the forum sufficient for specific jurisdiction must cause the harm, stating that the litigation merely must "relate to" the defendant's conduct. *See id. Ford* affirmed that specific personal jurisdiction requires the claims to "arise out of or relate to the defendant's contacts with the forum." *Id*. at 1025. While the Court held that this did not require that the claim came about because of the defendant's conduct, it further held that "the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id*. at 1026.

Following *Bristol-Myers Squibb* and *Ford,* the scope of specific personal jurisdiction analysis under the federal standard has narrowed greatly. However, the New York long arm statute has always been seen as more restrictive than the federal standard, and that appears to remain the case. *Chatwal Hotels & Resorts, LLC v. Dollywood Co.*, 90 F.Supp.3d 97, 108 (E.D.N.Y. 2015).

C.    **This Court has Specific Personal Jurisdiction over the Nondomiciliary Foreign Clubs Defendants Under Section 302(a)(1) of New York's Long Arm Statute**

A court sitting in diversity applies the law of the forum state in determining whether it has personal jurisdiction over the defendants. *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir. 1986). The New York long-arm statute is found at Section 302 (a)(1-4) of the New York Civil Practices, but Plaintiffs rely solely on Section 302(a)(1) of the New York state long-arm statute providing that a court may exercise personal jurisdiction over any foreign defendant if that defendant "transacts any business within the state," and the claim arises from those business transactions. N.Y. Civ.Prac.L. & R. § 302(a)(1).

Some cases note that Section 302(a)(1) is typically invoked in contract cases, *see, e.g., Hoffrit for Cutlery, Inc. v. Amajac, Ltd*. 763 F.2d 55, 58-62 (2d Cir. 1985); *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 31 (2d Cir. 1996). Section 302(a)(1) also applies to other causes of action, including tort or employment law cases. *See Winner v. Tnyko Partners, LLC*, 333 F.Supp.3d 250, 258-263 (W.D.N.Y. 2018) (applying 302(a)(1) to a Title VII claim).

Pursuant to Section 302(a)(1), there are two steps to determining jurisdiction, "[a] court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007); *see also Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006).

The New York Court of Appeals has explained that "the overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York," *Ehrenfeld v. Bin Mahfouz*, 881 N.E.2d 830, 834 (N.Y. 2007) (brackets and internal quotation marks omitted), thereby "invoking the benefits and protections of its laws," *Fischbarg v. Doucet*, 880 N.E.2d 22, 26 (N.Y. 2007). "A

defendant need not physically enter New York State in order to transact business, 'so long as the defendant's activities here were purposeful.' " *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012) (quoting *Fischbarg*, 880 N.E.2d at 26).

### 1.  <u>Under the First Prong – The Foreign Clubs /Nondomiciliary Defendants Transact Business in New York</u>

The first prong of Section 302(a)(1), is easily met because "New York courts define 'transact[ing] business' as purposeful activity." (*Best Van Lines,* 490 F.3d at 246) and the "[P]roof of <u>one transaction</u> in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (citation omitted- emphasis added). "[P]roof of one transaction in New York is sufficient to invoke jurisdiction ... so long as the defendant's activities ... were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988)); *see also*, *Alan Lupton Associates, Inc. v. Northeast Plastics, Inc.*, 105 A.D.2d 3, 482 N.Y.S.2d 647 (4 Dept. 1984) (as long as the business activity is sufficiently purposeful).

To determine purposeful activity, courts look to "the totality of the defendant's activities within the forum," *Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortgage Investors,* 510 F.2d 870, 873 (2d Cir.1975).

In determining whether a defendant is purposefully transacting business in New York, a court must look at "the quality of the defendant['s] New York contacts." *Fischbarg*, 9 N.Y.3d at 381, 849 N.Y.S.2d 501, 880 N.E.2d 22; *see also Licci IV*, 732 F.3d at 168 ("[W]hether a defendant has purposefully availed itself of the New York forum is a fact-intensive inquiry inasmuch as it

requires the trial court ... 'to closely examine the defendant's contacts for their quality.' " (citations omitted0; *Licci II*, 673 F.3d at 62 (noting that a single act or "an ongoing course of conduct or relationship in the state may" suffice to establish jurisdiction).

Several factors may be considered in determining whether an out-of-state defendant transacts business in New York, including:

(i)    whether the defendant has an on-going contractual relationship with a New York corporation, *George Reiner & Co. v. Schwartz,* 41 N.Y.2d 648, 653, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977);

(ii)   whether the contract was negotiated or executed in New York, *George Reiner,* 41 N.Y.2d at 653, 394 N.Y.S.2d 844, 363 N.E.2d 551; *Hoffritz,* 763 F.2d at 60, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship, *CutCo,* 806 F.2d at 367–68; *Hoffritz,* 763 F.2d at 60;

(iii)  what the choice-of-law clause is in any such contract, *CutCo,* 806 F.2d at 366–67; *Sacody Technologies, Inc. v. Avant, Inc.,* 862 F.Supp. 1152, 1156 (S.D.N.Y.1994) (choice-of-law clause is a significant, but not dispositive, factor); and

(iv)   whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state, *CutCo,* 806 F.2d at 368..

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir. 1996).

Although all four of the above factors are relevant, no one factor is dispositive, and other factors may also be considered, and the ultimate determination is based on the totality of the circumstances. *See id., citing PaineWebber Inc. v. Westgate Group, Inc.,* 748 F.Supp. 115, 118 (S.D.N.Y. 1990). Under this four part test, all four parts are satisfied as to the Foreign Clubs because all necessarily transact business in New York under the first prong:

(i)    **<u>Ongoing contractual relations with a New York corporation</u>**: Defendants admit that each of the Foreign Clubs play at least 10 games a year in New York City (Brief

at p. 10). Further, Plaintiff has alleged that each Club provides 48% of their local baseball revenues to a revenue sharing program that is administered by the Commissioner's Office in New York that receives and then redistributes millions of dollars to each Club (1/30 of the total); Plaintiffs also allege that each Club maintains a continuous scouting presence in New York; and further that each Club is a member of the MLB, an unincorporated association headquartered and generally present in New York and controlled by the Major League Constitution, which each Foreign Club has agreed to abide by in every UEC it has signed with each scout.

