UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMES S. BENEDICT et al.,

                         Plaintiffs,

             -against-

ROBERT MANFRED, COMMISSIONER OF
BASEBALL et al.,

                        Defendants.

24-CV-04314 (MMG)

---

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS' FIFTH AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page:**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT..........................................................................................................................2

I.     PLAINTIFFS' ATTEMPT TO ESTABLISH SPECIFIC JURISDICTION OVER
     THE NON-RESIDENT DEFENDANTS FAILS. ...........................................................2

A.    Plaintiffs Failed To Establish Jurisdiction Under CPLR 302(a)(1). ....................................3

B.    Jurisdiction Would Offend Notions of Fair Play and Substantial Justice............................7

II.    PLAINTIFFS HAVE NOT ESTABLISHED VENUE IN THIS DISTRICT AS TO
     THE NON-RESIDENT DEFENDANTS AND NEW YORK METS. ............................10

III.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A
     CLAIM WITHOUT LEAVE TO AMEND. ...............................................................13

A.    Plaintiffs Have Not Pled Sufficient Plausible Facts as to the Clubs.................................13

B.    Plaintiffs Have Not Pled Sufficient Plausible Facts as to MLB. ......................................15

C.    Plaintiffs Have Not Pled Sufficient Plausible Facts as to Commissioner Manfred. ..........16

IV.   Plaintiffs Should Not Be Granted Leave to Amend............................................................17

CONCLUSION....................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AmTrust Fin. Servs., Inc. v. Lacchini,*
    260 F. Supp. 3d 316 (S.D.N.Y. 2017)..........................................................................................7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................................................................13, 16

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)........................................................................................................................13

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S. F. Cnty.,*
    582 U.S. 255 (2017)......................................................................................................................2, 8

*Bussa v. St. John's Univ.,*
    No. 18-CV-4623 (KAM)(RER), 2019 WL 136641 (E.D.N.Y. Jan. 8, 2019).........................15

*Daniel v. Am. 8d of Emergency Med.,*
    428 F.3d 408,432-33 (2d Cir. 2005) .............................................................................................11

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,*
    284 F. Supp. 2d 204 (D. Mass. 2003) ............................................................................................4

*Dix v. Peters,*
    374 F. Supp. 3d 213 (N.D.N.Y. 2019), *aff'd*, 802 F. App'x 25 (2d Cir. 2020) .........................7

*Dong Chul Kim v. Harte Hanks, Inc.,*
    425 F. Supp. 3d 246 (S.D.N.Y. 2019).............................................................................................7

*E-Z Bowz, L.L.C. v. Prof. Prod. Rsrch. Co., Inc.,*
    No. 00-CV-8670, 2003 WL 22064259 (S.D.N.Y. Sept. 5, 2003).................................................6

*Eades v. Kennedy, PC L. Offs.,*
    799 F.3d 161 (2d Cir. 2015)............................................................................................................8

*Ford Motor Co. v. Montana Eighth Judicial District,*
    592 U.S. 351 (2021)....................................................................................................................2, 3, 8

*Franklin v. Waters,*
    No. 16 Civ. 9819 (AKH), 2018 WL 3231660 (S.D.N.Y. Apr. 10, 2018)...................................7

*Gulf Ins. Co. v. Glasbrenner,*
    417 F.3d 353 (2d Cir. 2005)..........................................................................................................10

*Henao v. Parts Auth., LLC*,
 557 F. Supp. 3d 490 (S.D.N.Y. 2021)................................................................7

*Hill v. AMB Sport & Ent., LLC*,
 No. 22-cv-2961, 2023 WL 2058066 (N.D. Ill. Feb. 16, 2023) ...............................16

*Johnson v. City Univ. of N. Y.*,
 No. 00 Civ. 4964 (WK), 2002 WL 1750841 (S.D.N.Y. July 24, 2002) ...................13

*Kurtz v. Hansell*,
 No. 20 CIV. 3401 (PAE), 2021 WL 1143619 (S.D.N.Y. Mar. 24, 2021) .................6

*Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys., Inc.*,
 10 F. Supp. 2d 334 (S.D.N.Y. 1998)...................................................................6

*Lugo v. Lesbian & Gay Communities Serv. Ctr.*,
 No. 21-CV-07423 (MMG), 2024 WL 5168042 (S.D.N.Y. Dec. 19, 2024).............18

*Mao v. Sands Bethworks Gaming LLC*,
 No. 15 Civ. 6252 (JMF), 2016 WL 1717220 (S.D.N.Y. Apr. 28, 2016) ..................7

*McNamee v. Clemens*,
 762 F. Supp. 2d 584 (E.D.N.Y. 2011) ..................................................................5

*Micromem Techs., Inc. v. Dreifus Assocs. Ltd.*,
 No. 14-CV-9145 (LAK), 2015 WL 8375190 (S.D.N.Y. Dec. 8, 2015) ............10, 11

*Modeste v. Loc. 1199, Drug, Hosp. & Health Care Emps. Union*, *RWDSU, AFL-CIO*,
 850 F. Supp. 1156 (S.D.N.Y.), *as amended* (Sept. 2, 1994), *aff'd*, 38 F.3d 626
 (2d Cir. 1994)...................................................................................................17

*Pellant et al. v. Detroit Tigers, Inc.*,
 Case No. 2:23-cv-13288 (SFC) (APP) (E.D. Mich.) ............................................8

*Petrosino v. Bell Atl.*,
 385 F.3d 210 (2d Cir. 2004)................................................................................14

*Prescription Containers, Inc. v. Cabiles*,
 No. 12 CIV. 4805 CBA VMS, 2014 WL 1236919 (E.D.N.Y. Feb. 14, 2014)........17

*Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*,
 No. 08-CV-442 TPG FM, 2014 WL 4723299 (S.D.N.Y. Sept. 23, 2014) ...............6

*Rubert v. King*,
 No. 19-CV-2781, 2020 WL 5751513 (S.D.N.Y. Sept. 25, 2020)...........................15