(ii)  **Whether the Contract was executed in New York**: Although this prong is more specifically focused on contract cases, the fact is that every Plaintiff had an UEC not effective until signed by the Commissioner, and the Commissioner conducts business from New York so that every one of the Plaintiffs' prior UEC's was executed in New York;

(iii)  **Choice of Law**: The UEC that governs all scouts subject to this litigation includes a choice of law clause asserting New York law.

(iv)  **Notices of payments to New York**: Every UEC is sent to New York for approval by the Commissioner of Baseball. Moreover, every one of the Foreign Clubs sends 48% of the revenue from local baseball operations to and receives a redistributed share of 1/30 of the total revenue from the Commissioner's Office in New York.

Accordingly, under the first prong of the Section 302(a)(1) analysis, each of the Foreign Clubs purposefully transacts business in New York.

**2.    Under the Second Prong, Plaintiffs' Causes of Action Arise Out of the Foreign Clubs' New York Transaction of Business**

As to the second prong of Section 302(a)(1), a cause of action "arises out of" a defendant's transaction of business in New York for purposes of Section 302(a)(1) when there exists an "'articulable nexus' or a 'substantial relationship'"[3] between transactions occurring within the state and the cause of action sued upon. *Kronisch v. United States,* 150 F.3d 112, 130 (2d Cir.1998), citing *Kreutter,* 527 N.Y.S.2d at 198–99, 522 N.E.2d 40; and *McGowan,* 437 N.Y.S.2d at 645, 419 N.E.2d 321. *See also, Best Van Lines, Inc. v. Walker*, 400 F.3d 239 (2d Cir. 2007) ("[a] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." citing *Henderson v. INS,* 157 F.3d 106, 123 (2d Cir.1998) (internal quotation marks omitted).

There must be "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168–69 (2d Cir. 2013) (internal quotation marks and citation omitted). "[C]ausation is not required." *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 339, 960 N.Y.S.2d 695, 984 N.E.2d 893 (2012).

"The Second Circuit has warned district courts against narrowly construing this nexus requirement, 'which merely requires the cause of action to "relate to" the defendant's minimum contacts with the forum.'" *Franklin v. X Gear 101, LLC*, 2018 WL 3528731 at *7 (S.D.N.Y. July 23, 2018) ( (quoting *Chloé*, 616 F.3d at 167)), *report and recommendation adopted Franklin v. X*

---

[3]    This language is facially similar to the specific jurisdiction analysis of *Ford*. *See Ford*, 141 S.Ct. at 1026. Although almost identical in structure, Plaintiffs agree even post-*Ford*, that the New York long arm statue appears more restrictive.

*Gear 101, LLC*, 2018 WL 4103492 (S.D.N.Y. Aug. 28, 2018). If a claim is "arguably connected" to the business transaction that forms the basis for jurisdiction, jurisdiction under the long-arm statute is proper,…" *Licci*, 20 N.Y.3d at 340–41, 960 N.Y.S.2d 695, 984 N.E.2d 893; *see also Pearson Educ. v. ABC Books LLC*, 2020 WL 3547217, at *7 (S.D.N.Y. June 30, 2020) (concluding that the "arise from" prong had been sufficiently alleged where defendant's transaction of business through interactive websites, including to New York customers, was the same business through which he allegedly sold counterfeit textbooks, which gave rise to copyright and trademark infringement claims, <u>even absent allegations</u> that defendant sold a counterfeit book to a customer in New York).

One way to show the required relatedness is by demonstrating that one of the elements of the cause of action is satisfied by New York related conduct. "[W]here at least one element [of the cause of action pleaded] arises from the New York contacts, the relationship between the business transaction and the claim asserted" supports a finding of jurisdiction under section 302(a)(1). *Licci III*, 20 N.Y.3d at 341, 960 N.Y.S.2d 695, 984 N.E.2d 893.

This inquiry is "relatively permissive" and an articulable nexus or substantial relationship exists "where at least one element arises from the New York contacts" rather than "every element of the cause of action pleaded" (*id.* at 339, 341, 960 N.Y.S.2d 695, 984 N.E.2d 893). The nexus is insufficient where the relationship between the claim and transaction is "too attenuated" or "merely coincidental" (*Johnson v. Ward,* 4 N.Y.3d 516, 520, 797 N.Y.S.2d 33, 829 N.E.2d 1201 [2005]); *Sole Resort, S.A de C.V. v. Allure Resorts Mgmt., LLC,* 450 F.3d 100, 103 (2d Cir. 2006).

### 3.    The Roger Clemons Case is Instructive and Shows that New York's Long Arm Statute Reaches This Case

Moreover, as the Eastern District of New York explained in a case related to baseball, the "arise out of" language under Section 302(a)(1) does not require a direct link. *See McName v.*

*Clemons*, 762 F.Supp. 584, 597-98 (2d. Cir. 2011). In *McName*, retired baseball player and former New York Yankee superstar Roger Clemons, who was by the time of filing living in retirement in Texas, was seeking to deny New York personal jurisdiction over claims of defamation made by his former trainer, Brian McName. The claims of defamation related to the fact that McName had alleged he had injected Clemons with steroids while they were both employed by the New York Yankees in 2000 and 2001. McName alleged the two had an oral contract under which McName would inject Clemons with steroids for a fee of $5,000 per month. *See id*. at 594. Clemons had retired from baseball and the Yankees in 2003, but he came out of retirement to play for the Houston Astros from 2004 to 2007. *Id*. at 589. The alleged defamation that formed the basis of the litigation allegedly occurred in 2007 and 2008. Specifically, after McName accused Clemons of using steroids, Clemons engaged in an allegedly defamatory public relations campaign that formed the basis of McName's defamation litigation. However, none of Clemons' allegedly defamatory statements appeared to have been made in New York and Clemons had lived in Texas during the alleged defamations. *See id.* at 588-590.