*Senne v. Kan. City Royals Baseball Corp.*,
  105 F. Supp. 3d 981 (N.D. Cal. 2015) ................................................................4

*Shenzhen OKT Lighting Co. v. JLC-Tech LLC*,
  No. 20 CIV. 5062 (ER), 2021 WL 4443637 (S.D.N.Y. Sept. 28, 2021) ................18

*Smith v. Bronx Cmty. Coll. Ass'n*,
  No. 16-CV-3779 (JMF), 2017 WL 727546 (S.D.N.Y. Feb. 23, 2017)....................14

*Stone #1 v. Annucci*,
  20-CV-1326 (RA), 2021 WL 4463033 (S.D.N.Y. Sept. 28, 2021) ........................12

*Swierkiewicz v. Sorema N. A.*,
  534 U.S. 506 (2002)..............................................................................................14

*Taormina v. Thrifty Car Rental*,
  No. 16-CV-3255 (VEC), 2016 WL 7392214 (S.D.N.Y. Dec. 21, 2016).................18

*Tulino v. City of N.Y.*,
  No. 15-CV-7106(JMF), 2016 WL 2967847 (S.D.N.Y. May 19, 2016) ..................15

*Walker v. U.S. Dep't of Com.*,
  No. 1:11-CV-01195 (AWI), 2012 WL 1424495 (E.D. Cal. Apr. 24, 2012)............12

*Whigham-Williams v. Am. Broad. Co., Inc.*,
  No. 17-cv-6600 (AJN), 2018 WL 4042110 (S.D.N.Y. Aug. 22, 2018)................4, 5

*World–Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980)................................................................................................7

*Xiaoyan Liu v. Canteen 82 Inc.*,
  Case No. 17 Civ. 7862 (KPF), 2018 WL 6067228 (S.D.N.Y. Nov. 20, 2018) .........7

*Zurich Am. Life Ins. Co. v. Nagel*,
  571 F. Supp. 3d 168 (S.D.N.Y. 2021)...................................................................3, 7

**STATUTES**

28 U.S.C. § 1391(b)(2) ...............................................................................................10, 12

28 U.S.C. § 1404...............................................................................................................12

28 U.S.C. § 1631...............................................................................................................12

29 U.S.C. § 621.................................................................................................1, 10, 16, 17

**OTHER AUTHORITIES**

Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3807 (4th ed.)....................................12

CPLR 302(a)(1) ...............................................................................................................3, 4, 5, 6, 7

Fed. R. Civ. P. 12(b)(3)...................................................................................................1, 10, 11

Fed. R. Civ. P. 12(b)(6)...................................................................................................1, 13, 16

Fed. R. Civ. P. 17(b)(3)(A) ....................................................................................................17

## PRELIMINARY STATEMENT

The Fifth Amended Complaint should be dismissed in its entirety pursuant to Fed. R. Civ. P. ("Rule") 12(b)(2), 12(b)(3) and/or 12(b)(6).

This Court lacks personal jurisdiction over all Non-Resident Defendants—*i.e.*, all Defendants other than the Office of the Commissioner of Baseball d/b/a Major League Baseball ("MLB"), Commissioner Manfred (together with MLB, the "MLB Defendants"), the New York Mets and the New York Yankees. Plaintiffs have failed to meet their burden of showing that their failure-to-hire claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), arise out of each of the twenty-eight different Non-Resident Defendants' contacts with this forum. In a multi-defendant case such as this, Plaintiffs must establish jurisdiction over each Defendant. Plaintiffs have not made this showing with respect to a single Non-Resident Defendant, much less all of them. Plaintiffs expend great effort attempting to aggregate Non-Resident Defendants' contacts with New York but cannot escape the indisputable fact that their failure-to-hire claims have no relationship whatsoever to any of the contacts on which they rely. The Supreme Court has cautioned that such general contacts, completely untethered to Plaintiffs' employment discrimination claims, are insufficient for the exercise of specific jurisdiction.

Plaintiffs' desire to lump all Defendants into a single forum for their own convenience also does not dispense with their obligation to establish venue over each Defendant. The Fifth Amended Complaint should be dismissed for improper venue as well because Plaintiffs have not established that a substantial part of the events giving rise to the claims against the Non-Resident Defendants and the New York Mets occurred in this district.

Even if jurisdiction and venue were proper, the Fifth Amended Complaint should be dismissed because Plaintiffs failed to plead plausible facts in support of their failure-to-hire claims. Plaintiffs do not seriously maintain that they have satisfied the applicable pleading standard, and

instead suggest that they would be able to do so if permitted to file a *sixth* amended complaint. But they fail to proffer an amended pleading, and their opposition is completely silent as to how they would purport to cure the complaint's fatal defects. Plaintiffs also ignore that they missed their opportunity to amend following Defendants' Motion to Dismiss in accordance with this Court's Individual Rules of Practice. In any event, it was incumbent on Plaintiffs to know the well-settled standard to sufficiently state a failure-to-hire claim in this Circuit when this Court permitted Plaintiffs to file the Fifth Amended Complaint following transfer from Colorado.

For these reasons and the reasons that follow, the Court should dismiss the Fifth Amended Complaint in its entirety with prejudice and without leave to amend.