In ruling that the trial court had personal jurisdiction over Clemons under Section 302(a)(1), the Second Circuit held that the 2000-2001 oral contract between McName and Clemons was sufficient for the defamation litigation to "arise out" of Clemons' New York contacts. *Id*. at 596-98.

> "New York courts have held that a "nondomiciliary which takes advantage of New York's unique resources in the entertainment industry has purposefully availed itself of the benefits of conducting business in the State, such that long-arm jurisdiction may be asserted where the cause of action arises out of that transaction." *See, McName v. Clemons*, *Courtroom Television Network v. Focus Media, Inc.,* 264 A.D.2d 351, 695 N.Y.S.2d 17, 19 (1999); *see, also, DiBella v. Hopkins,* 187 F.Supp.2d 192, 197–98 (S.D.N.Y.2002) (finding jurisdiction where a boxing advisor, matchmaker, and television packager brought action against professional boxer for libel per se and quantum meruit); *World Wrestling Federation Entertainment Inc. v. Bozell,* 142 F.Supp.2d 514 (S.D.N.Y.2001).

…

> In *DiBella,* plaintiff, a boxing matchmaker formerly employed by the Home Box Office ("HBO"), alleged that he was defamed by defendant Bernard Hopkins, a professional boxer. [*DiBella*, 187 F.Supp.2d] at 194. Hopkins publicly accused DiBella of improper conduct, telling reporters that while DiBella was still employed by HBO, DiBella asked him for-and he paid DiBella-$50,000 to arrange for his fights to be televised on HBO. *Id.* The court found that Hopkins' allegedly defamatory statements related to his efforts to establish a relationship with HBO and the services that DiBella eventually provided to Hopkins in connection with HBO. *Id.* Because Hopkins sought to purposefully avail himself of the benefits of conducting business in the state by seeking to take advantage of New York's "unique resources" in the entertainment and sports fields, and plaintiffs' claims arose out of that purposeful activity, the court could properly exercise long-arm jurisdiction over him. *Id.* at 198.

*McName v. Clemons*, 762 F.Supp.2d 584, 597-98 (2d. Cir. 2011).

Given the relatively more attenuated connection between the prior contact with New York and subsequent defamation found sufficient in Clemons, the actual ongoing activity of all Defendants focused on New York is necessarily well sufficient to satisfy Section 302(a)(1).[4]

> **4.    By Coordinating through the Commissioner's Office in New York their General Labor Relations, the Specific Blacklist and Decisions that Produced the Unlawful Failure to Hire, the Foreign Clubs' Complained-of-Conduct Arises Out of their New York Contacts**

The gravamen of Plaintiffs' specific personal jurisdiction argument is that the entire historical purpose of Major League Baseball Constitution and Rules is to control labor relations from the Commissioner's Office, which is in New York; that the current practice of the Foreign Clubs is to allow their general labor relations to be controlled by the Commissioner's Office in New York; that the specific contracts the Scouts signed with each Club was a UEC that did not become effective until approved by the Commissioner's Office in New York; and most importantly, that the decisions that resulted in Plaintiffs being blacklisting and not being hired for the jobs they

---

[4]    Defendants' brief also addressed Section 302(a)(3). Plaintiffs do not rely on this provision.

sought were coordinated through the Commissioner's Office in New York. Specifically, The FAC at paragraph 70 b.2. states in relevant part:

> (1) each Foreign Club engages in coordinated conduct, which conduct is coordinated with the Club Defendants and the MLB Defendants acting within Manhattan, New York; each Foreign Club Defendant coordinates its individual scouting activities and employment decisions related to the total number of scouts hired and fired by the Club Defendants through the cooperation and control of the MLB Defendants by allowing the MLB Defendants to exercise such control of nationwide scout operations through monitoring, limiting, and directing the Club Defendants' employment of all scouts, specifically including the actions and omissions that the Plaintiffs complain of above relating to controlling the hiring of scouts, limiting the number of scouts within the MLB and hired by MLB teams, and limiting the number of both scouts and Senior Scouts each Club Defendant may employ under the Major League Constitution.

Although the Defendants may vehemently deny the above allegations, the above allegations make it clear that the Plaintiffs are alleging the Defendants (including the Foreign Clubs) coordinated conduct through the Commissioner's Office in New York to not hire the Plaintiffs based on age; and that the conduct was coordinated with the Commissioner's Office in New York. As such, the allegations of harm arise from, are related to, and certainly, are not "unmoored" from the New York conduct of the Defendants.

### D. Traditional Notions of Fair Play and Substantial Justice are Not Offended by Subjecting the Foreign Club to Jurisdiction in New York under the Five Part Asahi Analysis

The New York Court of Appeals has recognized that Section 302 long-arm jurisdiction and the extent of federal due process are "not coextensive" and that while "personal jurisdiction permitted under the long-arm statute may theoretically be prohibited under a federal due process analysis, the New York Court of Appeals "would expect such cases to be rare." *D & R Global Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 29 N.Y.3d 292, 78 N.E.3d 1172, 56 N.Y.S.3d 488 (2017), citing *Rushaid v. Pictet & Cie,* 28 N.Y.3d at 331, 45 N.Y.S.3d 276, 68 N.E.3d 1 (2016).