## ARGUMENT

### I.    PLAINTIFFS' ATTEMPT TO ESTABLISH SPECIFIC JURISDICTION OVER THE NON-RESIDENT DEFENDANTS FAILS.

Specific personal jurisdiction does not exist over the Non-Resident Defendants because Plaintiffs' failure-to-hire claims do not arise out of or relate to the Non-Resident Defendants' alleged contacts with this forum. Plaintiffs' claim that they should be relieved from this showing because *Ford Motor Co. v. Montana Eighth Judicial District*, 592 U.S. 351 (2021), supposedly "expanded" specific jurisdiction. (Opp. at 11-13.) Plaintiffs are incorrect. *Ford* did no such thing; rather, it reaffirmed that for specific jurisdiction to exist, the claims must "arise out of or relate to the defendant's contacts with the forum." *Id*. at 359 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S. F. Cnty.*, 582 U.S. 255, 262 (2017)). Because Ford had systematically served markets in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States, there was a strong "relationship among the defendant, the forum, and the litigation"—the "essential foundation" of specific jurisdiction. *Id*. at 365. Notably, in defining the boundaries of specific jurisdiction, the Court expressly rejected the notion that "a California court

2

could hear a claim against Ford brought by an Ohio plaintiff based on an accident occurring in Ohio involving a car purchased in Ohio." *Id*. at 362, n.3; *see also Zurich Am. Life Ins. Co. v. Nagel*, 571 F. Supp. 3d 168, 179 (S.D.N.Y. 2021) (quoting *Ford*, 592 U.S. at 353). But that is exactly what Plaintiffs are asking this Court to do: have a New York court hear claims against non-New York Defendants brought by non-New York Plaintiffs based on alleged discrimination that occurred outside of New York. As the Supreme Court cautioned, if this Court were to exercise jurisdiction in these circumstances, "[c]ase-linked" jurisdiction . . . would then become not case-linked at all." *Ford*, 592 U.S. at 362, n. 3.

> ### A.    Plaintiffs Failed To Establish Jurisdiction Under CPLR 302(a)(1).

The Court lacks personal jurisdiction under CPLR 302(a)(1) because Plaintiffs cannot establish that their failure-to-hire claims arise out of or relate to Non-Resident Defendants' contacts with this forum. In marshalling their best case for specific personal jurisdiction under CPLR 302(a)(1), Plaintiffs rely upon a hodgepodge of Non-Resident Defendants' supposed contacts with New York, namely: (i) playing a handful of games in New York each year and deriving revenue therefrom; (ii) being a member of an unincorporated association (MLB) based in New York; and (iii) the terms and conditions of Plaintiffs' employment contracts, including sending the contracts for MLB's approval in New York and a New York choice-of-law provision. (Opp. at 16-17.) The problem for Plaintiffs is that none of those contacts has any relation whatsoever to their failure-to-hire claims.

Indeed, as Judge Domenico found, "Plaintiffs' age discrimination claims are not derived from the *playing* of baseball or the somewhat broader act of putting on baseball games. The requirement that a suit arise out of or relate to the activities that a defendant directed at the forum precludes such a tangential jurisdictional anchor." (Dkt. 71 at 11) (emphasis in original). The fact that the Non-Resident Defendants are members of MLB also is irrelevant because the exercise of

personal jurisdiction over an unincorporated association is not a basis for exercising personal jurisdiction over its non-resident members. *See Senne v. Kan. City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 993–94 (N.D. Cal. 2015); *see also Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 284 F. Supp. 2d 204, 216 (D. Mass. 2003).

Plaintiffs' reliance upon the terms of their employment contracts is equally misplaced. This is a failure-to-hire case—not one sounding in breach of contract or even wrongful termination. Plaintiffs were not subject to any employment contract when their failure-to-hire claims allegedly accrued. Thus, even if certain terms in Plaintiffs' employment contracts with their *former* Club satisfy the purposeful direction prong of CPLR 302(a)(1), not a single term in those contracts has anything to do with their failure-to-hire claims against a *prospective* employer.[1]

Plaintiffs suggest that "[o]ne way to show the required relatedness is by demonstrating that one of the elements of the cause of action is satisfied by New York related conduct." (Opp. at 19.) But Plaintiffs have not made any such showing. Here, the elements of Plaintiffs' failure-to-hire claims are: (i) they are members of a protected class; (ii) they applied for and were qualified for a job for which the employer was seeking applicants; (iii) they were rejected for the position; and (iv) the position remained open and the employer continued to seek applicants having the plaintiffs' qualifications. *See, e.g., Whigham-Williams v. Am. Broad. Co., Inc.*, No. 17-cv-6600 (AJN), 2018 WL 4042110, at *2 (S.D.N.Y. Aug. 22, 2018). Plaintiffs have not alleged—and cannot allege—any New York conduct on the part of the Non-Resident Defendants related to any of these elements.

---

[1] Plaintiffs' contracts contain an arbitration provision requiring that any dispute or claim between the employee and the Club concerning the formation, application or interpretation of the contract be resolved exclusively through arbitration. *See*, *e.g*., Dkt. 104-1 at 9. If there was any relationship between Plaintiffs' claims and their employment contracts, then their claims would have been subject to binding arbitration.

Plaintiffs completely ignore the well-settled legal authority in Defendants' opening brief where New York courts uniformly declined to find personal jurisdiction over out-of-state employers where the employment decision at issue occurred outside of New York. (Mot. at 11-14). Plaintiffs cite no authority to the contrary. Instead, Plaintiffs rely on *McNamee v. Clemens*, 762 F. Supp. 2d 584 (E.D.N.Y. 2011). *McNamee* is inapposite. Leaving aside that Plaintiffs misrepresent *McNamee* as a Second Circuit holding (Opp. at 20), that case sheds no light on the jurisdictional inquiry here.

In *McNamee*, approximately one year after Roger Clemens came to New York to play baseball for the New York Yankees, he sought out McNamee's personal training services in New York and entered into a contract with McNamee in New York to provide him with such services, typically performed in New York. *Id.* at 594-95. The lawsuit arose out of Clemens' alleged defamatory statements against McNamee after McNamee revealed that he had allegedly injected Clemens with steroids while in New York and Florida. *Id.* at 589-90. The court found that personal jurisdiction existed, in part because "the events giving rise to the dispute between the parties here occurred largely within the forum and involved an individual domiciled in New York. McNamee's cause of action has a substantial nexus with and can be said to have risen from the training sessions that were the subject of his contract with McNamee." *Id.* at 598. That plainly is not the case here because Plaintiffs have not alleged any New York conduct by the Non-Resident Defendants from which their failure-to-hire claims arise as required by CPLR 302(a)(1).