Federal courts in New York agree. "The requisite [federal] 'minimum contacts' analysis 'overlaps significantly' with New York's [section] 302(a)(1) inquiry into whether a defendant transacted business in the State." *Minnie Rose LLC v. Yu*, 169 F.Supp.3d 504, 515 (S.D.N.Y. 2016) (quoting *Brown v. Web.com Grp., Inc.*, 57 F.Supp.3d 345, 358 (S.D.N.Y. 2014)). Accordingly, under the federal minimum contacts analysis, when a claim "arises out of or relates to a defendant's contacts with the forum state," the "minimum contacts" showing is met if the plaintiff can show that the defendant "purposefully availed itself of the privilege of doing business" in the forum and could foresee being hailed into court there. *Id.* (internal quotation marks and citation omitted); *see also Best Van Lines*, 490 F.3d at 242–243.

However, even if a plaintiff can demonstrate that a defendant purposefully availed itself of the forum state, the plaintiff must also show that the exercise of jurisdiction is "reasonable" under the due process clause, that is, it does not "offend traditional notions of fair play and substantial justice." *Chloé*, 616 F.3d at 172–73 (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)) (internal quotation marks omitted).

In determining the reasonableness of an exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice," both the Plaintiffs and Defendants agree that the five prong *Asahi* analysis applies and that a court must consider [(1)] the burden on the defendant, [(2)] the interests of the forum state, and [(3)] the plaintiff's interest in obtaining relief. It must also weigh in its determination [(4)] the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and [(5)] the shared interest of the several States in furthering fundamental substantive social policies. *Id*. citing *Asahi*, 480 U.S. at 113, 107 S.Ct. 1026). Further, under the five-part *Asahi* analysis, the defendants have the burden. "Where a plaintiff makes the threshold showing of the minimum contacts required [for personal jurisdiction], a defendant must

<u>**Plaintiffs' Response in Opposition to Motions to Dismiss – Page 23 of 39**</u>

present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Bank Brussels Lambert v. Fiddler, Gonzalez & Rodriguez*, 305 F.3d 120, 129-130 (2d Cir. 2002) (internal quotation marks omitted) citing *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 568 (2d Cir.1996).

### 1.    The Burden on the Defendants

Defendants assert that some of them are burdened by the fact that they reside thousands of miles from New York. However, for over two decades the Second Circuit has repeatedly held that with modern communications and transportation, such issues are of lesser value than in the past, *See Chloe*, 618 F.3d at 173, *citing Bank Brussels Lambert,* 305 F.3d at 129-130 ("Even if forcing the defendant to litigate in a forum relatively distant from its home base were found to be a burden, the argument would provide defendant only weak support, if any, because the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago.")

Further, Defendants fail to recognize the burden if each of the Foreign Clubs prevails; each Foreign Club would be forced to defend Plaintiffs' cases separately in their home state. At the moment, there is a single litigation but there is no doubt that if the Court finds no personal jurisdiction in this case, that Plaintiffs will seek to refile in every Foreign Club's hometown federal court (or perhaps combined in the states with multiple Foreign Clubs). Aside from the Colorado Rockies and the Baltimore Orioles, each of the Foreign Clubs share the services of MLB's attorneys. If this Court were to dismiss this case for lack of personal jurisdiction, each Foreign Club would have to defend cases in their own hometown with attorneys licensed in their local federal district. To the extent that the current counsel would stay with each Foreign Club and appear Pro Hac Vice, in many districts local counsel would be required. Moreover, while the MLB

**Plaintiffs' Response in Opposition to Motions to Dismiss – Page 24 of 39**

Defendants would be defendants in each case, each Foreign Club could have to participate in discovery in other cases and depositions of the MLB Defendants' witnesses would have to be cross noticed in all 28 other potential cases. Even more, in the few states with multiple Foreign Club Defendants, travel would still be a reality. Is it really easier for the Pittsburg Pirates to be hailed into federal Court in Philadelphia instead of New York? Under the facts of this case, splitting a single action in New York into up to 17 or 18 separate actions is absolutely false economy, contrary to every good principle of judicial administration.

## 2.    The Interests of the Forum State

New York Courts have routinely held that New York has an interest in policing the conduct of actors that seek to take advantage of the entertainment industry in the state, and as detailed above in the *Clemons* case, that includes baseball. *McName*, 762 F.Supp.2d at 597-598. New York has a state law against age discrimination in employment. N.Y. Executive Law § 296. Moreover, where in some cases in which a dismissal for lack of jurisdiction would result in the reduction of the case load in the Courts of the forum state, in this case, whether the other 28 Foreign Clubs remain in this case, the cases against the New York Yankees and New York Mets would remain in New York.

## 3.    The Plaintiff's Interest in Obtaining Relief

There is no doubt that Plaintiffs' interest in obtaining relief is best served by keeping these cases together in a single case, in a single location, with a single set of discovery, with defense counsel being the same for almost all of the Defendants, where MLB discovery need not be noticed in 28 cases and re-served in 28 cases.

4.      **The Interstate Judicial System's Interest in Obtaining the Most Efficient Resolution of Controversies**

In evaluating this factor, courts generally consider where witnesses and evidence are likely to be located. *See Metro. Life Ins. Co.*, 84 F.3d at 567, citing, *Caruth,* 59 F.3d at 129, *Vermeulen v. Renault, U.S.A., Inc.,* 985 F.2d 1534, 1552 (11th Cir.), *cert. denied,* 508 U.S. 907, 113 S.Ct. 2334, 124 L.Ed.2d 246 (1993). Defendants assume that dispersing the Foreign Defendants to their 28 home courts (or 17 home states/provinces if cases are combined by state) would somehow be more efficient. As detailed above, the case for efficiency is having these cases in a single location because many of the underlying evidence related to the alleged blacklist, the conduct with coordination of the MLB Defendants, and the manner and means in which the conspiracy was developed and was implemented, will be central to New York and will focus on New York witnesses.