Faced with the reality that Non-Resident Defendants have no New York contacts relevant to their failure-to-hire claims, Plaintiffs' personal jurisdiction theory hinges on far-fetched allegations of a wild conspiracy between the Non-Resident Defendants and the Commissioner's Office. (Opp. at 21-22.) But that allegation fails to confer personal jurisdiction. As a threshold

5

matter, Plaintiffs failed to respond to Defendants' argument that a so-called "conspiracy theory" is insufficient as a matter of law to confer jurisdiction over the Non-Resident Defendants (Mot. at 20-22.) Having failed to respond, the argument should be deemed waived. *See Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442 TPG FM, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014); *Kurtz v. Hansell*, No. 20 CIV. 3401 (PAE), 2021 WL 1143619, at *16 (S.D.N.Y. Mar. 24, 2021).

In any event, as Judge Domenico recognized, "there is no claim to support a legal conspiracy" and "[p]laintiffs here can hardly argue that they have alleged a prima facie showing of a conspiracy when they have not made any such claim for relief" (Dkt. 71 at 13). The Fifth Amended Complaint and Plaintiffs' Opposition are devoid of any facts or specific conduct on the part of Non-Resident Defendants that took place in New York. To the contrary, Plaintiffs simply allege that decisions "were coordinated through the Commissioner's Office in New York." (Opp. at 22.) Such a "bland assertion of conspiracy or agency is insufficient to establish jurisdiction." *E-Z Bowz, L.L.C. v. Prof. Prod. Rsrch. Co., Inc.*, No. 00-CV-8670, 2003 WL 22064259, at *12 (S.D.N.Y. Sept. 5, 2003) (internal quotations and citation omitted).[2]

Plaintiffs' reliance on a joint employer theory in an attempt to manufacture personal jurisdiction fares no better. Plaintiffs rely on three district court cases to support their specious claim that simply alleging a joint-employer relationship is sufficient. (Opp. at 27.) In one of them, however, the court declined to exercise personal jurisdiction based on the plaintiffs' joint employer

---

[2] Moreover, when a party does plead a legally cognizable conspiracy—which these Plaintiffs failed to do—at least one court opined that "conspiracy-based jurisdiction is more properly based on § 302(a)(2), which authorizes personal jurisdiction over a non-domiciliary who commits a tortious act within the state," rather than on section 302(a)(1). *Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys., Inc.*, 10 F. Supp. 2d 334, 342 (S.D.N.Y. 1998). Here, Plaintiffs have made clear they are relying exclusively on CPLR 302(a)(1), rendering their conspiracy theory of jurisdiction even more inapplicable. (Opp. at 21, n. 4.)

allegations and dismissed the complaint. *See Mao v. Sands Bethworks Gaming LLC*, No. 15 Civ. 6252 (JMF), 2016 WL 1717220 (S.D.N.Y. Apr. 28, 2016). In the other two cases, the out-of-state employer employed the plaintiffs primarily *in New York*, creating a "substantial nexus" between defendants' contacts and the employment claims at issue. *See Franklin v. Waters*, No. 16 Civ. 9819 (AKH), 2018 WL 3231660, at *3 (S.D.N.Y. Apr. 10, 2018); *see also Xiaoyan Liu v. Canteen 82 Inc.*, Case No. 17 Civ. 7862 (KPF), 2018 WL 6067228, *3 (S.D.N.Y. Nov. 20, 2018).

The more recent cases within this district have expressly rejected the notion that simply alleging a joint-employment relationship suffices, as specific jurisdiction requires a substantial nexus between the plaintiff's claims and each out-of-state defendant's conduct in New York. *See Zurich Am. Life Ins. Co.*, 571 F. Supp. 3d at 168, 177; *Henao v. Parts Auth., LLC*, 557 F. Supp. 3d 490, 497 (S.D.N.Y. 2021); *Dong Chul Kim v. Harte Hanks, Inc.*, 425 F. Supp. 3d 246, 258 (S.D.N.Y. 2019). Indeed, as the court in *Dong Chul Kim* confirmed in distinguishing *Xiaoyan Liu*—the case on which Plaintiffs most heavily rely—plaintiffs' joint employer allegations were relevant to personal jurisdiction because they evidenced that the conduct underlying their wage-and-hour claims "occurred, in large part, *in New York*." *Dong Chul Kim*, 425 F. Supp. 3d at 258 (emphasis in original). That nexus is missing here, because, by sharp contrast, the Non-Resident Defendants' conduct giving rise to Plaintiffs' failure-to-hire claims occurred outside New York.

### B.    Jurisdiction Would Offend Notions of Fair Play and Substantial Justice.

The exercise of personal jurisdiction also would offend notions of fair play and substantial justice. Contrary to Plaintiffs' suggestion, due process exists to "principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *AmTrust Fin. Servs., Inc. v. Lacchini*, 260 F. Supp. 3d 316, 329 (S.D.N.Y. 2017) (citation omitted)*; see also Dix v. Peters*, 374 F. Supp. 3d 213, 223 (N.D.N.Y. 2019), *aff'd*, 802 F. App'x 25 (2d Cir. 2020) (same) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)). Plaintiffs'

opposition falls far short of showing that the exercise of jurisdiction here comports with due process.[3] (Opp. at 22-26.)

As an initial matter, Plaintiffs give short shrift to the burden on Non-Resident Defendants by lumping all of them into one group, ignoring the fact that there are 28 different parties who would be forced to litigate employment decisions made, in many cases, thousands of miles outside of New York. Plaintiffs erroneously suggest that Non-Resident Defendants would be "forced" to litigate in their home states if the Court declines to exercise jurisdiction over them. (Opp. at 33.) But their respective home states are precisely where Plaintiffs' failure-to-hire claims should have been brought.