5       **The Shared Interest of the Several States in Furthering Fundamental Substantive Social Policies**

The Second Circuit has held that this factor requires the Court to consider the common interests of the several states in promoting substantive social policies. *See Metro. Life Ins. Co.*, 84 F.3d at 567. Defendants assert this factor is "neutral" because "at least" some of the Foreign Clubs reside in a location with laws preventing age discrimination, citing Florida and Texas statutes. However, all 30 MLB Clubs reside in a state or a province with a statute that prohibits age discrimination in employment in some shape or form. Specifically, Twenty-nine of the MLB Clubs reside in one of 17 states or a province with a private right cause of action for age discrimination in employment under state or province law.[5] While Georgia has no private cause of action, it is a crime in Georgia to commit age-related employment discrimination. GA Code § 34-1-2 (2024).

---

[5]      Az. Rev'd Stat. § 41-1463; Cal. Gov't Code § 12940; Colo. Rev'd Stat. § 24-34-402; Florida Stat. § 760.10;  775 Ill. Comp. Stat. 5/Art. 2; Maryland St. Gov't Code § 20-606; Mass. Gen. Laws

E.    **Joint Employer Conduct Creates Personal Jurisdiction**

Courts within the Southern and Eastern Districts of New York have routinely held that "adequately alleging a joint employment relationship is 'sufficient to render defendants amenable to jurisdiction in New York.'" *See Xiaoyan Liu v. Canteen 82 Inc.*, Case No. 17 Civ. 7862 (KPF), 2018 WL 6067228, ** 4-6 (S.D.N.Y. Nov. 20, 2018); citing *Franklin v. Waters*, No. 16 Civ. 9819 (AKH), 2018 WL 3231660, at *3 (S.D.N.Y. Apr. 10, 2018) and *Mao v. Sands Bethworks Gaming LLC*, No. 15 Civ. 6252 (JMF), 2016 WL 1717220, at *3 (S.D.N.Y. Apr. 28, 2016).

The Court's analysis in *Xiaoyan Liu* is clear:

> And because this Court agrees that joint employment may serve as a basis for personal jurisdiction in New York, it considers Plaintiffs' allegations regarding Defendants' joint employer relationship. When determining whether Defendants are joint employers, the question is one of control. *First*, the exercise of formal control over employees is sufficient, but not necessary, to adequately allege an employer relationship. *See Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984).

*Xiaoyan Liu*, 2018 WL 6067228 at *5.

Unlike most joint employer cases in which the paper trial attempts to deny the ability of the joint employer to exercise formal control over employment relations, the entire reason that Major League baseball exists is because of the need to exercise control of baseball's labor relations through a single person, the Commissioner of Baseball, who (in response to the "Black Sox" scandal of 1919) was given absolute control of labor relations of all MLB Clubs. *See* FAC at para. 79-82, detailing Major League Constitution at Artiles II, Section 2(b) and 3, and Article IV, as well as Major League Rules 3(b) and 3(k) adopted pursuant to Article IV. Moreover, each UEC makes clear that the MLB Clubs and the Scouts expressly state that the Commissioner has absolute

---

Chapter 151B, § 4; Mich. Comp. Laws § 37.2202; Minn. Stat. § 363A.08; Missouri Rev'd Stat. § 213.055; N.Y. Executive Law § 296; Ohio Rev'd Code § 4112.02; Texas Lab. Code § 21.051; Rev'd Code of Washington § 49.60.180; D.C. Code § 2-1402.11; Wisc. Stat. § 111.321; Ontario Human Rights Code, § 1.

power over the employment relationship the UEC creates (if the Commissioner approves), including by complying with all decisions at the Commissioner, and be subject to binding arbitration by the Commissioner. *See* UECs at ¶4, § IV. B; § XII. B. Moreover, the gravamen of this case is that the Commissioner's Office enforced an artificial limit on the number of Scouts, which limited the number of Senior Scouts that could be employed, and that a blacklist of banned Senior Scouts was promulgated by the Commissioner's Office, which the Clubs had to obey. FAC at ¶ 70.

Indeed, because Baseball's conduct of colluding in regard to labor relations is so vital to the MLB, it has obtained and fought to maintain an anti-trust exemption for such collusion. *See, e.g., Fed. Baseball Club of Balt. v. Nat'l League of Prof'l Baseball Clubs*, 259 U.S. 200, 208–09, 42 S.Ct. 465, 66 L.Ed. 898 (1922), *Flood v. Kuhn*, 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972). While the MLB and its Clubs have successfully argued that the anti-trust exemption legally extends to the scouts, the exemption is limited to anti-trust violations and does not provide the right to violate labor laws. *See Wyckoff v. Office of the Commissioner of Baseball*, 211 F.Supp.3d 615 (2016) (holding MLB anti-trust exemption applies to scouts but that it does not excuse claims under the Fair Labor Standards Act).

However, Defendants cite to five cases to assert that "Courts in this District has consistently rejected" specific personal jurisdiction based on joint employer liability. *See* Brief at p. 29. None stand for the point Defendants assert. Two of these cases have nothing to do with joint employer liability. *See Charles Scwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 84 (2d Cir. 2018) (neither it or its citation are joint employer cases) and S*PV Osus Ltd. v. UniCredit Bank Austria*, No.18-cv-349(AJN), 2019WL1438163, *10 (S.D.N.Y. Mar.30, 2019)(same). In one case, the court expressly refused to address the issue because the joint employers had been dismissed. *Dong Chul Kim. V.*

*Harte Hanks, Inc.*, 425 F.Supp.3d 246, 258 (S.D.N.Y. 2019) In another, the court appeared to accept joint employer-based jurisdiction but found insufficient control of the non-resident Defendant for it to prevail. *Zurich Am. Lfe Ins. Co. v. Nagel*, 571 F.Supp.3d 168, 183 (S.D.N.Y. 2021). Finally, in Defendants' fifth case, *Henao v. Parts Auth., LLC.*, the court recognized the validity of Plaintiff's *Xiaoyan Liu* case, but it distinguished *Henao* by finding the non-residential defendants in *Henao* had not participated in or committed any employment related acts that voluntarily were directed at New York, as had occurred in *Xiaoyan Liu*. *See* 557 F.Supp.3d 490, 496-97 (S.D.N.Y. 2019).