Indeed, the exercise of jurisdiction over the Non-Resident Defendants would run afoul of the Supreme Court's pronouncement that "[t]he law of specific jurisdiction thus seeks to ensure that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy." *Ford Motor Co.*, 592 U.S. at 360 (citing *Bristol-Myers*, 582 U.S. at 263). In this respect, Plaintiffs must concede that this Court's exercise of jurisdiction over the Non-Resident Defendants would encroach on each of their home states. That is because two Plaintiffs in this case, Gary Pellant and Randall Johnson, also commenced an action against the Detroit Tigers in federal district court in Michigan, alleging that the Detroit Tigers unlawfully terminated them based on their ages. *See Pellant et al. v. Detroit Tigers, Inc.*, Case No. 2:23-cv-13288 (SFC) (APP) (E.D. Mich.). Pellant and Johnson were represented there by the very same counsel as Plaintiffs

---

[3] Courts consider the following factors in evaluating due process: (1) the burden on the non-resident defendants, (2) the forum state's interest in resolving the dispute, (3) the plaintiffs' interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Eades v. Kennedy, PC L. Offs.*, 799 F.3d 161, 168 (2d Cir. 2015).

here. It is inconceivable that Pellant and Johnson would file age discrimination claims against the Detroit Tigers in the Tigers' home state of Michigan, while simultaneously seeking to maintain age discrimination claims against the Philadelphia Phillies, for example, in New York rather than Pennsylvania. Likewise, Plaintiffs cannot plausibly explain why the age discrimination claims of the seventeen Plaintiffs who allegedly sought employment with the Detroit Tigers belong in this Court, s*ee*, e.g., Dkt. 94, ¶ 111, while Pellant's and Johnson's age discrimination claims against the Tigers were filed in Michigan.[4] Here, Plaintiffs have not alleged New York-based contacts by the Non-Resident Defendants or claims arising under New York state law to support New York having a cognizable interest in resolving Plaintiffs' claims against them.

As for Plaintiffs' interest in proceeding in a convenient forum, they do not dispute that all but one of the Plaintiffs are non-New York residents. In fact, Plaintiffs do not argue that this forum is convenient for them at all. Instead, they assert that Plaintiffs have an interest in "keeping these cases together in a single case," regardless of forum (Opp. at 25), which fails to demonstrate that *this* forum is convenient for them. Even so, Plaintiffs' desire to proceed in a single forum does not dispense with their threshold obligation to establish personal jurisdiction over *each* Defendant. In the absence of personal jurisdiction over all Defendants, keeping Plaintiffs' claims in a single forum for their own convenience is incompatible with due process, which, as noted above, exists to protect defendants—not for the convenience of plaintiffs. *See supra* at 7-8.

With respect to the interstate judicial system's interest in obtaining the most efficient resolution, Plaintiffs rely exclusively on their allegations of conspiracy, (Opp at 26), while

---

[4] Plaintiffs' suggestion that it would be no "easier for the Pittsburg [sic] Pirates to be hailed into federal court in Philadelphia instead of New York" is based on a flawed premise.  (Opp. at 25.) Claims challenging the Pittsburgh' Pirates employment decisions belong in federal district court in *Pittsburgh*—not Philadelphia, much less New York.

overlooking the fundamental flaw that there is no conspiracy claim pled in the Fifth Amended Complaint, nor can there be a conspiracy to violate the ADEA. (*See* Dkt. 71 at 13; Mot. at 20-22.) As noted above, Plaintiffs cannot rely on an alleged conspiracy to violate the ADEA to establish personal jurisdiction. *See id*. Moreover, they do not dispute the Non-Resident Defendants' assertion that potential witnesses to Plaintiffs' claims will be the Non-Resident Defendants' officials involved with hiring scouts, nearly all of whom are located outside of New York. Lastly, Plaintiffs agree that most of the states in which the Non-Resident Defendants are located have an interest in preventing age discrimination, (Opp. at 26), rendering the shared interest of the several states in furthering substantive social policies at best neutral. For these reasons, the exercise of personal jurisdiction over Non-Resident Defendants would offend traditional notions of fair play and substantial justice.

## II.    PLAINTIFFS HAVE NOT ESTABLISHED VENUE IN THIS DISTRICT AS TO THE NON-RESIDENT DEFENDANTS AND NEW YORK METS.

This case also should be dismissed pursuant to Rule 12(b)(3) because venue is not proper in this District as to the Non-Resident Defendants and the New York Mets. "*[S]ignificant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question" for venue to be proper under 28 U.S.C. § 1391(b)(2), the venue provision on which Plaintiffs rely. *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (emphasis in original). This Circuit has "caution[ed] district courts to take seriously the adjective 'substantial'" because courts "are required to construe the venue statute strictly." *Id.* (citation omitted). "The circuit has explained further that the substantiality inquiry is more qualitative than quantitative and should focus on the relevant activities of the defendant, not the plaintiff. '[I]n most instances, the purpose of statutorily defined venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial.'" *Micromem Techs., Inc. v. Dreifus Assocs. Ltd.*, No. 14-CV-9145

10

(LAK), 2015 WL 8375190, at *4 (S.D.N.Y. Dec. 8, 2015) (citing *Daniel v. Am. 8d of Emergency Med.*, 428 F.3d 408,432-33 (2d Cir. 2005)) (emphasis in original) (granting Rule 12(b)(3) motion because a substantial part of the acts or omissions giving rise to plaintiffs' claims did not occur in the District).

Plaintiffs purport to lay venue in New York based on the alleged "coordinated activity to intentionally not rehire Senior Scouts on an MLB-wide basis"—activity that supposedly "runs through the Commissioner's Office in New York." (Opp. at 30.)[5] That is entirely conclusory. There is not a single plausible fact alleged in the Fifth Amended Complaint with regard to any activity that the Non-Resident Defendants or the New York Mets supposedly ran through the Commissioner's Office in New York that gave rise to Plaintiffs' failure-to-hire claims. In these circumstances, it cannot be said that any events giving rise to Plaintiffs' claims against the Non-Resident Defendants and New York Mets occurred here, much less a substantial part.