Because this case is more like *Xiaoyan Liu* than *Henao*, joint employer conduct is a proper basis for specific personal jurisdiction over the 28 Foreign Clubs.

F. **Venue Is Appropriate In This District for a Multi-Plaintiff Claim Under 28 U.S.C. § 1391(b)(2) or 12(b)(3).**

The unspoken basis of Defendants' motion to transfer venue as to each of the Foreign Clubs and the New York Mets is the concept that the venue of each Defendant should be reviewed separately. Defendants have failed to account for the fact that Plaintiffs have brought this claim as a single matter with multiple Defendants, and as such (and until the Defendants move to sever this matter into multiple matters), the venue analysis under 28 U.S.C. §1391(b)(2-3) is based on a multi-defendant analysis.

Under 28 U.S.C. §1391(b)(2), venue is appropriate where "a substantial part of the events . . . giving rise to the claim occurred;" and, if the Court were to find there is no place where venue is proper under §1391(b)(2), then under §1391(3) venue may be laid in any case in which it is proper as to any defendant.

As to §1391(b)(2), Plaintiffs assert substantial events in New York giving rise to their claims, and the Second Circuit has made clear that venue can be proper in multiple districts under

subsection 1391(b)(2), "as long as 'a substantial part' of the underlying events took place in those districts." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir.2005);  Thus, under section 1391(b)(2), to defeat a venue challenge, a two-part inquiry is appropriate: 1) identify the nature of the claims and the alleged acts or omissions giving rise to the claims, and 2) determine whether a substantial part of the acts or omissions occurred in the district where the suit was filed. *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005). "'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Id*. at 432–33.

In this case, Plaintiffs assert that qualitatively the most important witnesses and evidence are those persons and facts related to the coordinated activity to intentionally not rehire Senior Scouts on an MLB-wide basis, and all such activity necessarily runs through the Commissioner's Office in New York. Indeed, Defendants have not asserted where better venue exists, such as by filing a *forum non conveniens* motion, a motion to transfer venue, or a motion to sever. Instead, they simply ignore that this is a nation-wide pattern and practice claim, alleging a joint-employment relationship, in which the Commissioner of Baseball, who is located in New York, is alleged to have coordinated both the general labor activities of the MLB Clubs and the specific conduct of which Plaintiffs complained by the coordinated conduct of refusing to hire Senior Scouts based on age.

Additionally, or alternatively, on the off-chance that this Court were to find there is no "proper" location where a "substantial part of events or omissions occurred," is available under Section (b)(2), then venue is proper under failsafe provision of subsection (b)(3),which applies to multi-defendant cases and states that if there is no district available under §1391(b)(1-2), that

venue will be proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction." 28 U.S.C. §1391(b)(3). Under §1391(b)(3), because venue is proper as to the MLB Defendants and the New York Yankees, venue is appropriate as to all Defendants.

**G.    Defendants' Rule 12(B)(6) Motions to Dismiss Must Should Be Denied**

For the first time in this litigation, Defendants assert a Rule 12(b)(6) motion to dismiss in this action. To state a viable claim, a plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In other words, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level'") (quoting *Twombly*, 550 U.S. at 555).

A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When considering a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, this tenet does not apply to legal conclusions or "threadbare recitals of a cause of action's elements." *Iqbal*, 556 U.S. at 663. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### 1.    Plaintiffs Have Stated Claims Against the Club Defendants

In the ordinary failure to hire case, a Plaintiff can create a prima facie case under the *McDonnell Douglas* burden shifting standard by establishing that the plaintiff: (1) is a member of a protected class; (2) was qualified for the position for which he applied; (3) was denied the position; and (4) the denial occurred under circumstances giving rise to an inference of discrimination. *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004).

Defendants ignore all of the above evidence and seek to focus solely on the FAC at Paragraphs 104-112, in which the Plaintiffs describe a variety of individual cases where some individual Plaintiffs have been told, in one set of words or another, that they are not being rehired based on age, and then the fact that the other Plaintiffs have not supplied the same level of detail. *See* Brief at p. 27. Further, Defendants seek dismissal by pointing to six cases where a Plaintiff in that case, relying on the standard prima facie factors in an ordinary failure to hire case, could not show he or she was applying for an actual job. *See id*. at 28-29, citing six cases.

However, Defendants' motion to dismiss misses the mark by ignoring this is not an ordinary case. As the Second Circuit noted:

> [F]rom the outset, the Supreme Court expressly noted that the McDonnell *Douglas* standard, though a useful yardstick, "is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13. *See also Texas Department of Community Affairs v. Burdine,* 450 U.S. at 253 n. 6, 101 S.Ct. at 1094 n. 6 (*McDonnell Douglas* standard "is not inflexible"). More recently, in *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978), the Court stressed that the *McDonnell Douglas* analysis is neither "rigid" nor "mechanized" and that the primary focus is always whether an employer treats an employee less favorably than other employees for an impermissible reason.
>
> We too have recognized that the *McDonnell Douglas* standard is not a rigid one and that the "central question is whether [the] plaintiff has presented sufficient evidence to permit a reasonable fact-finder to conclude that age was a determinative factor in the employer's decision." *Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 81 (2d Cir.1983). In *Stanojev v. Ebasco Services, Inc.,* 643 F.2d 914, 920–21 (2d.Cir.1981), we held that even though the plaintiff, whose job was eliminated

upon his discharge, failed to show that a new employee took over his job after discharge or even that the position was left open, the *McDonnell Douglas* formula is not the only means of raising an inference of age discrimination. As alternatives, the plaintiff was permitted to show direct evidence, statistical evidence, or circumstantial evidence supporting an inference of age discrimination. *Id.* at 921.