Plaintiffs' criticism that "Defendants have not asserted where better venue exists" or have not filed a motion to transfer misses the mark because it assumes there is a single forum where this case could have been brought. (Opp at 30.) There is not. As is true with personal jurisdiction, Plaintiffs' desire to bring this sprawling case in a single forum does not relieve them of the obligation to establish venue over all Defendants. Judge Domenico expressly acknowledged that Plaintiffs may not be able to establish jurisdiction and venue over any Defendant in this District

---

[5] Plaintiffs' reliance upon the MLB Constitution in support of their claim that the MLB Defendants controlled the number of scouts over the age of 40 is overstated and wrong. (Opp. at 1, 4.; Dkt. 94 ¶ 69(a)(ii)(1)(a).) Contrary to Plaintiffs' suggestion, the MLB Constitution does not give the MLB Defendants "absolute control" over labor relations. (Opp. at 36.) It says, "[t]he Commissioner shall also have the executive responsibility for labor relations and shall serve as Chairman, or shall designate a Chairman, of such committees as the Commissioner shall name or the Major League Clubs shall from time to time determine by resolution." (Dkt. 4 at 4.)

11

other than the MLB Defendants and the New York Yankees (Dkt. 71 at 15, n.8). Plaintiffs have not done so.[6]

Plaintiffs tacitly concede that they cannot satisfy 28 U.S.C. § 1391(b)(2), the sole venue provision invoked in the Fifth Amended Complaint. That is why they claim—without citing a single case—that the venue inquiry can be collapsed into a "multi-defendant analysis" rather than assessing the contacts of each individual Defendant. (Opp. at 29.) Plaintiffs are wrong.  Where claims involve multiple different parties, "venue must be proper…as to each party," and "[t]he fact that a claim for some of the plaintiffs or against some of the defendants arose in a particular district does not make that district a proper venue for parties as to whom the claim arose somewhere else." *Stone #1 v. Annucci*, 20-CV-1326 (RA), 2021 WL 4463033, at *13 (S.D.N.Y. Sept. 28, 2021) (citing Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3807 (4th ed.); *Walker v. U.S. Dep't of Com.*, No. 1:11-CV-01195 (AWI), 2012 WL 1424495, at *1 (E.D. Cal. Apr. 24, 2012)).

Plaintiffs' attempt to characterize this case as a "nation-wide pattern and practice claim" (Opp. at 30) does not absolve them of showing that a substantial part of the events giving rise to their claims against the Non-Resident Defendants and New York Mets occurred here. In any case, whether this is a "nation-wide pattern and practice claim" is beside the point because Plaintiffs fail to allege that the Non-Resident Defendants or the New York Mets refused to hire them in this district, or that these Defendants took any other action in this district related to those alleged employment decisions.

---

[6] Because there is no district where this case could "have been brought" that would have jurisdiction and venue over all Defendants, it is not susceptible to transfer under 28 U.S.C. § 1404 or § 1631.

III.    **PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM WITHOUT LEAVE TO AMEND.**

Even if the Court concludes that it can exercise personal jurisdiction over Non-Resident Defendants and that venue is appropriate, Plaintiffs' opposition does not defeat Defendants' Rule 12(b)(6) motion to dismiss for failure to plead plausible facts in support of Plaintiffs' failure-to-hire claims.

A.    **Plaintiffs Have Not Pled Sufficient Plausible Facts as to the Clubs.**

Plaintiffs failed to plead plausible facts in support of their failure-to-hire claims. In response, Plaintiffs claim that they should be relieved of the applicable pleading requirements because, according to Plaintiffs, "this is not an ordinary case." (Opp. at 32.) That is nonsense.

As pled, this case is a compilation of individual employment discrimination claims asserted against one or more of 32 separate Defendants. As set forth in Defendants' opening brief, a plausible failure-to-hire claim requires a plaintiff to allege that he applied for a position for which the employer was seeking applicants. (Mot. at 26-27.) Plaintiffs do not dispute that the Fifth Amended Complaint is devoid of any such allegations, but instead claim that their claims survive dismissal because they have provided Defendants "fair notice" of their claims. (Opp. at 33.) Plaintiffs are wrong.

Plaintiffs rely upon *Swierkiewicz v. Sorema N. A.*, a case that predates *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and stands for the proposition that a plaintiff need not establish a *prima facie* case of discrimination under the *McDonnell Douglas* burden-shifting framework to survive a motion to dismiss. 534 U.S. 506, 508 (2002). Even under *Swierkiewicz*, to state a claim, plaintiffs still must plead that they applied for a specific position and were rejected. *See Johnson v. City Univ. of N. Y.*, No. 00 Civ. 4964 (WK)(RLE), 2002 WL 1750841, at *4 (S.D.N.Y. July 24, 2002) (quoting *Swierkiewicz*, 534 U.S.

13

at 512) (dismissing complaint because plaintiffs' failure to plead that he applied for and was rejected from a specific position did not provide defendant with "fair notice of ... the grounds upon which [his claim] rests."). Indeed, every case cited in Defendants' opening brief for the proposition that courts routinely dismiss claims at the pleading stage where a plaintiff fails to allege that there was a specific open position for which he or she applied was decided after *Swierkiewicz*.

Plaintiffs know that they cannot meet this well-established pleading standard, which is why they misquote the Second Circuit's decision in *Petrosino v. Bell Atl*. While purporting to cite *Petrosino* for the elements of a failure-to-hire claim (Opp. at 32), Plaintiffs conspicuously omit the Court's reference to the very requirement that renders Plaintiffs' claims legally defective here, namely that the plaintiff "applied and was qualified for ***a job for which the employer was seeking applicants.***" *Petrosino*, 385 F.3d 210, 226 (2d Cir. 2004) (emphasis added).

Plaintiffs ignore all of the legal authority cited in Defendants' motion dismissing claims at the pleading stage in the absence of an allegation that a plaintiff actually applied for an open position. The Fifth Amended Complaint is devoid of such allegations, and cannot survive on the bare legal conclusion that scouts generally were not hired because of their age. *See, e.g., Smith v. Bronx Cmty. Coll. Ass'n*, No. 16-CV-3779 (JMF), 2017 WL 727546, at *1 (S.D.N.Y. Feb. 23, 2017) (plaintiff "must supply sufficient factual material, and not just legal conclusions, to push the misconduct alleged in the pleading beyond the realm of the 'conceivable' to the 'plausible.'").