In *Hagelthorn v. Kennecott Corp.,* 710 F.2d at 76, we again considered the requirements of a prima facie case of age discrimination in the context of a structural reorganization or work force reduction. Relying on *Stanojev,* 643 F.2d at 914, and on Supreme Court assertions that the *McDonnell Douglas* formula is not inflexible, we held that plaintiff Hagelthorn could depart from the *McDonnell Douglas* standard and show direct evidence of discrimination; he was not required to show that he was replaced by any employee or that his job continued to exist after the reorganization. *Hagelthorn,* 710 F.2d at 81.

Finally, we have previously tailored the four elements of a *McDonnell Douglas* prima facie case to permit a plaintiff in a non-reduction-in-force case to make a prima facie showing of age discrimination without establishing that she was replaced by a younger employee. *Pena v. Brattleboro Retreat,* 702 F.2d 322, 324 (2d Cir.1983)

Moreover, even after the 2007 *Iqbal* and *Twombly* cases, "establishing a prima facie case of age discrimination is not necessary to survive a motion to dismiss, [as] courts do use the standard as a guidepost when determining whether the plaintiff has provided the defendant with fair notice of her claim." *Barker v. UBS AG,* 2011 WL 283993, at *5 (D.Conn. Jan. 26, 2011); *see also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510–11, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

In this case, the age discrimination of which Plaintiffs complain was tied to the alleged restructuring of the MLB Scouting Departments following the COVID pandemic. Specifically, the FAC alleges that: (1) prior to 2020, the number of Scouts maintained by Defendants had been stable (FAC ¶ 99); (2) Defendants used COVID as a pretext to reduce the number of Scouts in baseball, firing 51 of 83 older Scouts in the process; blaming the process on COVID and creating the expectation that their jobs would exist after COVID, but that reemployment is being denied in part based on a blacklist of former scouts that cannot be re-employed (FAC ¶ 101); (3) the existence of the blacklist was confirmed by at least one Club's regional scouting director who also confirmed

that Plaintiff Blakely was on the list, and that on information and belief, the list identifies other Older Scouts who cannot be rehired by the Clubs based on age (FAC ¶ 97).

The above facts have sufficiently placed the Defendants on notice of the claims against them. Indeed, it would be a remarkable thing if an employer could intentionally restructure their labor force based on age; trick that labor force into believing they would have their jobs back when a rare global pandemic was over; refuse to hire the same Senior Scouts based on an age-related blacklist; and then claim that a standard ordinary prima facie case analysis applied to the joint search for justice of those impacted by this misconduct.[6]  Plaintiffs, even prior to any discovery, jurisdictional or otherwise, have unquestionably adequately plead their claims and so precluded Defendants' motion to dismiss for failure to state a claim.

### 2. Plaintiffs Have Stated a Valid Claim Against the Commissioner of Baseball under New York Law Related to Unincorporated Associations

Defendant Robert Manfred, Commissioner of Baseball asserts a Rule 12(b)(6) claim based on the long line of cases that hold individual or managerial liability is not proper under the ADEA. See Motion at 34, ("[C]ourts in the Second Circuit have consistently held that the ADEA does not impose liability on individuals." *Wang v. Palmisano*, 157 F.Supp.3d 306, 338 (S.D.N.Y. 2016) (granting Rule 12(b)(6) motion dismissing plaintiff's ADEA claims against individual defendants) ….).

However, Plaintiffs' FAC make it clear that Commissioner Manfred is not being sued as an individual, but rather pursuant to New York General Associations Law at Article 3, Section 13, asserting, "Manfred, as the Commissioner of Baseball, is individually named as the appropriate

---

[6]    Even more, the individual Plaintiffs were scouts with a history of networking. Scouting jobs are not usually posted on a "jobs board" or a website. Each of the Plaintiffs understood that he was applying to actual job openings. This fact can easily be added to an amended complaint under the liberal standard of Rule 15. *See Grace*, 228 F.3d at 53.

representative of the MLB under this statute should the Court find that the statute applies to the MLB, …" an unincorporated association because that appears to be the requirement of New York Law. FAC at ¶ 39 (a-c).

Under the ADEA, an employer is defined as "a person engaged in an industry affecting commerce who has twenty or more employees." 29 U.S.C. § 630(b). Further, a person is defined as "one or more individuals, partnerships, associations, labor organizations, corporations, business trusts, legal representatives, or any organized group of persons." 29 U.S.C. § 630(a). Accordingly, the very text of the ADEA allows liability of a "person" or an "association" if he/she/it is otherwise an "employer." However, the ADEA (and Title VII and the ADA) does not allow for co-employee or supervisor liability. *See Starkman v. Evans*, 18 F.Supp.2d 630, 632 (E.D. LA. 1998).

To be clear, none of Defendants' cases against "individual liability" apply to this case because each of the cases cited by Defendants dealt with the issue of supervisor or co-employee liability when there was a separate and clear other "person" that was the identified employer. *See e.g., Thorpe v. Piedmont Airlines, Inc.*, 926 F.Supp.2d 453, 462 (N.D.N.Y. 2013) (dismissing ADEA cases against three co-employees but allowing claim against named corporate employer).