The analysis might be different if this was a wrongful termination case—*i.e.*, that scouts were unlawfully terminated based on age—but it is not. Plaintiffs here are pursuing a failure-to-hire theory. (Dkt. 94 ¶ 111.) In this respect, Plaintiffs affirmatively plead themselves out of failure-to-hire claims. More specifically, Plaintiffs allege that Defendants "intentionally restructure[d] their labor force based on age" following the COVID-19 pandemic to *eliminate* the positions of

14

older scouts and then "refuse[d] to return" to pre-pandemic employment levels. (Opp. at 34; Dkt. 94 ¶¶ 97-100, 102.)  Critically, however, there are no allegations that those eliminated positions were ever restored following this alleged restructuring. To the contrary, Plaintiffs allege that the Clubs did not create *new* positions for them. (*See*, *e.g.*, Dkt. 94 ¶¶ 102, 104-05.) As set forth in Defendants' Motion, those allegations fail to state a claim as a matter of law, (Mot. at 30), which Plaintiffs do not dispute in their opposition.

The most Plaintiffs allege is that certain unidentified "Older Scouts *expected* to be eligible to be rehired after the pandemic ended." (Dkt. 94 ¶ 100, emphasis added). Such a mere expectation—without any allegation that there was an open position—fails to state a failure-to-hire claim as a matter of law. *See, e.g., Tulino v. City of N.Y.*, No. 15-CV-7106(JMF), 2016 WL 2967847, at *6 (S.D.N.Y. May 19, 2016) (dismissing failure to promote claim because plaintiff had not applied for a "known vacant position"); *Bussa v. St. John's Univ.*, No. 18-CV-4623 (KAM)(RER), 2019 WL 136641, at *3 (E.D.N.Y. Jan. 8, 2019) (dismissing plaintiff's failure to hire claim where complaint suggested that "plaintiff did not actually apply for a specific position, although he expressed an interest to defendants' employees").

### B.    Plaintiffs Have Not Pled Sufficient Plausible Facts as to MLB.

Plaintiffs' claims against MLB fail for all of the reasons described above. Moreover, Plaintiffs cannot salvage their claims against MLB under a joint employer theory because the allegations in the Fifth Amended Complaint fail to plausibly allege that MLB is a joint employer of the scouts. Although Plaintiffs claim that MLB possesses "formal control" over labor relations (Opp. at 36), they fail to support that naked assertion with any plausible facts. *See, e.g., Rubert v. King*, No. 19-CV-2781, 2020 WL 5751513, at *7 (S.D.N.Y. Sept. 25, 2020) ("'[B]oilerplate assertion[s]' unsupported by specific facts" do not plausibly state a claim under Rule 12(b)(6)).

15

In this respect, the Fifth Amended Complaint alleges as follows: "The practices of Defendants referred to above establish that Defendants have been acting as joint employers of Older Scouts for purposes of the ADEA since well before 2015. The MLB Defendants acted as joint employers with Club Defendants in first making reemployment of Older Scouts more difficult, then overseeing and carrying out mass terminations of employment of Older Scouts, and then denial of reemployment to Older Scouts." (Dkt. 94 ¶ 99.) These are quintessential legal conclusions unsupported by any plausible facts. *See Iqbal*, 556 U.S. at 678 (bare legal conclusions are "not entitled to the assumption of truth."). Fatal to Plaintiffs' joint employer theory is the absence of any plausible facts tying MLB to the *Clubs'* employment of scouts. Plaintiffs do not allege that they sought employment with MLB, or that MLB controlled the scouts' activities. As set forth in Defendants' moving papers, the only plausible fact alleged in the Fifth Amended Complaint is that the scouts' contracts—agreements between scouts and their respective Clubs—were submitted to MLB for approval. That, however, is insufficient as a matter of law to render MLB a joint employer. *See Hill v. AMB Sport & Ent., LLC*, No. 22-cv-2961, 2023 WL 2058066, at *6 (N.D. Ill. Feb. 16, 2023) (dismissing claim against sports league because there are no plausible facts that MLS both participates in and controls the clubs' "hiring practices.") Plaintiffs fail to even mention *Hill*, much less attempt to distinguish it. The court's decision in *Hill* compels the conclusion that MLB is not a joint employer of scouts as a matter of law.

C.     **Plaintiffs Have Not Pled Sufficient Plausible Facts as to Commissioner Manfred.**

Plaintiffs concede that Commissioner Manfred cannot be individually liable for alleged violations of the ADEA. (Opp. at 34-35.) Instead, he is named solely as a representative of MLB, an unincorporated association, supposedly pursuant to the New York General Associations Law. (Dkt. 94 ¶¶ 37, 38(a)-(c).) In naming Commissioner Manfred for this purpose, Plaintiffs overlook

Rule 17(b)(3)(A), which specifically states that an unincorporated association has capacity to sue or be sued. Thus, irrespective of MLB's capacity to sue or be sued in *state* court, Rule 17 makes clear that MLB can be sued in federal court. *See, e.g., Modeste v. Loc. 1199, Drug, Hosp. & Health Care Emps. Union*, *RWDSU, AFL-CIO*, 850 F. Supp. 1156, 1164 (S.D.N.Y.), *as amended* (Sept. 2, 1994), *aff'd*, 38 F.3d 626 (2d Cir. 1994); *Prescription Containers, Inc. v. Cabiles*, No. 12 CIV. 4805 CBA VMS, 2014 WL 1236919, at *4 (E.D.N.Y. Feb. 14, 2014), *report and recommendation adopted*, No. 12-CV-04805 CBA VMS, 2014 WL 1237098 (E.D.N.Y. Mar. 25, 2014).