However, it is clear that the ADEA can be filed against an individual when the individual is the proper "person" to name as the employer. *See e.g., Starkman*, 18 F.Supp.2d at 632 (applying the rule in a Title VII case and stating that "This circuit has made it clear that individuals who do not otherwise qualify as 'employers,' as a sole proprietor would, cannot be held individually liable under Title VII of the Civil Rights Act of 1964", citing Grant v. Lone Star Co., 21 F.3d 649 (5th Cir. 1994). As the Eastern District of Illinois stated when applying the rule against individual liability in a Title VII case:

> An individual who does not independently meet Title VII's definition of an "employer" cannot be held liable under Title VII. E.E.O.C. v. AIC Security

Investigations, Ltd., 55 F.3d 1276, 1279–82 (7th Cir.1995) (an ADA case applying reasoning from other circuits in Title VII cases); *Williams v. Banning*, 72 F.3d 552, 553–54 (7th Cir.1995) (applying AIC to Title VII cases). This means that an individual, who does not employ any employees but is merely a supervisor for a company, cannot be personally liable for unlawful acts of discrimination.

However, if the individual is a sole proprietor, with 15 or more employees, the sole proprietor is liable under Title VII. [citation omitted].

*E.E.O.C. v. Oak Lawn Ltd.*, 987 F.Supp. 647, 649-50 (E.D. Ill. 1997).

Accordingly, to the extent that this case remains in New York, the Plaintiffs assert that Commissioner Manfred is a proper Defendant under New York law because he is the equivalent of the president of an unincorporated association. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. City of Albany, N.Y.*, 250 F.Supp.2d 48, (N.D.N.Y. 2003) citing *Locke Associates, Inc. v. Foundation for the Support of the United Nations,* 173 Misc.2d 502, 504, 661 N.Y.S.2d 691 (N.Y.C.Civ.Ct. 1997), suit can be brought in the name of "an officer who is the functional equivalent" to a president or treasurer. *Id.*[7]

### 3. Plaintiffs Have Stated Claims Against the MLB Defendants as Joint Employers

Plaintiffs have already described above that they have stated the required showing that the MLB Defendants have formal control of the Clubs' labor relations sufficient to state the Defendants are joint employers. *See* pages 28-29, Section F, *supra*., which are incorporated herein.

### 4. Plaintiffs Requested Relief of Dismissal with Prejudice is Excessive – Plaintiff Alternatively Seeks Ability to Amend, if Necessary

Defendants' requested Rule 12(b)(6) relief is excessive given that this is the first time that the Defendants' have filed a Motion to Dismiss for failure to state a claim, and Plaintiffs are

---

[7] Plaintiffs have also sued Major League Baseball as a named entity apart from Commissioner Manfred, under Federal Rule 17(b)(3)(a), because some states do not have a provision similar to New York law; in such locations the MLB must be named as a defendant in the Association's name.

certainly able to amend if the Court deems it necessary. Whether to grant leave to amend is a decision squarely within the district court's discretion. *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 540 (2010) ("[Rule 15(a)] gives a district court discretion to decide whether to grant a motion to amend a pleading before trial."); *MHANY Mgmt. v. Cty. of Nassau*, 843 F.Supp.2d 287, 340 (E.D.N.Y. 2012) (noting that "it is ultimately within the sound discretion of the court whether to grant leave to amend"). A court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *Iqbal v. Ashcroft*, 574 F.3d 820, 822 (2d Cir. 2009) (quoting Fed. R. Civ. P. 15(a)(2)); *Grace v. Rosenstock*, 228 F.3d 40, 56 (2d Cir. 2000) (same); *Guideone Specialty Mut. Ins. Co. v. Hapletah*, No. 05 Civ. 1401, 2006 WL 1455468, at *1 (E.D.N.Y. May 24, 2004) ("[Rule 15(a)] provides for a liberal amendment of pleadings.").

"One appropriate basis for denying leave to amend is that the proposed amendment is futile." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive ... it is not an abuse of discretion to deny leave to amend."). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Ferrara v. Smithtown Trucking Co.*, 29 F.Supp.3d 274, 279 (E.D.N.Y. 2014).

In this case, Defendants have merely cited to six cases that in ordinary circumstances require a refusal to hire plaintiff to plead he applied for an actual job. Although Plaintiffs believe this is unnecessary under the circumstances – none of the six cases relied upon by Defendants included a coordinated campaign to refuse to hire persons based on age or a blacklist of employees based on age.

Even so, if the Court so finds, Plaintiffs are quite capable of amended for this particular item. And Plaintiffs expressly move for such ability to amend should the Court find it is necessary.

**CONCLUSION**

As a matter of history, contract, and conduct, the MLB exists for the purpose of controlling the labor relations of all Clubs. The Foreign Clubs' coordinated conduct was focused on New York, and Plaintiffs' allegations state valid ADEA claims.

**WHEREFORE**, this Court should deny Defendants' Motion and/or grant all other relief it deems just and right.

Respectfully submitted,

/s/ Robert E. Goodman, Jr.
Robert E. Goodman, Jr.
Member of the Bar of the District of Massachusetts
Massachusetts BBO# 549175
Texas State Bar No. 08158100
reg@kilgorelaw.com
Admitted Pro Hac Vice
to the Southern District of New York

Eric Roberson
Texas State Bar No. 00792803
enr@kilgorelaw.com
Admitted Pro Hac Vice
to the Southern District of New York

Kilgore & Kilgore, PLLC
3141 Hood Street, Suite 500
Dallas, Texas 75219
(214) 379-0823 – Goodman
(214) 379-0817 – Roberson
(214) 379-0837 – Fax

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF COMPLIANCE**

The undersigned certifies that this Brief contains 11,987 words, as counted by Microsoft Word, and is therefore in compliance with the Courts' order in this respect.

/s/ Robert E. Goodman, Jr.

**CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record will be served via ECF simultaneously with filing of this document.

/s/ Robert E. Goodman, Jr.
Robert E. Goodman, Jr.