And, because Plaintiffs named MLB—and MLB has not challenged its capacity to be sued—Plaintiffs do not need Commissioner Manfred. Indeed, Plaintiffs acknowledge that they do not need both Commissioner Manfred and MLB as Defendants, which is why they specifically plead in the alternative, alleging: "Alternatively, the Commissioner's Office (doing business as the MLB) is the appropriate entity to be named as the MLB Defendant *if* the Court finds that Article 3, Section 13, does not apply to the MLB." (Dkt. 94 ¶ 38(c).) (emphasis added). Because the New York General Associations Law *does not* apply in federal court—Rule 17 governs here— Plaintiffs' predicate for naming Commissioner Manfred as a Defendant is inapplicable, and he, too, should be dismissed from this case.

## IV.    PLAINTIFFS SHOULD NOT BE GRANTED LEAVE TO AMEND

The Court should dismiss Plaintiffs' Fifth Amended Complaint and deny their request for leave to amend. First, in addition to the fact that Plaintiffs had ample opportunity to allege sufficient jurisdictional facts in their Fifth Amended Complaint, Plaintiffs also failed to observe this Court's rules, which provided Plaintiffs the opportunity to amend their complaint within fourteen (14) days of Defendants' motion rather than filing their opposition. *See* Court's Rules of Indiv. Practice II.B.6. Second, amending the complaint a sixth time would be futile because Plaintiffs have not established—and cannot establish—personal jurisdiction over the Non-

Resident Defendants. *See, e.g., Shenzhen OKT Lighting Co. v. JLC-Tech LLC*, No. 20 CIV. 5062 (ER), 2021 WL 4443637, at *12 (S.D.N.Y. Sept. 28, 2021) (denying plaintiff's request for leave to file a second amended complaint as futile where plaintiff had not sufficiently alleged that personal jurisdiction existed over defendant); *Taormina v. Thrifty Car Rental*, No. 16-CV-3255 (VEC), 2016 WL 7392214, at *8 (S.D.N.Y. Dec. 21, 2016) ("Because the Plaintiff has not demonstrated personal jurisdiction, leave to amend would be futile.").

Moreover, Plaintiffs not only failed to proffer any amended pleading, their opposition is completely devoid of any specifics as to how they would purport to cure the pleading defects that doom the Fifth Amended Complaint. Nor can they. This is yet another reason to deny leave to amend. *See, e.g., Lugo v. Lesbian & Gay Communities Serv. Ctr.*, No. 21-CV-07423 (MMG), 2024 WL 5168042, at *6 (S.D.N.Y. Dec. 19, 2024) (dismissing claims with prejudice, explaining that "it would be futile for Plaintiff to replead any of his claims against Defendant" where "Plaintiff's opposition to [Defendant's] motion to dismiss does not suggest additional facts which, if properly alleged, could cure the defects in his two complaints.").

## CONCLUSION

For the foregoing reasons, and those set forth in Defendants' Motion (Dkt. 100), Defendants respectfully request that the Court dismiss the Fifth Amended Complaint as to the Non-Resident Defendants for lack of personal jurisdiction, and as to the Non-Resident Defendants and New York Mets for improper venue, without leave to amend. All claims against any Defendant subject to this Court's jurisdiction should be dismissed with prejudice for failure to state a claim.

Dated:  April 30, 2025

PROSKAUER ROSE LLP

s/ Elise M. Bloom
Elise M. Bloom
Neil H. Abramson
Adam M. Lupion
Eleven Times Square
New York, New York 10036
Tel. 212.969.3410
ebloom@proskauer.com
nabramson@proskauer.com
alupion@proskauer.com

*Attorneys for Defendants Robert Manfred, The Office of the Commissioner of Baseball, AZPB, L.P., Atlanta National League Baseball Club, Inc., Atlanta National League Baseball Club, LLC, Braves Holding, LLC, Boston Red Sox Baseball Club, L.P., Chicago Cubs Baseball Club, LLC, Chicago White Sox, Ltd., The Cincinnati Reds, LLC, Cleveland Guardians Baseball Company, LLC, Colorado Rockies Baseball Club, Ltd., Detroit Tigers, Inc., Houston Astros, LLC, Kansas City Royals Baseball Club LLC, Angels Baseball LP, Los Angeles Dodgers LLC, Marlins Teamco LLC, Milwaukee Brewers Baseball Club, Inc., Milwaukee Brewers Baseball Club, L.P., Minnesota Twins, LLC, Sterling Mets, L.P., New York Yankees Partnership, Athletics Investment Group LLC, The Phillies, Pittsburgh Associates, Padres L.P., San Diego Padres Baseball Club, L.P., San Francisco Baseball Associates LLC, Baseball Club of Seattle, LLLP, St. Louis Cardinals, LLC, Tampa Bay Rays Baseball Ltd., Rangers Baseball Express, LLC, Rangers Baseball, LLC, Rogers Blue Jays Baseball Partnership, Rogers Communications Inc., Washington Nationals Baseball Club, LLC*

FAEGRE DRINKER BIDDLE & REATH LLP

s/ Lawrence G. Scarborough
Lawrence G. Scarborough
1177 Avenue of the Americas

19

41st Floor
New York, NY 10036
Telephone: 212-248-3141
lawrence.scarborough@faegredrinker.com


Desmonne A. Bennett (*admitted pro hac vice*)
1144 15th Street, Suite 3400
Denver, CO 80202
Telephone: 303-607-3500
desmonne.bennett@faegredrinker.com

***Attorneys for Defendant Baltimore Orioles Limited
Partnership Inc.***

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies, pursuant to Local Civil Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, the Court's Individual Rules of Practice, and the Court's Order granting an extension of the applicable word limits (Dkt. 99), that the foregoing brief contains no more than 6,000 words.

Specifically, the Microsoft Word "Word Count" tool indicates that the brief contains 5,972 words. That word count excludes the "caption, any index, table of contents, table of authorities, signature blocks, or any required certificates," but does include "material contained in footnote or endnotes." Local Civil Rule 7.1.

Dated:  April 30, 2025

*/s/ Elise M. Bloom*
Elise M. Bloom